## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINA WILLIAMS and MICHAEL STERMEL, on behalf of themselves and all others similarly situated,** | : : : : : | No. 18-_____ <br><br> **CLASS ACTION** |
| **Plaintiffs,** | : : : | **JURY TRIAL DEMANDED** |
| **vs.** | : : : | |
| **MACFARLANE GROUP, INC., MEDLEY OPPORTUNITY FUND II, LP, MARK CURRY, BRIAN MCGOWAN, VINCENT NEY,  and other JOHN DOE persons or entities,** | : : : : : : : | |
| **Defendants.** | : : : | |

## CLASS ACTION COMPLAINT

## I.      INTRODUCTION

1.      Plaintiffs Christina Williams and Michael Stermel bring this lawsuit

on behalf of themselves and a Class and Subclass of consumers in Pennsylvania

who were victimized by predatory loans with unlawful interest charges of 400% to

over 700% annual percentage rate (APR), commonly referred to as "payday loans."

2.      Defendants MacFarlane Group, Inc., Medley Opportunity Fund II, LP,

Mark Curry, Brian McGowan, and Vincent Ney ("Defendants") illegally solicited,

arranged, funded, serviced, and/or collected these payday loans made to

Pennsylvania citizens over the internet.  To evade State licensure, usury, and consumer protection laws, Defendants have used affiliations with a Native American tribe as the vehicle for this illegal activity.  Knowing that Native American tribal corporations have insulation from State jurisdiction under the doctrine of tribal sovereign immunity, Defendants have, as an alternative to making the loans in their own name, chosen to structure, participate in, and operate this scheme in which the loans are made in the name of a tribal corporation ("American Web Loan, Inc." or "AWL, Inc."), while Defendants fund, control, and recover nearly all of the revenues and profits from the loans.  Defendants thus have controlled and profited from illegal loans that flout Pennsylvania law, using deliberate deceptions targeting Pennsylvania consumers.

3.     Through this predatory lending scheme, Defendants recovered usurious interest within the meaning of the Pennsylvania usury law, 41 Pa. Stat. §§ 201, 501, engaged in unfair and deceptive acts and practices by making unlawful loans to borrowers in violation of Pennsylvania's small loan law, 7 Pa. Stat. §§ 6201 *et seq.*, concealed their role and interest in the payday loan product, and engaged in unlawful racketeering activity in violation of federal law, 18 U.S.C. §§ 1961 *et seq.*  For these violations, Plaintiffs, on behalf of themselves and all others similarly situated, seek a declaratory judgment that the payday lending business conducted by Defendants is illegal under federal and Pennsylvania law, an

2

injunction barring continuing violations, and an award of money damages, as well as penalties, costs of suit, and attorneys' fees.

## II.   **PARTIES**

4.     Plaintiff Christina Williams is a Pennsylvania citizen who resides at 4049 Poplar Street, Philadelphia, Pennsylvania 19104.

5.     Plaintiff Michael Stermel is a Pennsylvania citizen who resides at 2634 South Camac Street, Philadelphia, Pennsylvania 19148.

6.     Defendant MacFarlane Group, Inc. is a Nevada corporation with its principal place of business at 6950 West 56th Street, Mission, Kansas 66202.

7.     Defendant Medley Opportunity Fund II, LP is a Delaware limited partnership with its principal place of business at 375 Park Avenue, Suite 3304, New York, New York, 10152.

8.     Defendant Mark Curry is, on information and belief, a citizen of Puerto Rico who resides at 405 Avenue Esmeralda, Guaynabo, Puerto Rico 00969.

9.     Defendant Brian McGowan is, on information and belief, a citizen of Kansas who resides in Overland Park, Kansas.

10.     Defendant Vincent Ney is, on information and belief, a citizen of Texas who resides in Burghem, Texas.

### III.   JURISDICTION AND VENUE

11.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' RICO claims arise under the laws of the United States and to 28 U.S.C. § 1332(d)(2) because this case is a class action, there is diversity of citizenship between Plaintiffs and members of the proposed Class and Defendants, and the aggregate amount in controversy is in excess of $5,000,000.00.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the events that gave rise to this claim occurred within this district.

### IV.   FACTUAL ALLEGATIONS

#### A.   Pennsylvania Restrictions on High-Interest Rate Lending Over the Internet

13.     Under Section 201 of the Loan Interest and Protection Law ("LIPL"), 41 Pa. Stat. § 201, the maximum lawful rate of interest for the loan and use of money in amounts less than $50,000 is six percent (6%) per year.

14.     The six-percent interest cap applies to all consumer lenders except those lenders who are licensed under the Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 6201 *et seq.*, and who make loans in accordance with the limitations and requirements of that statute.  *See Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC*, 948 A.2d 752 (Pa. 2008).  This cap applies to all credit-related charges, however labeled, and applies to credit lines as well as fixed-amount loans.  *Id.* at 762.

4

15.    As of February 1, 2009, the usury restrictions imposed by the LIPL and the CDCA apply to loans made to Pennsylvania citizens over the Internet. *See Cash America Net of Nevada, LLC v. Comm'r, Dept. of Banking*, 8 A.3d 282, 284 (Pa. 2010) (upholding Department of Banking's official interpretation).

16.    Thus, as of February 1, 2009, payday lending—the "consumer lending practice in which a lender offers consumers high-rate, short-term loans secured by either a post-dated check or a debit authorization from a bank," *Cash America, supra*, 8 A.3d at 284, has been illegal in Pennsylvania, whether done through storefronts or over the Internet.

17.    On information and belief, Defendants are not licensed under the CDCA, and thus are prohibited from making and collecting on any consumer loans to Pennsylvania citizens that charge interest rates in excess of six percent per year.

**B.    Defendants' Rent-a-Tribe Scheme**

**1.    Defendants' Prior Cross-Border and "Fee"-Based Payday Lending**

18.    Defendants have long been actively involved in internet payday lending to consumers at interest rates that violate applicable State laws.

19.    On September 9, 2003, Defendant Vincent Ney ("Ney") created the online payday lending company Government Employees Credit Center, Inc., d/b/a GECC, d/b/a Cash Direct Express, and d/b/a chasedirectexpress.com ("GECC").

20.    GECC was in the business of making payday loans remotely to consumers online, operating from outside of the consumers' home States, and charging interest rates in excess of the consumers' home-State usury limits.

21.    As a result of these practices, GECC was barred by State regulators from doing business in Maine, New Hampshire, New York, Vermont, and West Virginia.

22.    In 2007, Defendant Mark Curry ("Curry") created the company Geneva-Roth Ventures, Inc., d/b/a Loan Point USA ("Geneva-Roth"), a Delaware corporation with its principal place of business at 6950 West 56th Street, Mission, Kansas 66202.

23.    While Defendant Curry was Geneva-Roth's sole owner, Defendant Brian McGowan was an officer of the company.

24.    Geneva-Roth also was in the business of making payday loans to consumers online, charging interest rates in excess of the consumers' home-State usury limits.  Geneva-Roth charged interest rates as high as 1,365% APR.

25.    Geneva-Roth's loan terms also allowed the company to withdraw "partial payments" from consumers' accounts on paydays.

26.    The loan terms also represented that the company's charges for loans were not interest, but rather recurring "fees."

27.    Geneva-Roth set consumers' partial-payment withdrawals just high enough to cover the recurring fees, without drawing down the loans' principal balances.

28.    As a result, the agreements allowed Geneva-Roth to extract continual payments from consumers long after they had repaid the original value of the loan.

29.    Geneva-Roth also made loans to consumers in multiple States without having the required license.

30.    As a result of these unlawful and predatory lending practices, Geneva-Roth was barred by State regulators from doing business in Alaska, Arkansas, California, Connecticut, Maine, Oregon, and Washington.

31.    The consent decrees between Geneva-Roth and various of these States were signed by either Defendant Curry, as company owner, or Defendant McGowan, as company officer.

32.    On information and belief, Geneva-Roth no longer is in business.

### 2.   Founding of MacFarlane Group, Inc. and Defendants' Entry into Rent-a-Tribe Payday Lending

33.    In 2010, Defendant Curry founded a new company, Defendant MacFarlane Group, Inc. ("MacFarlane Group").  Like Geneva-Roth before it, Defendant MacFarlane Group is headquartered at 6950 West 56th Street, Mission, Kansas 66202.

34.    Defendant MacFarlane Group also has maintained offices in Oklahoma and Nevada.

35.    While Defendant Curry is Defendant MacFarlane Group's owner, Defendant McGowan has served as its Executive Vice President and Chief Treasury Officer.

36.    Defendant MacFarlane Group has provided a variety of business services, including customer lead-generation, call-center support, management services, information technology services, marketing, and analytics.

37.    In early 2010, Defendants Curry, McGowan, and MacFarlane Group introduced online payday lending to the Otoe-Missouria Tribe of Indians.

38.    The Otoe-Missouria Tribe's territory is located within the borders of the State of Oklahoma.  The Tribe has a population of approximately 3,000 persons.

39.    On or about February 10, 2010, Defendant Curry brokered an arrangement between Defendant MacFarlane Group and the Otoe-Missouria Tribe through then-Tribal Vice Chairman Charles Moncooyea.

40.    Under this arrangement, the Tribe created a company called American Web Loan, Inc. through an enactment that was titled the "American Web Loan Act."  The Act authorized American Web Loan, Inc. to participate in the business of online payday lending to consumers throughout the United States.

8

41.    On or about February 22, 2011, Defendants MacFarlane Group and Curry secured $22.9 million in funding for payday loans to be made under the name of American Web Loan, Inc.

42.    Defendants MacFarlane Group and Curry obtained the $22.9 million in funding for American Web Loan, Inc.'s online payday lending through a loan from Defendant Medley Opportunity Fund II, LP ("Medley Fund"), a private equity fund, in 2011.

43.    Upon information and belief, Defendant Medley Fund had knowledge that Defendant MacFarlane Group intended to use the loan to fund high-interest payday lending.  The loan to Defendant MacFarlane Group carried the highest effective interest rate in Defendant Medley Fund's loan portfolio, at 26% APR.

44.    The payday loans made under American Web Loan, Inc.'s name originally with Defendant MacFarlane Group's funds obtained from Defendant Medley Fund charged borrowers interest rates in excess of their home-State usury limits.

45.    Like Geneva-Roth, American Web Loan, Inc. was barred from doing business by regulators in several States—specifically, New York and Connecticut.

46.    Loans made under the name of American Web Loan, Inc. generated over $100 million in profits for Defendant MacFarlane Group as of 2014, while only about one percent of the revenues from these loans went to the Tribe itself.

9

Otoe-Missouria Tribal Vice Chairman Moncooyea later stated about this arrangement that "As time went on, I realized that [the tribe] didn't have any control at all."

47.    As a result of the success of this arrangement for Defendant MacFarlane Group, Defendant Curry moved from Kansas to a suburb of Las Vegas, Nevada, where he paid $1.8 million for a modernist mansion.  He later moved to Puerto Rico.

48.    The trademark for "American Web Loan" is registered with an entity called American Web Loan Holdings, with an address also in Las Vegas, Nevada.

### 3.    Defendants' Creation of Current Nominal Tribal Lender AWL, Inc.

49.    On September 21, 2016, the Otoe-Missouria Tribal Council adopted the "AWL Act," which created a separate online payday lending company, AWL, Inc.

50.    At around this time, the Otoe-Missouria Tribal Chairman announced that the Tribe was acquiring Defendant MacFarlane Group, Inc.

51.    Over the next several months, AWL, Inc. registered as a foreign corporation in the States of Illinois, Kansas, Nevada, and Texas.

52.    The Texas State filings for AWL, Inc. list Defendants Curry, McGowan, and Ney, all non-tribal members, as being on the company's Board of Directors.

53.     As with Defendants Curry and McGowan, AWL, Inc. is not Defendant Ney's first foray into rent-a-tribe payday lending.  In mid-to-late 2012, Defendant Ney raised at least $8 million from private, non-tribal investors to fund payday loans made in the name of Blue King, Inc., which was owned by the Chukchansi Indian Tribe of eastern California.  A substantial part of the revenues generated by Blue King, Inc. payday loans was paid to the loan servicing companies Arcapex LLC, Blackthorn Advisory Group LLC, and Light Sword LLC, all of which were co-owned by Defendant Ney.

54.     The Texas and Kansas State corporate filings for AWL, Inc. were faxed from the same off-reservation number in the State of Kansas.

55.     The Texas and Kansas State corporate filings by AWL, Inc. were sent by non-tribal member Lea McCandless, who is a former Executive Legal Assistant at Defendant MacFarlane Group.

C.     **Plaintiffs' Payday Loans with Defendants Under the Names of American Web Loan, Inc. and AWL, Inc.**

    1.     **Plaintiff Christina Williams**

        a.     **January 17, 2017 Loan**

56.     Plaintiff Christina Williams entered into a payday "Loan Agreement" over the internet from her home in Philadelphia, Pennsylvania on or about January 17, 2017.  The nominal lender was "American Web Loan, Inc."

57.     The loan was for the amount of $1,400.  The Loan Agreement required Ms. Williams to make bi-weekly payments of $300.31 from February 3, 2017 to October 13, 2017, with a final payment of $299.86 due on October 27, 2017.  The total of these required payments was $6,005.94.

58.     This represented a finance charge of $4,605.94 on a $1,400 loan paid back in under ten months.

59.     The stated interest rate on the Loan Agreement is 520.90% APR.

60.     The Loan Agreement included an Electronic Funds Transfer ("EFT") authorization wherein Ms. Williams was deemed to authorize the lender and its agents to debit payments from her personal bank account in Pennsylvania.

61.     Ms. Williams made bi-weekly payments of $300.32 on February 3, February 17, and March 3, 2017.  Of these payments, over $800 was credited to interest, while less than $96 was credited to principal reduction.

62.     On March 3, 2017, Ms. Williams paid the remaining principal balance of $1,304.05 with proceeds from another loan.

63.     Ms. Williams had the January 17, 2017 "American Web Loans, Inc." loan open for just 46 days, during which time she paid over $800 interest on an original loan balance of $1,400.  This means Ms. Williams paid interest on the loan at a rate that was greater than 500% APR.

b.  **April 25, 2017 Loan**

64.    Ms. Williams entered into another payday "Loan Agreement" over the internet from her home in Philadelphia, Pennsylvania on or about April 25, 2017. The nominal lender, again, was American Web Loan, Inc.

65.    The loan was for the amount of $1,600.  The loan required Ms. Williams to make bi-weekly payments of $469.50 from May 12, 2017 to January 19, 2018, with a final payment of $467.53 due on February 2, 2018.  The total of these required payments was $9,388.03.

66.    This represented a finance charge of $7,788.03 on a $1,600 loan paid back in under ten months.

67.    The stated interest rate on the Loan Agreement is 714.88% APR.

68.    The Loan Agreement included an EFT authorization wherein Ms. Williams was deemed to authorize the lender and its agents to debit payments from her personal bank account in Pennsylvania.

69.    Ms. Williams made bi-weekly payments of $469.50 on May 12, May 26, June 9, June 23, and July 7, 2017.  The total of these payments was $2,347.50.

70.    Ms. Williams had the April 25, 2017 "American Web Loans, Inc." loan open for 74 days, during which time she paid at least $747.50 interest on an original loan balance of $1,600.  This means Ms. Williams paid interest on the loan at a rate of at least 233% APR.

## 2.    **Plaintiff Michael Stermel**

71.    Plaintiff Michael Stermel entered into a "Loan Agreement" over the internet from his home in Philadelphia, Pennsylvania on or about July 28, 2017. The nominal lender was "AWL, Inc."

72.    The loan was in the amount of $1,000.  The Loan Agreement required Mr. Stermel to make bi-weekly payments of $213.08 from August 17, 2017 to April 26, 2018, with a final payment of $212.44 due on May 10, 2018.  The total of these required payments was $4,260.96.

73.    This represented a finance charge of $3,260.96 on a $1,000 loan paid back in under ten months.

74.    The stated interest rate on the Loan Agreement is 496.55% APR.

75.    The Loan Agreement included an EFT authorization wherein Mr. Stermel was deemed to authorize the lender and its agents to debit payments from his personal bank account in Pennsylvania.

76.    Mr. Stermel made bi-weekly payments of $213.08 on August 17, 2017 and August 31, 2017.  Both of these payments were credited entirely to interest, so that the principal balance on the loan after these two payments still was the original $1,000 amount borrowed.

77.    Mr. Stermel had the July 28, 2017 "AWL, Inc." loan open for at least 34 days, during which time he paid $426.16 interest on an original loan balance of

14

$1,000. This means Mr. Stermel paid interest on the loan at a rate of over 457% APR.

## V.   CLASS ACTION ALLEGATIONS

78.   Plaintiffs seek to represent a Class of all citizens of Pennsylvania who, within the six years preceding the filing of this Complaint, have obtained one or more loans with interest charges in excess of six percent (6%) APR where the lender named on the loan agreement was "American Web Loan, Inc." or "AWL, Inc."

79.   Plaintiffs also seek to represent a Subclass comprised of all Class members who obtained one or more subject loan within the four years preceding the filing of this Complaint.

80.   Upon information and belief, the Class and Subclass are sufficiently numerous that joinder of all members is impracticable within the meaning of Fed. R. Civ. P. 23(a)(1).  Defendant MacFarlane Group, Inc. is reported to have realized profits in excess of $100 million as of 2014 from its rent-a-tribe payday lending arrangement with the Otoe-Missouria tribe, carried out through loan agreements naming American Web Loan, Inc. or AWL, Inc. as the lender.

81.   There are questions of law and fact common to the Class and Subclass within the meaning of Fed. R. Civ. P. 23(a)(2), which common issues predominate

over any issues peculiar to individual Class members within the meaning of Fed. R. Civ. P. 23(b)(3).  The principal common questions include:

**For the Class**

(a)    Whether one or more of the Defendants are the true lender on the American Web Loan, Inc. and/or AWL, Inc. payday loans made over the internet to Pennsylvania citizens;

(b)    Whether Defendants' lending practices to Pennsylvania consumers violate the LIPL and/or CDCA;

(c)    Whether Defendants' practices, as described above, constitute unfair or deceptive trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201 *et seq.*

(d)    Whether Defendants' collection of the payday loans violates the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270.1 *et seq.*

(e)    Whether Defendants' business practices constitute the business of acting as a "credit services organization" or "loan broker" in violation of the Pennsylvania Credit Services Act ("CSA"), 73 Pa. Stat. §§ 2181 *et seq.*

(f)      Whether Plaintiffs and the Class are entitled to a declaratory judgment that any purported contracts arising from the subject payday loans are void and unenforceable;

(g)      Whether Plaintiffs are entitled to injunctive relief enjoining Defendants from engaging in usurious payday lending with Pennsylvania citizens;

(h)      Whether Plaintiffs and Class members are entitled to damages and/or restitution of all interest paid on the subject payday loans, and whether those damages should be trebled for Defendants' willful, deliberate, unconscionable, repeated, and otherwise aggravated unlawful practices.

**For the Subclass**

(a)      Whether Defendants engaged in an enterprise for the purpose of collecting unlawful debts;

(b)      Whether Defendants conspired to form an enterprise for the purpose of collecting unlawful debts.

82.      The claims of the Plaintiffs are typical of the claims of each member of the Class and Subclass, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of substantially the same facts constituting the wrongful conduct of Defendants.

83.     Plaintiffs will fairly and adequately protect the interests of the Class

and Subclass within the meaning of Fed. R. Civ. P. 23(a)(4).  Plaintiffs have

retained counsel experienced and competent in class actions and complex

consumer litigation, and Plaintiffs themselves have no conflicting interests with

those of the Class or Subclass.

84.     Certification of the Class and Subclass pursuant to Fed. R. Civ. P.

23(b) is appropriate because:

(a)     The prosecution of separate actions by individual members of

the Class and Subclass would create a risk of establishing incompatible

standards of conduct for Defendants, within the meaning of Fed. R. Civ. P.

23(b)(1)(A);

(b)     Defendants' actions are generally applicable to the Class and

Subclass as a whole and, since Defendants have acted on grounds generally

applicable to the Class and Subclass, Plaintiffs seek equitable remedies with

respect to the Class and Subclass as a whole within the meaning of Fed. R.

Civ. P. 23(b)(2);

(c)     Common questions of law and fact enumerated above

predominate over questions affecting only individual members of the Class

and Subclass, and a class action is the superior method for fair and efficient

adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3);

(d)     The likelihood that individual members of the Class and Subclass will prosecute separate actions is remote due to the complexities of the issues, the relatively modest amounts of individual recoveries, and the time and expense necessary to conduct such litigation; and

(e)     There are no difficulties likely to be encountered in the management of the action as a class action.

## VI.   CAUSES OF ACTION

### COUNT I
**(Asserted on Behalf of Plaintiffs and the Class)**

### Violation of Pennsylvania Usury Law, 41 Pa. Stat. § 101 *et seq.*

85.   Plaintiffs hereby incorporate by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.   Defendants, through the operations and conduct described above, were or are in the business of arranging, funding, and servicing credit in the amount of $50,000 or less, and are subject to the provisions of the Pennsylvania Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 201 *et seq.*

87.   Because Defendants failed to obtain a license under the CDCA, the interest rates applicable to the subject payday loan transactions can be no higher than that set by the general Pennsylvania usury law under the Loan Interest and

Protection Law ("LIPL") —six percent (6%) annual percentage rate.  41 Pa. Stat.

§§ 201 *et seq.*

88.    By charging and collecting interest at a rate higher than that permitted

by law, Defendants violated the LIPL, 41 Pa. Stat. §§ 201, 501.  The LIPL's

protections cannot be waived.  41 Pa. Stat. § 408.

89.    Plaintiffs and Class members are entitled to triple the amount of

excess interest they have paid on the subject payday loans, together with

reasonable attorneys' fees and costs, pursuant to 41 Pa. Stat. §§ 502-503.

90.    Plaintiffs and Class members also are entitled to a declaratory

judgment that the subject payday loans violate Pennsylvania's usury law, as well as

an injunction prohibiting Defendants from arranging, funding, and/or servicing

usurious payday loans in Pennsylvania.

**WHEREFORE**, Plaintiffs request that the Court order the following relief

in their favor and on behalf of all members of the Class against Defendants:

A.    A determination that this action proceed as a class action, that

Plaintiffs be certified as Class representatives, and that their counsel be certified to

represent the Class;

B.    A declaratory judgment that Defendants' conduct violated the laws

cited above, and that any purported contracts with Class members arising during

the Class period from usurious payday loans arranged, funded, and/or serviced by

Defendants are void and unenforceable;

C.   An injunction prohibiting Defendants from offering, making,

arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania;

D.   Monetary damages in the amount of three times the excess interest,

finance charges, and fees paid by Class members on the subject payday loans,

pursuant to the LIPL;

E.   Disgorgement of Defendants' unjustly obtained interest payments;

F.   An award of attorneys' fees and litigation expenses and costs; and

G.   Such other and further relief as the Court deems just and proper.

## COUNT II
**(Asserted on Behalf of Plaintiffs and the Class)**

### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 *et seq.*

91.   Plaintiffs hereby incorporate by reference each and every allegation

contained in the foregoing paragraphs as if set forth fully herein.

92.   Plaintiffs and Class members obtained the subject payday loans

arranged, funded, and serviced by Defendants primarily for personal, family, or

household purposes.

93.   Defendants, through the conduct described above, are or were in the

business of arranging, funding, servicing, and/or collecting money on credit in the

amount of $25,000 or less, and are subject to the provisions of the CDCA, 7 Pa.

Stat. §§ 6201 *et seq.*

94.    Because Defendants failed to obtain a license under the CDCA, the

interest rate applicable to the subject payday loan transactions can be no higher

than that set by the LIPL—six percent (6%) APR.

95.    By charging and collecting interest at a rate higher than that permitted

by law, Defendants have violated the LIPL, 41 Pa. Stat. §§ 201, 501.  The LIPL's

protections cannot be waived.  41 Pa. Stat. § 408.

96.    Defendants' violation of the LIPL constitutes a *per se* unfair or

deceptive act or practice under the Pennsylvania Unfair Trade Practices and

Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§201-1 *et seq.*

97.    By arranging, funding, servicing, and/or collecting on small loans

with interest rates in excess of 6% APR without a license, Defendants have

violated the CDCA, 7 Pa. Stat. § 6203.

98.    Defendants' violation of the CDCA constitutes a *per se* unfair or

deceptive act or practice under the UTPCPL.

99.    Defendants' violations of the FCEUA, 73 Pa. Stat. §§ 2270.1 *et seq.*,

as described below, constitute *per se* unfair or deceptive trade practices under the

UTPCPL, pursuant to FCEUA, 73 PA. Stat. § 2270.5(a).

100.   In addition, Defendants' acts described above are unfair acts or deceptive acts or practices, as defined by the UTPCPL, 73 Pa. Stat. §§ 201-2(4) and 73 Pa. Stat. § 201-3, in that Defendants have, through form contracts and other acts and practices common to the Class:

(a)   Caused a likelihood of confusion or misunderstanding as to the legality of the payday loans offered under the name of American Web Loan, Inc. or AWL, Inc., in violation of 73 Pa. Stat. § 201-2(4)(ii);

(b)   Passed off the loan services provided by Defendants as those of another, when in fact Defendants provide the services, in violation of 73 Pa. Stat. §§ 201-2(4)(i) and 201-3;

(c)   Caused a likelihood of confusion or misunderstanding as to the source of the payday loans offered under the name of American Web Loan, Inc. or AWL, Inc., in violation of 73 Pa. Stat. §§ 201-2(4)(ii) and 201-3, by listing the purported lender of the payday loans to be American Web Loan, Inc. or AWL, Inc. when in fact Defendants were the true lender;

(d)   Caused a likelihood of confusion or misunderstanding as to the role and interest of Defendants in the transaction, in violation of 73 Pa. Stat. §§ 201-2(4)(ii) and 201-3, by listing the purported lender of the payday loans to be American Web Loan, Inc. or AWL, Inc. when in fact Defendants

23

were the true lender and had the predominate economic interest in the loans; and,

(e)   Engaged in deceptive conduct which created a likelihood of confusion or misunderstanding, in violation of 73 Pa. Stat. § 201-2(4)(xxi).

101.   Plaintiffs and Class members have suffered an ascertainable loss of money as a result of these unfair or deceptive acts or practices.  Specifically, they have paid a grossly higher interest rate on loans than they would have paid had the loans been made in compliance with Pennsylvania law and had Defendants not engaged in unfair and deceptive conduct.

102.   Defendants' acts were made knowingly, deliberately, and repeatedly, warranting the imposition of an award of treble damages under 73 Pa. stat. § 201.9.2(a) of the UTPCPL.

**WHEREFORE**, Plaintiffs request that the Court order the following relief in their favor and on behalf of all members of the Class against Defendants:

A.   A determination that this action proceed as a class action, that Plaintiffs be certified as Class representatives, and that their counsel be certified to represent the Class;

B.   A declaratory judgment that Defendants' conduct violates the laws cited above, and that any purported contracts with Class members arising during

the Class period from usurious payday loans arranged, funded, and/or serviced by

Defendants are void and unenforceable;

C.      An injunction prohibiting Defendants from offering, making,

arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania;

D.      Monetary damages and/or restitution of all amounts of illegal interest,

finance charges, and fees paid on the subject payday loans, trebled for Defendants'

willful, deliberate, unconscionable, repeated, and otherwise aggravated unlawful

practices, pursuant to the UTPCPL,73 Pa. Stat. § 201.9.2(a);

E.      Disgorgement of Defendants' unjustly obtained interest payments;

F.      An award of attorneys' fees and litigation expenses and costs; and

G.      Such other and further relief as the Court deems just and proper.

## COUNT III
**(Asserted on Behalf of Plaintiffs and the Class)**

### Violations of Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Stat. § 2270.1 *et seq.*

103.    Plaintiffs reallege and incorporate by reference all preceding

allegations of law and fact.

104.    Defendants violated the Pennsylvania Fair Credit Extension

Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270.1 *et seq.*, by the following

conduct:

(a)     Collecting and attempting to collect interest charges that are not permitted by law;

(b)     Giving a false representation of the legal status of the alleged debt; and

(c)     Making threats to take action which cannot legally be taken.

105.   Plaintiffs and Class members have suffered an ascertainable loss as a result of these deceptive debt-collection practices.

**WHEREFORE**, Plaintiffs request that the Court order the following relief in their favor and on behalf of all members of the Class against Defendants:

A.     A determination that this action proceed as a class action, that Plaintiffs be certified as Class representatives, and that their counsel be certified to represent the Class;

B.     A declaratory judgment that Defendants' conduct violates the laws cited above, and that any purported contracts with Class members arising during the Class period from usurious payday loans arranged, funded, and/or serviced by Defendants are void and unenforceable;

C.     An injunction prohibiting Defendants from offering, making, arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania;

D.     Monetary damages and/or restitution of all amounts of illegal interest, finance charges, and fees paid on the subject payday loans, trebled for Defendants'

willful, deliberate, unconscionable, repeated, and otherwise aggravated unlawful

practices, pursuant to the UTPCPL, 73 Pa. Stat. § 201.9.2(a);

E.      Disgorgement of Defendants' unjustly obtained interest payments;

F.      An award of attorneys' fees and litigation expenses and costs; and

G.      Such other and further relief as the Court deems just and proper.

## COUNT IV
**(Asserted on Behalf of Plaintiffs and the Class)**

### In the Alternative:  Violations of the Pennsylvania Credit Services Act, 73 Pa. Stat. §§ 2181 *et seq.*

106.   Plaintiffs reallege and incorporate by reference all preceding

allegations of law and fact.

107.   In the alternative to the allegations and claims made regarding

Defendants as the true lender of the subject payday loans, Plaintiffs allege that

Defendants have operated in Pennsylvania as both a "loan broker" and "credit

services organization" within the meaning of the Pennsylvania Credit Services Act

("CSA"), 73 Pa. Stat. §§ 2181 *et seq.*

108.   The CSA prohibits loan brokers from making any false or misleading

representations, omitting any material facts in the offer or sale of their services, or

engaging directly or indirectly in any act that operates or would operate as fraud or

deception upon any person in connection with their offer or sale of their services.

73 Pa. Stat. § 2188(c)(2).

109.   Defendants violated the loan broker provisions of the CSA in a number of ways, including the following:

(a)   Misrepresenting the role and interest of Defendants in the payday loan product by listing the purported lender of the payday loans to be American Web Loan, Inc. or AWL, Inc. when in fact Defendants were the true lender;

(b)   Failing to disclose their significant financial interest in the loan product; and

(c)   Engaging in other deceptive conduct.

110.   By providing payday borrowers with assistance in obtaining an extension of credit in return for compensation, Defendants also are or were a "credit services organization" subject to the requirements of the CSA.  These requirements include:

(a)   Providing customers with an information sheet about these services and fees prior to the execution of the contract or prior to receipt of any money, 7 Pa. Stat. §§ 2185, 2187; and

(b)   Requiring their contract with customers to include certain information, including notice of the customer's right to cancel the contract within five days of signing, 73 Pa. Stat. § 2186.

111.   In addition, the CSA prohibits a credit services organization from making or using untrue or misleading representations in the offer or sale of its services and engaging directly or indirectly in any act, practice, or course of business which operates or would operate as a deception upon any person in connection with the offer or sale of its services.  73 Pa. Stat. § 2183(4).

112.   Defendants have violated the credit services organization provisions of the CSA in a number of ways, including the following:

    (a)    Failing to provide the required information sheet;

    (b)    Failing to provide a contract that includes the required terms, including notice of the right to cancel;

    (c)    Misrepresenting the role and interest of Defendants in the payday loan product by listing the purported lender of the payday loans to be American Web Loan, Inc. or AWL, Inc. when in fact Defendants were the true lender;

    (d)    Failing to disclose their significant financial interest in the loan product; and

    (e)    Engaging in other deceptive conduct regarding the payday loans.

**WHEREFORE**, Plaintiffs request that the Court order the following relief in their favor and on behalf of all members of the Class against Defendants:

29

A. A determination that this action proceed as a class action, that Plaintiffs be certified as Class representatives, and that their counsel be certified to represent the Class;

B. A declaratory judgment that Defendants' conduct violates the laws cited above, and that any purported contracts with Class members arising during the Class period from usurious payday loans arranged, funded, and/or serviced by Defendants are void and unenforceable;

C. An injunction prohibiting Defendants from offering, making, arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania;

D. Actual and punitive damages pursuant to 73 Pa. Stat. § 2191;

E. Monetary damages and/or restitution of all amounts of illegal interest, finance charges, and fees paid on the subject payday loans, trebled for Defendants' willful, deliberate, unconscionable, repeated, and otherwise aggravated unlawful practices, pursuant to the UTPCPL, 73 Pa. Stat. § 201.9.2(a);

F. Disgorgement of Defendants' unjustly obtained interest payments;

G. An award of attorneys' fees and litigation expenses and costs; and

H. Such other and further relief as the Court deems just and proper.

## COUNT V
### (Asserted on Behalf of Plaintiffs and the Subclass)

### Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

113.   Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

114.   The American Web Loan, Inc. and AWL, Inc. entities were sham organizations that operated as a front for Defendants to obscure and shield the illegal making, servicing, and collecting of usurious consumer loans within the Commonwealth of Pennsylvania.  The American Web Loan, Inc. and AWL, Inc. entities thus acted as the "alter ego" for Defendants, and Defendants are personally liable, jointly and severally, for the damages alleged herein.  In the alternative, to the extent the Court concludes that the American Web Loan, Inc. and AWL, Inc. entities did not operate as the alter ego of Defendants, then the American Web Loan, Inc. and AWL, Inc. entities were an enterprise of individual persons and entities that formed an association-in-fact for the purpose of engaging in criminal activity, including the collection of unlawful debt, as prohibited by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

115.   RICO prohibits the use of an enterprise for the collection of unlawful debt as follows:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect, interstate

or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

116.   RICO also prohibits a conspiracy to use an enterprise for the collection of unlawful debt.  18 U.S.C. § 1962(d).

117.   Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1961(3).

118.   The American Web Loan, Inc. and AWL, Inc. entities consisting of each named Defendant along with the entities themselves are an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

119.   The American Web Loan, Inc. and AWL, Inc. Enterprise is engaged in interstate commerce, including without limitation the making, servicing, and collecting of loans across State lines.

120.   Loans made by the American Web Loan, Inc. and AWL, Inc. Enterprise constitute "unlawful debt" as that term is defined in 18 U.S.C. § 1961(6) because (i) the debt resulting from the loans is unenforceable in whole or in part as to principal and interest under Pennsylvania laws relating to usury, and (ii) the debt was incurred in connection with the business of lending money at a usurious rate of interest that is more than twice the enforceable rate under New Jersey law.

121.   Defendants violated 18 U.S.C. § 1962(c) by participating, directly or indirectly, in the conduct of the American Web Loan, Inc. and AWL, Inc. Enterprise's affairs in the collection of unlawful debt.  Money consisting of unlawful debts collected by Defendants was re-invested in the business of the American Web Loan, Inc. and AWL, Inc. Enterprise.

122.   Defendants also violated 18 U.S.C. § 1962(d) by conspiring to use the American Web Loan, Inc. and AWL, Inc. Enterprise to collect unlawful debt. Each Defendant knowingly agreed to participate in the scheme alleged herein that allowed the American Web Loan, Inc. and AWL, Inc. Enterprise to make unlawful loans and collect unlawful debt at more than 80 to 100 times the lawful rate of interest under Pennsylvania's usury laws.

123.   Plaintiffs and members of the Subclass have sustained injury to their property directly caused by Defendants' violations of 18 U.S.C. § 1962 in the form of, among other things, the payment of unlawful and usurious rates of interest on loans made by the American Web Loan, Inc. and AWL, Inc. enterprise.

**WHEREFORE**, Plaintiffs request that the Court order the following relief in their favor and on behalf of all members of the Subclass against Defendants:

A.      A determination that this action proceed as a class action on behalf of the Subclass, that Plaintiffs be certified as Subclass representatives, and that their counsel be certified to represent the Subclass;

B.     A declaratory judgment that Defendants' conduct violated the laws cited above, and that any purported contracts with Subclass members arising during the four-year Subclass period from usurious payday loans arranged, funded, and/or serviced by Defendants are void and unenforceable;

C.     An injunction prohibiting Defendants from offering, making, arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania;

D.     Monetary damages in the amount of three times the excess interest, finance charges, and fees paid by Subclass members on the subject payday loans, pursuant to 18 U.S.C. § 1964(c);

E.     An award of attorneys' fees and litigation expenses and costs pursuant to 18 U.S.C. § 1964(c); and

F.     Such other and further relief as the Court deems just and proper.

## VII.  JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated:     June 28, 2018

Respectfully submitted,

BEREZOFSKY LAW GROUP, LLC

Michael J. Quirk, Esq. (PA I.D. No. 204677)
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118-3324
(856) 667-0500
mquirk@eblawllc.com

34

Sarah T. Hansel, Esq. (PA I.D. No. 319224)
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
(856) 667-0500
shansel@eblawllc.com

LAW OFFICES OF ROBERT P. COCCO, P.C.
Robert P. Cocco, Esq. (PA I.D. No. 61907)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200
rcocco@rcn.com

GUPTA WESSLER PLLC
Matthew W.H. Wessler, Esq.
(*Pro Hac Vice Application Forthcoming*)
1900 L Street, NW, Suite 312
Washington, D.C. 20036
(202) 888-1741
matt@guptawessler.com

*Counsel for Plaintiffs and the Putative Class*