## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA WILLIAMS and MICHAEL STERMEL**, on behalf of themselves and all others similarly situated,<br><br>        **Plaintiffs,**<br><br>  **v.**<br><br>**RED STONE, INC.**, as successor in interest to MACFARLANE GROUP, INC., MEDLEY OPPORTUNITY FUND II, LP, MARK CURRY, BRIAN MCGOWAN, VINCENT NEY, and other JOHN DOE persons or entities,<br><br>        **Defendants.** | **No. 2:18-cv-02747-MSG** |

## DEFENDANT MARK CURRY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS WITHOUT PREJUDICE OR TO STAY PROCEEDINGS

This case involves similar loans made by the same company, substantially similar parties, overlapping putative classes, and substantively identical claims and defenses as three putative class actions pending in the Eastern District of Virginia. Two of those cases were filed well before this action and are now consolidated before the Honorable Henry Coke Morgan, Jr.: *Solomon, et al. v. American Web Loan Inc., et al.*, No. 4:17-cv-00145-HCM-RJK (E.D. Va.) (filed Dec. 15, 2017) and *Hengle, et al. v. Curry, et al.*, No. 4:18-cv-75-HCM-RJK (E.D. Va.) (filed Feb. 13, 2018) (together, the "First-Filed Actions").

The third action, *Glatt*, was filed six weeks after this action by the same counsel representing Plaintiffs in this case, Matthew Wessler of Gupta Wessler PLLC. *See Glatt, et al. v. Curry, et al.*, No. 4:18-cv-00101-HCM-RJK (E.D. Va.) (filed Aug. 9, 2018). *Glatt* is also assigned to Judge Morgan, who has indicated his intention to consolidate it with the First-Filed Actions. *Glatt* was filed in connection with Mr. Wessler's and *Hengle* plaintiffs' counsel's

efforts to be appointed to the interim class counsel leadership group in the First-Filed Actions. That effort failed—the court chose different interim lead class counsel, who are actively pursuing the plaintiffs' claims in the First-Filed Actions.

Shortly after this ruling, counsel for Mark Curry approached Plaintiffs' counsel for consent to transfer this action to the Eastern District of Virginia because (1) of the overlap between this case, the First-Filed Actions, and *Glatt*, and (2) the parties to the First-Filed Actions have already completed briefing on dispositive legal defenses that are equally applicable here. Plaintiffs refused to consent. Absent their consent, this case cannot be transferred to the Eastern District of Virginia because venue is not proper there.

Specially-Appearing Defendant Mark Curry therefore respectfully requests that this case be dismissed without prejudice or stayed pending final resolution of the First-Filed Actions and *Glatt* under the first-filed rule. Simply put, this is a copycat case that wastes judicial and party resources; it should not proceed.

## BACKGROUND

The central issue in this case is the legality of short-term loans extended over the internet to consumers who reside in Pennsylvania. These loans were issued by AWL—a company created and wholly owned and operated by the federally recognized Otoe-Missouria Tribe of Indians ("Tribe").[1] *See* Am. Compl. ¶¶ 2, 57, 65, 72, ECF No. 4. Defendants in this case are employees, directors, and affiliates of AWL, or lenders to a company that provided capital for AWL's loans: Curry is CEO of AWL and a member of its Board of Directors; McGowan is AWL's Chief Treasury Officer and member of its Board of Directors; Ney is a member of

---

[1] AWL, Inc. was previously incorporated as American Web Loan, Inc. For ease of reference, this memorandum uses "AWL" to refer to both entities collectively.

AWL's Board of Directors; Red Stone, Inc. ("Red Stone") is owned by the Otoe-Missouria Tribe and is the successor-in-interest to MacFarlane Group, Inc. ("MacFarlane") (the assets of which were assigned to AWL, Inc. in 2016); and Medley Opportunity Fund II, LP ("Medley") has loaned capital to American Web Loan Holdings, LLC, a company that provided capital for AWL's loans and was later acquired by AWL.

AWL was created by the Otoe-Missouria Tribe of Indians, under Tribal law, for the purpose of engaging in short-term consumer lending according to the laws and regulations of the Tribe. *See* Mem. in Supp. of Mot. to Dismiss Pls.' Am. Compl. Pursuant to Fed. R. of Civ. P. 12(b)(1) at 5–9, *Solomon*, No. 4:17-cv-00145 (Apr. 9, 2018), ECF No. 73. The loan agreements between AWL and its customers, including named Plaintiffs' loan agreements, contain, among other terms, (1) a provision requiring consumers to arbitrate disputes in connection with their loan agreement with either the American Arbitration Association or JAMS, and (2) a choice-of-law provision selecting Otoe-Missouria law and applicable federal law as the governing law. *See* Mem. in Supp. of Mot. to Compel Arbitration 2–3, 11, *Solomon*, No. 4:17-cv-00145 (Apr. 9, 2018), ECF No. 75.

Despite the express terms of their agreements, Plaintiffs bring this action on behalf of a putative class of all Pennsylvania consumers who received loans from AWL, alleging that their loans were illegal under Pennsylvania law. Specifically, Plaintiffs allege that AWL was not the "true lender," but that Defendants set up a "rent-a-tribe" scheme "[t]o evade State licensure, usury, and consumer protection laws." Am. Compl. ¶¶ 2, 18–56. Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"); the Pennsylvania Usury Law; the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and the Pennsylvania Fair Credit Extension Uniformity Act or, alternatively, the Pennsylvania Credit Services Act.

But these allegations and claims are not new.  They mirror those levied in three putative class actions pending in the Eastern District of Virginia.

On December 15, 2017, the first of these actions, *Solomon*, was filed in the Eastern District of Virginia.  *Solomon* is a putative nationwide class action lawsuit alleging that AWL's loans were unlawful.  Am. Compl. ¶¶ 1, 198, *Solomon*, No. 4:17-cv-00145 (Mar. 9, 2018), ECF No. 41 ("*Solomon* Compl.") (attached as Rodman Decl. Ex. 1).  The complaint names AWL, Curry, MacFarlane, and Medley, among others.  The *Solomon* complaint alleges that the defendants engaged in an "unlawful online payday lending scheme" that is "a prime example of what is known as a 'rent-a-tribe' lending operation."  *Solomon* Compl. ¶ 6.  *Solomon's* putative nationwide class seeks to bring claims on behalf of all consumers who took out loans from AWL under RICO, the Electronic Funds Transfer Act, the Truth in Lending Act, and unjust enrichment.  *Id.* ¶¶ 198, 209–76.

On February 13, 2018, another putative class action lawsuit alleging that AWL's loans were unlawful, *Hengle*, was filed in the Eastern District of Virginia, this one on behalf of a Virginia class of consumers who took out loans from AWL.  The defendants named in *Hengle* include Curry, AWL, Red Stone, and Medley.  Like *Solomon*, *Hengle* alleges that the defendants created a "rent-a-tribe" scheme "for the dual purpose of avoiding state and federal laws and concealing the role of Curry's companies."  Compl. ¶ 2, *Hengle*, No. 4:18-cv-75 (Feb. 13, 2018), ECF No. 1 ("*Hengle* Compl.") (attached as Rodman Decl. Ex. 2).  The *Hengle* plaintiffs bring claims under RICO, Virginia usury laws, and unjust enrichment.  *Id.* ¶¶ 84–153.

*Solomon* and *Hengle* were consolidated on August 8, 2018 for all purposes upon a finding that they "concern common questions of law and fact."  Order 9, *Solomon*, No. 4:18-cv-75 (Aug. 8, 2018), ECF No. 161.  And, they have advanced well beyond this case procedurally.

AWL and Curry separately moved to dismiss for lack of subject matter jurisdiction because AWL is entitled to sovereign immunity as a governmental arm of a federally recognized Indian Tribe, and Curry is entitled to official and derivative immunity as an officer of and a contractor with AWL.  While these motions are fully briefed in the *Solomon* matter, the *Hengle* plaintiffs requested jurisdictional discovery.  That discovery is under way and briefing will be completed in the next few months.  *See* Joint Proposed Schedule, *Solomon*, No. 4:18-cv-75 (Sept. 5, 2018), ECF No. 187 ("*Solomon* Proposed Schedule").  The defendants in the First-Filed Actions also filed motions:  (1) to compel arbitration, because the loan agreements provide that any disputes would be arbitrated; (2) to transfer to the Western District of Oklahoma, because that is the location of the Tribe, key witnesses, and documents; and (3) to dismiss for failure to state a claim, because, among other reasons, the loan agreements are governed by Tribal law, and the loans are lawful under Tribal law.  These motions are fully briefed and awaiting decision.  If this case moves forward, Curry anticipates similar motion practice here.

On August 10, 2018, plaintiffs' counsel in *Solomon* and *Hengle* submitted competing motions to be appointed interim class counsel.  The motion submitted by the *Hengle* plaintiffs' counsel, Consumer Litigation Associates, P.C. and Kelly & Crandall, PLC (together, "*Hengle* Counsel"), is relevant here for three reasons.

First, the motion attached the complaint in a new case, *Glatt*, that was filed just one day prior in the Eastern District of Virginia.  *Glatt* is yet another putative class action alleging that defendants Curry, AWL, Red Stone, and Medley, joined together "to make high-interest loans over the internet while avoiding state usury laws" through a "rent-a-tribe scheme."  Compl. ¶¶ 3, 11, *Glatt, et al. v. Curry, et al.*, No. 4:18-cv-00101-HCM-RJK (E.D. Va. Aug. 9, 2018), ECF No. 1 ("*Glatt* Compl.") (attached as Rodman Decl. Ex. 3).  *Hengle* Counsel's motion for appointment

as interim class counsel asked the court to consolidate *Glatt* with the First-Filed Actions.  *See Hengle* Pls.' Proposal Regarding and Mem. in Supp. of Mot. for Appointment of Interim Class Counsel 3, *Solomon*, No. 4:18-cv-75 (Aug. 10, 2018), ECF No. 163 ("*Hengle* Counsel Mot."); *see also* Proposed Order 2, *Solomon*, No. 4:18-cv-75 (Aug. 10, 2018), ECF No. 163-1 ("*Hengle* Counsel Proposed Order").

Second, *Hengle* Counsel represented that *Glatt* would streamline the litigation concerning the legality of AWL's loans.  *Hengle* Counsel Mot. 3.  *Hengle* Counsel stated:

> *Solomon* and *Hengle* are consolidated.  But nationwide, it was inevitable that other cases and consumer claims would be filed.  The universe of experienced tribal lending field consumer advocates is small.  Accordingly, ***to avoid further complications in this litigation***, *Hengle* Plaintiffs reached out to those other specialists to determine if they intended to file separate American Web Loan cases.  As expected additional filings were on the horizon.  This case is correctly in this District and Division.  And with *Solomon* having pled a national RICO class claim, ***the greater number of states directly represented, the more effective and fair the outcome can be.***  Given the pressing deadlines, without the immediate means to amend to a governing complaint, ***these additional consumers, claims, states and lawyers enter this litigation by a third case filing***, *Glatt, et. al. v. Curry, et. al.* (E.D. Va.).

*Id.* (emphases added).

One of the "tribal lending field consumer advocates" representing the *Glatt* plaintiffs is also counsel to Plaintiffs in this matter, Matthew Wessler of Gupta Wessler PLLC.  It is no surprise then that *Glatt* includes a putative class of Pennsylvania consumers who took out loans from AWL and alleges claims substantively identical to those pled here (RICO, Pennsylvania's usury statute, Pennsylvania's Fair Credit Extension and Uniformity Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and unjust enrichment).

Third, *Hengle* Counsel's motion asked the court to appoint Mr. Wessler to plaintiffs' executive committee in the First-Filed Actions to "provide services at the direction of interim

lead class counsel as deemed necessary and appropriate." *Hengle* Counsel Proposed Order 3.

Mr. Wessler has since been admitted *pro hac vice* to represent the plaintiffs in *Hengle*. *See*

*Solomon*, No. 4:18-cv-75 (Aug. 14, 2018), ECF No. 185.

Late last month, the court appointed Berman Tabacco and Gravel & Shea, P.C., the

plaintiffs' counsel in *Solomon*, as interim co-lead class counsel in the First-Filed Actions.  Order,

*Solomon*, No. 4:18-cv-75 (Aug. 29, 2018), ECF No. 180.  Consumer Litigation Associates, P.C.

was appointed interim local class counsel.  *Id.*  The court did not appoint an "executive

committee" as requested by *Hengle* Counsel.  The court also indicated its intention to consolidate

*Glatt* with the First-Filed Actions.  *See* Decl. of Rachel Rodman ("Rodman Decl.") Ex. 4.

Because this action is on all fours with the First-Filed Actions and *Glatt*, counsel for

Curry contacted Plaintiffs' counsel to request Plaintiffs' consent to transfer this action to the

Eastern District of Virginia.  Plaintiffs refused to consent.  *See* Rodman Decl. ¶¶ 5–6.

## ARGUMENT

This case is a paradigmatic example of duplicative, vexatious litigation, involving claims,

defenses, and parties materially identical to those in the First-Filed Actions.  Courts have

developed a mechanism to handle situations like this one:  the first-filed rule.  When duplicative

cases are pending in two federal courts, "there is a presumption that the later-filed action should

be dismissed, transferred, or stayed," so that the court that first had possession of the subject

matter can decide it.  *Landau v. Viridian Energy PA LLC*, 274 F. Supp. 3d 329, 333 (E.D. Pa.

2017); *see also E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other*

*grounds*, 493 U.S. 182 (1990).  Only under "rare or extraordinary circumstances" should a court

depart from the first-filed rule.  *E.E.O.C.*, 850 F.2d at 972.  Here, the plain and indisputable

overlap between this action and the First-Filed Actions requires application of the first-filed rule.

And because, as discussed below, Plaintiffs' refusal to consent means that transfer is not permitted under 28 U.S.C. §1404, the Court should dismiss this action without prejudice or, in the alternative, enter a stay pending final resolution of the First-Filed Actions and *Glatt*.

**I.     The First-Filed Rule Applies To This Action.**

**A.     The First-Filed Rule Applies To Cases That Are Materially On All Fours.**

"The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank" by "giv[ing] a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C.*, 850 F.2d at 971. "The scope of the first-filed rule—exactly *how* related the cases must be for the rule to apply—has mostly developed in the district courts, without a definitive ruling from the Third Circuit." *Monzo v. Bazos*, 313 F. Supp. 3d 626, 631 (E.D. Pa. 2017); *Landau*, 274 F. Supp. 3d at 333.

In recognition of the policies underlying the first-filed rule, many district courts take an expansive view of the rule, applying it when the actions have substantially related subject matter. *See Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (first-filed rule promotes judicial efficiency, comity, and relieves parties "from vexation of multiple litigations covering the same subject matter"); *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009) (the first-filed rule applies "where the subject matter of the later filed case substantially overlaps with that of the earlier one"); *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008) ("[T]he substantive touchstone of the first-to-file inquiry is subject matter.").

Those courts hold that the first-filed rule "is not limited to mirror image cases where the parties and the issues perfectly align." *Villari*, 2009 WL 1845236, at *6 (applying first-filed rule despite the fact that parties in the related suits were not identical); *see also Synthes*, 978 F. Supp.

2d at 456 (applying "first-filed rule where the core facts are similar and the causes of action in both arise out of the same employment relationship and conduct"); *QVC, Inc. v. Patiomats.com, LLC*, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012) (applying rule despite lack of identity between two cases' parties); *Colony Nat'l Ins. Co. v. UHS Children Serv., Inc.*, 2009 WL 3007334, at *2 n.4 (E.D. Pa. Sept. 11, 2009) (additional issue did not "create such a significant divergence in subject matter to negate the application of the first-filed rule since the substance of both issues involves interpretation of the terms of the [policy at issue]").  Under this approach, courts "assess[] the appropriateness of the first-filed rule on a case-by-case basis, without reference to rigid requirements regarding similarities between parties and claims" and "intelligently exercise discretion to promote comity in appropriate cases." *Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015).

Even so, some courts have applied the first-filed rule narrowly—reserving it for cases that are identical in all respects.  *See CertainTeed Corp. v. Nichiha USA, Inc.*, 2009 WL 3540796, at *3–4 (E.D. Pa. Oct. 29, 2009); *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 2326750, at *5 (E.D. Pa. July 28, 2009); *Kedia v. Jamal*, 2007 WL 1239202, at *3 (D.N.J. Apr. 25, 2007).

This Court has declined to take this strict "mirror-image" approach.  Rather, this Court has recognized that the first-filed rule applies when the cases are "'truly duplicative,' such that 'a determination in one case leaves little or nothing to be determined in the other.'"  *Martin v. Citizens Fin. Grp., Inc.*, 2010 WL 3239187, at *2 (E.D. Pa. Aug. 13, 2010) (Goldberg, J.) (quoting *Grider v. Keystone Health Plan*, 500 F.3d 322, 334 n.6 (3d Cir. 2007)).  Under this Court's interpretation, "the actions need not be perfectly parallel in order for the first-filed rule to apply," though "they must be 'materially on all fours.'"  *Martin*, 2010 WL 3239187, at *2.

**B.     This Case Is Materially On All Fours with The First-Filed Actions and *Glatt*.**

Under this Court's approach, the first-filed rule applies here.  The similarities in the factual allegations and legal claims of this case and the First-Filed Actions, as well as *Glatt*, are striking:

- The named plaintiffs in all four cases took out loans from AWL and entered into loan agreements with AWL with nearly identical terms.[2]

- All four cases present the same fundamental issue—the legality of these loans.[3]

- All four cases allege that the defendants were engaged in a "rent-a-tribe" scheme designed to evade state usury laws, and that Curry and his companies were the driving force behind the scheme and therefore the "true lenders."[4]

- The members of the putative class in this action, *Solomon*, and *Glatt* directly overlap.  *Solomon* seeks to certify a nationwide class of AWL borrowers; *Glatt* seeks to certify a nationwide RICO class and Pennsylvania class for claims under Pennsylvania law.[5]  This case seeks to certify a class (and sub-class) of AWL borrowers who reside in Pennsylvania.[6]  Thus, the putative *Solomon* and *Glatt* classes cover all members of the putative class in this case.

- All four cases involve similar defendants.  This case names Red Stone (as successor-in-interest to MacFarlane Group, Inc.), Medley, Curry, McGowan, and Ney.  The *Hengle* and *Glatt* cases name Curry; American Web Loan, Inc.; AWL, Inc.; Red Stone; Medley; and Medley Capital Corporation.  The *Solomon* case names the same defendants as in *Hengle*,[7] as well as eight additional defendants:  SOL Partners; Medley, LLC; Medley Management, Inc.; Medley Group, LLC; Brook Taube; Seth Taube; DHI Computing Service, Inc.; and Middlemarch Partners.

---

[2] *See* Am. Compl. ¶¶ 57, 65, 72; *Hengle* Compl. ¶ 2, 71; *Solomon* Compl. ¶¶ 138–84, 188–90; *Glatt* Compl. ¶¶ 63, 67, 71, 74–75, 78–80.

[3] *See* Am. Compl. ¶¶ 2–3; *Hengle* Compl. ¶ 6, 75; *Solomon* Compl.¶¶ 1–2; *Glatt* Compl. ¶ 11–12.

[4] *See* Am. Compl. ¶ 33–56; *Hengle* Compl. ¶ 1–2; *Solomon* Compl. ¶ 6, 16; *Glatt* Compl. ¶ 11.

[5] *Solomon* Compl. ¶ 198; *Glatt* Compl. ¶¶ 83–87.

[6] Am. Compl. ¶¶ 79–80.

[7] *Solomon* does not name Red Stone as a defendant, as *Hengle*, *Williams*, and *Glatt* do; however, *Solomon* includes MacFarlane, which ceased to exist as a legal entity in 2016.  Red Stone is the successor-in-interest to MacFarlane.

- All four cases plead overlapping claims.  They all assert claims under RICO.[8] And this case, *Hengle*, and *Glatt* assert claims under state usury laws and consumer protections statutes—in particular, both this action and *Glatt* bring claims under Pennsylvania's laws.[9]

- The anticipated legal defenses in all cases are nearly identical—for example, tribal immunity, choice of law, and enforceability of arbitration provisions in the loan agreements, all of which have been briefed in the First-Filed Actions.

Actions with overlapping putative classes, like the actions here, present a particularly strong case for applying the first-filed rule.  *See Abushalieh v. Am. Eagle Express*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010) ("Where each set of named plaintiffs intends to represent the other set, the underlying principles of the first-filed rule . . . permit this Court to defer to the court of first jurisdiction."); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006) (noting that the class action "settlement process can be complicated and made burdensome, and even frustrated, if two courts are attempting to deal with" the same subject matter).

For example, in *Palagano*, the court considered a motion to transfer a putative class action of Pennsylvania consumers to the Northern District of California, where twelve other class actions (three filed before *Palagano*) were pending, stating substantially similar claims on behalf of a nationwide class and subclasses from several states other than Pennsylvania.  *See Palagano*, 2015 WL 5025469, at *4.  The court granted the motion, finding that the other twelve cases "pursue[d] essentially the same claims based on the same set of facts," such that "the Pennsylvania litigation would, in many respects, duplicate the litigation in California."  *Id.* at *4.  It made no difference that the other twelve cases did not include a Pennsylvania subclass.  *See id.*  The court was particularly concerned that failure to apply the first-filed rule

---

[8] Am. Compl. ¶¶ 114–124 (Count V); *Hengle* Compl. ¶¶ 84–133 (Counts I–IV); *Solomon* Compl. ¶¶ 209–227 (Counts I–II); *Glatt* Compl. ¶¶ 94–117 (Counts I–IV).
[9] Am. Compl. ¶¶ 86–113 (Counts I–IV); *Hengle* Compl. ¶¶ 134–143 (Count V); *Glatt* Compl. ¶¶ 118–162 (Counts V–XIII).

would encourage forum shopping, as the plaintiff's counsel had articulated a willingness to litigate in California depending on the selection of interim class counsel.  *See id.*

*Palagano* is instructive here.  This case concerns the same core conduct as three class actions pending in Virginia, and would in most respects duplicate that litigation, with the proposed class here encompassed by the ones in the First-Filed Actions (and the soon-to-be-consolidated *Glatt*).  Plaintiffs' counsel, Mr. Wessler, has also indicated his willingness to litigate the claims of the Pennsylvania class in the Eastern District of Virginia through his representation of plaintiffs in *Glatt*.  As in *Palagano*, there is simply no reason to depart from the first-filed rule.  *See also Thompson v. Global Mktg. Research Servs., Inc.*, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (applying first-filed rule in transferring Pennsylvania class action to Florida where a nationwide class that excluded Pennsylvania was pending "[d]espite the fact that the class definitions in Thompson's case and the *Martin* litigation differ," because "the subject matter of the two cases is substantially the same"); *Panitch v. Quaker Oats Co.*, 2017 WL 1333285, at *4 (E.D. Pa. Apr. 5, 2017) (additional claim by second purported nationwide class and different state subclasses are not reasons to deny first-filed rule).

In response, Plaintiffs are sure to point to the only two differences between this case and the First-Filed Actions that exist—first, that this case includes Ney and McGowan as defendants, whereas the First-Filed Actions do not; and second, that this case includes Pennsylvania-specific causes of action, whereas the First-Filed Actions do not.  Neither of these differences merits departing from the first-filed rule under the circumstances presented here.

To begin with, any assertion that the first-filed rule does not apply because the cases "'do not involve the same [defendants]' rings hollow."  *See Monzo*, 313 F. Supp. 3d at 635.  Plaintiffs name Ney and McGowan as defendants because they allegedly "solicited, arranged, funded,

serviced, and/or collected" loans that were allegedly illegal and did so through a "scheme in which the loans [were] made in the name of a tribal corporation ('American Web Loan, Inc.' or 'AWL, Inc.')."  Am. Compl.  ¶ 2.  Thus, Plaintiffs' claims against Ney and McGowan hinge on the exact same question as the claims against the other defendants in these matters:  whether the loans issued by AWL were lawful.  And the "scheme" alleged here is identical to the "scheme" alleged in the First-Filed Actions.  *See supra* pp. 3–5; *see also Synthes*, 978 F. Supp. 2d at 457 (applying the first-filed rule where the subject matter was the same, even though the second action added a parent corporation alongside subsidiary); *Villari*, 2009 WL 1845236, at *3 (applying first-filed rule to cases with different parties because the parties "had a symbiotic relationship" and the two cases involved related subject matter).  As a result, there is simply no concern that the addition of Ney and McGowan creates an attenuated relationship between this case and the First-Filed Actions.  *Cf. Landau*, 274 F. Supp. 3d at 333 (expressing concern that additional parties creates attenuation).

To allow Plaintiffs to escape the first-filed rule because they decided to omit AWL as a defendant and name two of its directors instead "would be unsupported by case law, and would place form over substance in contravention of the goals of the first-filed rule"—comity and judicial economy.  *Monzo*, 313 F. Supp. 3d at 636 (for purposes of the first-filed rule, a "sole owner of a company can stand in for the company and vice versa").  If all that was required to proceed with a separate case was the addition of a unique defendant, there would be no realistic limit on the number of cases that might be filed on these allegations given the claims of a RICO enterprise.  Plaintiffs have demonstrated as much by also naming an unspecified number of "John Doe" persons and entities as Defendants.  The reality is, no matter how many individuals

and entities Plaintiffs choose to add (or exclude) from the Amended Complaint, the dispositive issues in these cases are the same.

It also makes no difference that Plaintiffs here bring causes of action under Pennsylvania law that are not stated in the First-Filed Actions.  The conduct alleged to have violated Pennsylvania-specific laws is the same conduct that must be proven to support the claims in the First-Filed Action.  *See Palagano*, 2015 WL 5025469, at *4 (applying the first-filed rule to a case that included Pennsylvania Unfair Trade Practice and Consumer Protection Law claim even though the first-filed cases did not include such a claim, because the same alleged misrepresentation was at the core of each case).  And applying the first-filed rule here prevents the possibility of "conflicting judgments" as to these duplicative claims and defenses.  *E.E.O.C.*, 850 F.2d at 977.  Finally, the claims here are nearly identical to the claims in *Glatt*—a case filed by the same counsel representing Plaintiffs here, and that the court intends to consolidate with the First-Filed Actions.[10]  *See* Rodman Decl. Ex. 4.  Indeed, the only claim alleged in this matter that *Glatt* does not allege is a claim under the Pennsylvania Credit Services Act, which the Amended Complaint pleads in the alternative.  Am. Compl. ¶¶ 107–113.

Finally, Plaintiffs cannot point to any "extraordinary circumstances" that would justify an exception to the first-filed rule.  *See E.E.O.C.*, 850 F.2d at 972; *Landau*, 274 F. Supp. 3d at 333.  The party opposing the application of the first-filed rule bears the burden of showing extraordinary circumstances.  *Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*, 2009 WL 2778104, at *4 (D.N.J. Sept. 28, 2010).  Such circumstances include inequitable

---

[10] Both *Williams* and *Glatt* allege violations of the following: (1) Pennsylvania Usury Law, *see* Am. Compl. ¶¶ 86–91; *Glatt* Compl. ¶¶ 151–55; (2) Pennsylvania Unfair Trade Practices & Consumer Protection Law, *see* Am. Compl. ¶¶ 92–103; *Glatt* Compl. ¶¶ 159–62; (3) Pennsylvania Fair Credit Extension Uniformity Act, *see* Am. Compl. ¶¶ 104–06; *Glatt* Compl. ¶¶ 156–58; and (4) RICO, *see* Am. Compl. ¶¶ 114–24; *Glatt* Compl. ¶¶ 94–117.

conduct, bad faith, forum shopping, where the later-filed action has developed further than the first-filed action, or where the first filing party instituted a suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.  *See E.E.O.C.*, 850 F.2d at 972, 976–77.

There are no such circumstances here.  The later-filed action (this one) has not moved further than the First-Filed Actions—just the opposite, as explained earlier—and Defendants have engaged in no inequitable conduct, bad faith, or forum shopping.  Indeed, if there has been any gamesmanship in these matters, it has been by Plaintiffs' counsel, who, within two months of initiating this case, filed a putative class action on behalf of Pennsylvania consumers in the Eastern District of Virginia to—in his co-counsel's words—"avoid complications," asked to be appointed to the leadership group in the First-Filed Actions, and then refused to consent to transfer this case to the Eastern District of Virginia!

## II.    Because This Case Cannot Be Transferred to Virginia, It Should Be Dismissed Without Prejudice, or in the Alternative, Stayed Pending Final Resolution of the First-Filed Actions and *Glatt*.

When the first-filed rule applies, courts have "the power to dismiss, stay, or transfer a later-filed case."  *Maximum Human Performance, Inc.*, 2009 WL 2778104, at *2; *see also Clean Harbors, Inc. v. ACSTAR Ins. Co.*, 2010 WL 1930579, at *6 (D.N.J. 2010); *accord Landau*, 274 F. Supp. 3d at 333.  Transferring this case to the Eastern District of Virginia under 28 U.S.C. 1404(a) for consolidation with the First-Filed Actions and *Glatt* would be the traditional remedy, but it is not available here.

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" or "to which all parties have consented" if this transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice."  *See Thompson v. Equifax Info. Servs., LLC*, 2018 WL 1381135, at *3 (E.D. Pa. Mar. 19, 2018) (explaining that

Section 1404(a) analysis has "two components," the first of which is that "the original venue and the requested venue must be proper").

Plaintiffs would not consent to transfer this action to Eastern District of Virginia, Rodman Decl. ¶¶ 5–6, so the Court would have to find that this case "might have been brought" there. But under the RICO-venue provision, this case could not have been filed in the Eastern District of Virginia because no Defendant resides in, is found, has an agent, or transacts affairs in that jurisdiction.[11]  *See* 18 U.S.C. § 1965(a).  Nor does the general venue statute, 28 U.S.C. § 1391, provide for venue in the Eastern District of Virginia, because no Defendant resides in Virginia, *see supra* note 11, and Plaintiffs do not allege that a substantial part of the events giving rise to their claims occurred there.  In short, transfer to Virginia is not an option.

A dismissal without prejudice is therefore the appropriate remedy.  Courts have adopted that remedy in at least two scenarios:  (1) where the first-filed action is "substantially further along," *Crown Cork & Seal Co. v. United Steelworkers of Am.*, 2004 WL 117923, at *3 (W.D. Pa. Jan. 9, 2004); *see also Pai v. Reynolds Foil, Inc.*, 2010 WL 1816256, at *5 (D.N.J. May 5, 2010), and (2) where the first-filed case is not vulnerable to dismissal on jurisdictional grounds and transfer is not appropriate, *see Clean Harbors*, 2010 WL 1930579, at *6–7.  Here, the First-Filed Actions are substantially further along:  there are nearly 200 docket entries in *Solomon* alone, motions to dismiss and to compel arbitration are fully briefed, and jurisdictional discovery on sovereign immunity is under way.  And although the defendants in the First-Filed Actions have moved to dismiss the case on jurisdictional grounds, those same jurisdictional defects exist

---

[11] *See* Am. Compl. ¶ 8 (Curry is citizen and resident of Puerto Rico); ¶ 6 (Red Stone is a "corporation formed under the laws of the Otoe-Missouria Tribe of Indians."); *id.* ¶ 7 (Medley Opportunity Fund II, LP is a Delaware limited partnership with a principal place of business in New York); *id.* ¶ 9 (McGowan is a citizen and resident of Kansas); *id.* ¶ 10 (Ney is a citizen and resident of Texas).

here.  The presence of these identical, threshold legal questions is precisely why only the First-Filed Actions should proceed.  For these reasons, the Court should dismiss this case without prejudice.

In the alternative, the case should be stayed pending final resolution of the First-Filed Actions and *Glatt*.  "The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication."  *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994).  Although "[a] stay is an extraordinary measure" and demands "compelling reasons for its issuance," *Breyer*, 41 F.3d at 893, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues," *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also Nigro v. Blumberg*, 373 F. Supp. 1206, 1209–14 (E.D. Pa. 1974) (staying action until termination of similar action filed previously in state court); 5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. West 2018) (a federal court may stay a case pending the outcome of a related proceeding "to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts").

When determining whether to enter a stay, district courts may look to four non-exhaustive factors:  "(1) the length of the requested stay; (2) the hardship that the moving party would face if the stay were not granted; (3) the injury that a stay would cause to the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy."  *Gennock v. Kirkland's, Inc.*, 2018 WL 646141, at *2 (W.D. Pa. Jan. 31, 2018) (internal quotation marks omitted).  All of these factors support a stay here.

First, a stay would unquestionably simplify the issues and promote judicial economy. At their core, this case and the First-Filed Actions are duplicative. They are all based on the same alleged "rent-a-tribe scheme" with loans originated and serviced by the ***same company***. Thus, they raise identical legal issues, including (1) whether Red Stone and Curry are immune from suit; (2) whether arbitration will be compelled; (3) whether the choice-of-law provisions in Plaintiffs' loan agreements are enforceable; and (4) whether a nationwide or statewide class can be certified. Resolution of these issues will dramatically influence the trajectory of this matter.

Defenses are also the same across the cases. If this case proceeds, Curry will file nearly identical motions to dismiss as he filed in the First-Filed Actions—motions that were extensive.[12] A stay is appropriate here to preserve judicial resources and avoid the possibility of inconsistent rulings. *See, e.g.*, *Bechtel*, 544 F.2d at 1215. The same considerations apply to class-certification briefing. Specifically, because the class definition in this case and the First-Filed Actions and *Glatt* overlap, a stay is important to protect the rights of potential class members and to avoid the possibility of inconsistent rulings.

Second, Curry would face substantial hardship if the stay is not granted. As explained, this matter presents issues identical to those in the First-Filed Actions. If this case is not stayed, Defendants Red Stone, Curry, and Medley will have to litigate identical issues in two separate federal district courts in parallel, incurring significant expense in each. Courts have recognized this type of dual expense as a hardship that favors granting stay. *See Langenberg v. Papalia*,

---

[12] In the First-Filed Actions, Curry filed (1) a motion to compel arbitration, (2) a motion to dismiss for lack of subject matter jurisdiction, (3) a motion to dismiss for failure to state a claim, and (4) a motion to transfer to Oklahoma. In *Hengle*, Red Stone filed (1) a motion to dismiss for lack of jurisdiction, (2) a motion to compel arbitration, and (3) a motion to dismiss for failure to state a claim. In the First-Filed Actions, Medley filed (1) a motion to dismiss for failure to state a claim and to join an indispensable party and (2) a motion to dismiss for lack of personal jurisdiction and improper venue.

2014 WL 4792125, at *2 (W.D. Pa. Sept. 24, 2014); *see also Medversant Techs., LLC v. Leverage Health Sols., LLC*, 114 F. Supp. 3d 290, 299 (E.D. Pa. 2015).

Third, the potential prejudice to Plaintiffs would be minimal because "delay alone does not prejudice a party." *Langenberg*, 2014 WL 4792125, at *2; *see also Rajput v. Synchrony Bank*, 2016 WL 6433134, at *4–5 (M.D. Pa. Oct. 31, 2016) (rejecting argument that a plaintiff "will have [to] wait longer to 'get the lawsuit moving'" (alteration in original) (internal quotation marks omitted)). Any prejudice from the requested delay here is especially unremarkable given that Plaintiffs have not yet incurred the expense of discovery or trial preparation in this matter. *Cf. Campbell v. FMC Corp.*, 1992 WL 176417, at *5 n.6 (E.D. Pa. July 17, 1992) (noting that a motion to transfer filed five months after receiving facts on which the motion could have been made did not weigh against transfer where plaintiff had not progressed far in their preparations for trial). Further, if the class requested in either *Solomon* or *Glatt* is certified, Plaintiffs will be represented as members of the class.

Finally, the stay would last only until the First-Filed Actions and *Glatt* are resolved, and they are on track for prompt resolution. *See Solomon* Proposed Schedule. Any concerns this Court may have regarding the duration of the stay can be addressed by requiring periodic updates to the Court on status of the First-Filed Actions. *See Glades Pharms., LLC v. Call, Inc.*, 2005 WL 563726, at *9 (E.D. Pa. Mar. 9, 2005); *see also Langenberg*, 2014 WL 4792125, at *3.

## CONCLUSION

For the foregoing reasons, Curry respectfully requests that this case be dismissed without prejudice or, in the alternative, stayed pending resolution of the three putative class actions currently pending in the Eastern District of Virginia.

Dated: September 14, 2018

Respectfully Submitted,

By: <u>s/ Craig Singer</u>

Craig Singer (PA State Bar No. 71394)
Rachel Rodman (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
E-mail: csinger@wc.com
E-mail: rrodman@wc.com

*Attorneys for Specially-Appearing
Defendant Mark Curry*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  The foregoing is available for viewing and downloading from the CM/ECF system, which will also send e-mail notification of such filing to all attorneys of record in this action.

s/ Craig Singer
Craig Singer
PA State Bar No. 71394
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
E-mail: csinger@wc.com

*Attorney for Specially-Appearing Defendant
Mark Curry*
