# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA WILLIAMS, *et al.*, | |
| *Plaintiffs*, | Civil Action No. 2:18-cv-2747-MSG |
| v. | |
| RED STONE, INC., *et al.*, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), (b)(3), (b)(6), & (b)(7)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT BACKGROUND ............................................................................... 2

LEGAL STANDARD............................................................................................. 4

ARGUMENT ......................................................................................................... 5

I.    All Claims Against MOF II LP Must be Dismissed for Lack of Personal Jurisdiction . 5

    A.    MOF II LP is Not Subject to Personal Jurisdiction Under the Pennsylvania Long-Arm Statute ........................................................................................................... 5

    B.    Personal Jurisdiction is Improper Under RICO ........................................... 7

II.    All Claims Against MOF II LP Must be Dismissed for Improper Venue ................... 9

III.    Even if the Court has Personal Jurisdiction Over MOF II LP and Venue is Proper, the Amended Complaint Must be Dismissed for Faliure to State a Claim ........................ 10

    A.    Count V (RICO) Against MOF II LP Must Be Dismissed Because Plaintiffs Fail to Allege Proximate Cause....................................................................................... 10

    B.    Count V Against MOF II LP Must Be Dismissed Because Plaintiffs Fail to Allege a RICO Enterprise or MOF II LP's Control Over It. ............................................. 13

    1.    Plaintiffs Fail to Plead a Distinct RICO Enterprise................................. 13

    2.    The Amended Complaint Fails to Allege Facts Associating MOF II LP With An Enterprise.................................................................................................... 15

    3.    The Amended Complaint Fails to Allege Facts Showing MOF II LP "Controlled" or "Participated" in the Supposed Enterprise ................................ 16

    C.    Count V Also Fails to Allege a RICO Conspiracy ................................. 18

    D.    Plaintiffs' State Law Claims Must Be Dismissed................................. 21

    1.    Count I Must Be Dismissed Against MOF II LP Because It Made No Loans to Pennsylvania Consumers................................................................................ 21

    2.    Count II Against MOF II LP Likewise Must Be Dismissed Because It Made No Loans to Pennsylvania Consumers................................................................ 21

    3.    Count III Against MOF II LP Must Be Dismissed Because It Did not Collect Interest on Consumer Loans........................................................................... 22

    4.    Count IV Against MOF II LP Must Be Dismissed Because It Was Not A "Loan Broker" or "Credit Services Organization"........................................................ 23

IV.    All Claims Must be Dismissed Against MOF II LP because Plaintiffs have Failed to Join American Web Loan, AWL, and the OTOE-Missouria Tribe as Indispensable Parties ............................................................................................................... 23

CONCLUSION..................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackourey v. Sonellas Custom Tailors*,
   573 Fed. App'x 208 (3d Cir. 2014).............................................................................6

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)..................................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... passim

*Beck v. Prupis*,
   529 U.S. 494 (2000)..............................................................................................20, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................5, 14, 15, 16

*Berry v. Deutsche Bank Tr. Co. Am.*,
   No. 07 Civ. 7634 (WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008)................16

*Bockman v. First Am. Mktg. Corp.*,
   459 Fed. App'x 157 (3d Cir. 2012).........................................................................10

*Butcher's Union Local No. 498 (UFCW) v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ................................................................................7, 8

*Carvel v. Ross*,
   566 F. Supp. 2d 342 (D. Del. 2008).........................................................................7

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)..............................................................................................13, 14

*Cory v. Aztec Steel Bldg., Inc.*,
   468 F.3d 1226 (10th Cir. 2006) ..............................................................................7, 8

*Cottman Transmission Sys., Inc. v. Martino*,
   36 F.3d 291 (3d Cir. 1994).......................................................................................10

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
   883 F.2d 890 (10th Cir.1989) ..................................................................................23

*Flexborrow LLC v. TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) ..................................................................19, 20

*Fluent v. Salamanca Indian Lease Auth.*,
   928 F.2d 542 (2d Cir. 1991)...................................................................................23

*Gilliand v. Koch Trucking, Inc.*,
   No. 11-cv-3073, 2015 WL 2395148 (D. Md. May 19, 2015)....................................24

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010)...........................................................................................11, 12, 13

*Holmes v. Secs. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992).............................................................................................11, 13

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir.1997)....................................................................................20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002).....................................................................................20

*Int'l Shoe Co. v. Washington Office of Unemp't Comp. & Placement*,
   326 U.S. 310 (1945).....................................................................................................6

*Klein v. Cty. of Bucks*,
   No. CIV.A. 12-4809, 2013 WL 1310877 (E.D. Pa. Apr. 1, 2013) ...........................20

*LeRoy v. Great W. United Corp.*,
   443 U.S. 173 (1979)...................................................................................................10

*Levine v. First Am. Title Ins. Co.*,
   682 F. Supp. 2d 442 (E.D. Pa. 2010) .......................................................................13

*Limestone Dev. Corp. v. Village of Lemont, Ill.*,
   520 F.3d 797 (7th Cir. 2008) ....................................................................................14

*Lisak v. Mercantile Bancorp, Inc.*,
   834 F.2d 668 (7th Cir. 1987) ...................................................................................7, 8

*MacDonald v. CashCall, Inc.*,
   No. 16-cv-2781, 2017 WL 1536427 (D.N.J. Apr. 28, 2017)...............................9, 18

*Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992).....................................................................................6

*NCNB Nat'l Bank of N.C. v. Tiller*,
   814 F.2d 931 (4th Cir. 1987), *overruled on other grounds by Busby v. Crown
   Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990) .........................................................16, 17

*Palmetto State Med. Ctr. v. Operation Lifeline*,
   117 F.3d 142 (4th Cir. 1997) ....................................................................................15

*Parm v. Nat'l Bank of Cal., N.A.*,
    242 F. Supp. 3d 1321 (N.D. Ga. 2017) ....................................................16, 18, 19

*Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    No. 00-cv-5647, 2004 WL 1102782 (E.D. Pa. May 17, 2004) .................................7

*Pennsylvania v. Think Fin., Inc.*,
    No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016) ............................7, 22

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) .................................................................7, 8

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ..................................................................... passim

*Richmond v. Nationwide Cassel L.P.*,
    52 F.3d 640 (7th Cir. 1995) ...................................................................14

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989) ...............................................................18, 19

*Salinas v. United States*,
    522 U.S. 52 (1997) ..............................................................................19

*Shearin v. E.F. Hutton Grp., Inc.*,
    885 F.2d 1162 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*,
    529 U.S. 494 (2000) .............................................................................18

*Smith v. Berg*,
    247 F.3d 532 (3d Cir. 2001) ..................................................................19

*Thomas v. Ross & Hardies*,
    9 F. Supp. 2d 547 (D. Md. 1998) ...........................................................17

*United States v. Mouzone*,
    687 F.3d 207 (4th Cir. 2012) ................................................................19

*United States v. Turkette*,
    452 U.S. 576 (1981) .......................................................................14, 15

*Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) ...............................................................17

*Vizant Techs., LLC v. Whitchurch*,
    97 F. Supp. 3d 618 (E.D. Pa. 2015) ......................................................7, 9

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
    788 F.2d 765 (D.C. Cir.1986) ................................................................24

**STATUTES**

18 U.S.C. § 1962 ................................................................................................ passim

18 U.S.C. § 1965 ........................................................................................................5

18 U.S.C. § 1965(a) ...........................................................................................8, 9, 10

18 U.S.C. § 1965(b) ......................................................................................7, 8, 9, 10

18 U.S.C. § 1965(d) ...................................................................................................7

28 U.S.C. § 1391 .................................................................................................9, 10

Consumer Discount Company Act ...........................................................................21

Federal Jenkins Act ...................................................................................................11

Pa. Stat. § 2182 .........................................................................................................23

Pa. Stat. § 2270.3 ......................................................................................................22

Pa. Stat. § 6203 .........................................................................................................22

Pennsylvania Fair Credit Extension Uniformity Act ...........................................22, 23

Pennsylvania Unfair Trade Practices and Consumer Protection Law ........................22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2), (b)(3), (b)(6) & (b)(7) ...........................................................1

Fed. R. Civ. P. 19(a)(1)..............................................................................................24

Fed. R. Civ. P. 19(b) .................................................................................................23

Pursuant to the Court's Policies and Procedures and the Court's Order (ECF No. 54), Defendant Medley Opportunity Fund II, LP ("MOF II LP") respectfully submits this memorandum in support of its motion to dismiss the First Amended Class Action Complaint (ECF No. 4) ("Amended Complaint" or "Am. Compl.") pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), (b)(6) & (b)(7) for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join an indispensable party.[1]

## **PRELIMINARY STATEMENT**

The Amended Complaint attempts to establish liability of MOF II LP for loans it did not make or collect, to borrowers with whom MOF II LP had no connection and to whom it owed no duty. The Amended Complaint alleges no conduct whatsoever by MOF II LP toward Plaintiffs. Instead, Plaintiffs' theory of liability is premised on a daisy-chain of insufficient and progressively attenuated connections between Plaintiffs and MOF II LP.

Plaintiffs allege they were harmed by American Web Loan's collection of usurious interest, arising from loans American Web Loan made to them in conjunction with the Otoe-Missouria Tribe. While the Amended Complaint alleges that American Web Loan made consumer loans to the Plaintiffs, it makes only the most superficial and attenuated connection to MOF II LP. The Amended Complaint alleges that MOF II LP made a loan to MacFarlane Group in 2011, but the Amended Complaint does not allege that MacFarlane Group made any payday loans. Nor does the Amended Complaint allege facts describing how, if at all, MacFarlane Group provided money to American Web Loan to make the allegedly unlawful consumer loans. Nor does the Amended Complaint allege any facts to establish a connection between MOF II LP's loan to MacFarlane in

---

[1] MOF II LP specially appears without conceding—and specifically to contest—the Court's ability to assert personal jurisdiction over it.

2011 and the consumer loans to the Plaintiffs in 2017.  Instead, the Amended Complaint alleges in conclusory fashion that "the payday loans [were] made under American Web Loan, Inc.'s name originally with MacFarlane Group's funds obtained from [MOF II LP]."  Am. Compl. ¶ 44. Those attenuated allegations do not state a plausible claim for relief against MOF II LP.  Further, Plaintiffs have failed to join American Web Loan, Inc. and AWL, Inc. (or their purported parent, the Otoe-Missouria Tribe of Indians) as indispensable parties.

Plaintiffs' claims also must be dismissed because they fail to establish personal jurisdiction over MOF II LP or that venue would be proper as to it in this forum.  Plaintiffs allege virtually no conduct at all by MOF II LP, and no conduct whatsoever by MOF II LP in or directed to Pennsylvania.  MOF II LP is likewise not subject to personal jurisdiction under RICO, not only for failure to meet the statute's requirements but because it would not be in the interests of justice. For each of those reasons, Plaintiffs' claims must be dismissed.

## RELEVANT BACKGROUND

According to the Amended Complaint, Plaintiff Williams is a resident of Pennsylvania and received loans from American Web Loan, Inc., on or about January 17, 2017 and April 25, 2017. Am. Compl. ¶¶ 57, 65.  Plaintiff Stermel is a resident of Pennsylvania and received a loan from AWL, Inc. on or about July 28, 2017.  *Id*. ¶ 72.

Plaintiffs allege MOF II LP made a loan to MacFarlane Group of $22.9 million in 2011. *Id*. ¶ 42.  Plaintiffs allege "Curry and MacFarlane Group obtained the $22.9 million in funding for American Web Loan, Inc.'s online payday lending." *Id*. ¶ 42.  Plaintiffs allege on information and belief that MOF II LP had knowledge MacFarlane Group intended to use the loan proceeds "to fund high-interest payday lending."  *Id*. ¶ 43.

2

Plaintiffs do not allege that MOF II LP itself made any payday loans.  Plaintiffs also do not allege any facts showing how MacFarlane provided money to American Web Loan.  Plaintiffs also do not allege—and cannot allege—that Plaintiffs' consumer loans were funded by MOF II LP. Moreover, Plaintiffs do not make any factual allegations that MOF II LP has conducted any activities in Pennsylvania at all.  Furthermore, Plaintiffs do not (and cannot) make allegations against MOF II LP of any conduct in or directed toward Pennsylvania relating to Plaintiffs or Plaintiffs' claims.

In fact, MOF II LP does not conduct activities in or toward Pennsylvania.  MOF II LP is formed under the laws of Delaware with a principal place of business in New York, New York. *Id*. ¶ 7; Fredericks Decl. ¶ 2.  MOF II LP is a Delaware limited partnership.  *Id.*  It does not reside or have a principal place of business in Pennsylvania.  Fredericks Decl. ¶ 3.  It is not registered to do business in Pennsylvania.  *Id.* ¶ 4.  It does not maintain offices or have bank accounts, telephone numbers, post-office boxes, or employees that maintain offices in Pennsylvania.  *Id.* ¶¶ 5-6.  It does not own real or personal property in Pennsylvania and does not have a registered agent for service of process here.  *Id.* ¶¶ 7-8.  It has never made any loans to a borrower or other investment in a portfolio company headquartered or located in Pennsylvania.  *Id*. ¶ 9.  Plaintiffs make no contrary factual allegations.

Plaintiffs' assertion of personal jurisdiction therefore rests entirely on the allegation that MOF II LP made a $22.9 million loan to MacFarlane Group (a former Nevada corporation with its principal place of business in Kansas, *see* ECF No. 1 ¶ 6) and Mark Curry (a citizen of Puerto Rico, *see* Am. Compl. ¶ 8) in 2011.  Am. Compl. ¶¶ 41-42.  Plaintiffs allege no other conduct by MOF II LP, in Pennsylvania or elsewhere, after 2011.  The sole alleged "connection" this case has to Pennsylvania is that Plaintiffs took out loans from American Web Loan and AWL in 2017.  *Id*.

¶¶ 57, 65, 72.  And, the sole connection between those loans and MOF II LP is an alleged loan MOF II LP made to third parties (MacFarlane Group and Curry, who were not lenders on the Loan Agreements) in 2011—that is, *6 years before* Plaintiffs took out loans.

In fact, MOF II LP does not provide, and has never provided, financing or any other form of support to American Web Loan or AWL.  MOF II LP entered into a loan agreement for $22,883,295 with American Web Loan Holdings, LLC—not MacFarlane Group or Mark Curry— in 2011.  Fredericks. Decl. ¶ 11 & Ex. A.  American Web Loan Holdings, LLC is a corporation formed under the laws of Delaware with a principal place of business in Kansas.  *Id.*  That loan agreement was not drafted, negotiated, or executed in Pennsylvania, and did not give MOF II LP rights to control American Web Loan Holdings, LLC, American Web Loan, Inc., AWL, Inc., or any other entity.  *Id.* ¶¶ 12-13 & Ex. A.

The loan from MOF II LP to American Web Loan Holdings, LLC was repaid in full on or about February 2, 2015, Fredericks Decl. ¶ 15 & Ex. B, about twenty-three (23) months before the first named plaintiff took out a loan in January 2017.  Upon receipt of the payoff amount, MOF II LP's liens against American Web Loan Holdings, LLC and its Guarantors terminated, and MOF II LP filed UCC-3 termination statements to record the termination of those liens.  *Id.* ¶¶ 16-17.

Since February 2, 2015, MOF II LP has not made other loans, provided other financing, or provided any funds of any kind to any of American Web Loan Holdings, LLC, American Web Loan, Inc., or AWL, Inc.  *Id.* ¶ 18.  Further, MOF II LP has never made a loan to Mark Curry, MacFarlane Group, American Web Loan, Inc., or AWL, Inc.  *Id.* ¶ 19.

## LEGAL STANDARD

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,*

556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As such, while the Court must accept factual allegations as true, it is not required to accept as true allegations that amount to legal conclusions, conclusory statements, "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  Further, even taking a complaint's factual allegations as true and drawing reasonable inferences in plaintiffs' favor, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  As such, allegations consistent with lawful conduct that would be a "more likely explanation[]" or an "'obvious alternative explanation'" than unlawful conduct do not plausibly state a claim. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 567).

## ARGUMENT

### I.  ALL CLAIMS AGAINST MOF II LP MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs make no allegations concerning whether MOF II LP is subject to jurisdiction before this Court, asserting only that venue would be proper because "the events that gave rise to this claim [sic] occurred within this district." Am. Compl. ¶ 12.  In fact, Plaintiffs cannot establish personal jurisdiction over MOF II LP because (1) its activities in Pennsylvania do not give rise to Plaintiffs' claims under the Pennsylvania long-arm statute, and (2) personal jurisdiction would be improper under 18 U.S.C. § 1965.  Plaintiffs' claims must therefore be dismissed.

#### A.  MOF II LP Is Not Subject to Personal Jurisdiction Under the Pennsylvania Long-Arm Statute

To establish that MOF II LP is subject to specific personal jurisdiction under the Pennsylvania long-arm statute, Plaintiffs must show that MOF II LP has sufficient minimum

contacts with Pennsylvania such that requiring it to defend in this forum "does not offend traditional notions of fair play and substantial justice" under the Fourteenth Amendment. *Int'l Shoe Co. v. Washington Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945). The Third Circuit's minimum contacts test requires plaintiffs show (1) whether each defendant purposefully conducted activities in Pennsylvania, (2) whether the plaintiffs' claims arise out of defendants' activities directed at Pennsylvania, and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *See, e.g.*, *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992); *Ackourey v. Sonellas Custom Tailors*, 573 Fed. App'x 208, 211 (3d Cir. 2014).

As outlined above, MOF II LP lacks sufficient minimum contacts with Pennsylvania to establish personal jurisdiction under the Pennsylvania long-arm statute: it does not reside or operate in, or direct activities toward, Pennsylvania. *See generally* Fredericks Decl. As such, the inquiry ends there, and the case must be dismissed. *See Farino*, 960 F.2d at 1222.[2]

The Amended Complaint also fails to allege any conduct by MOF II LP in or directed toward Pennsylvania. The only factual allegations concerning conduct by MOF II LP is a loan it made in 2011 allegedly to MacFarlane Group (in Nevada and Kansas) and Curry (in Puerto Rico). Plaintiffs do not allege that any conduct involving the making of this loan occurred in Pennsylvania, and no such conduct occurred in fact. Fredericks Decl. ¶¶ 11-12 & Ex. A. The actual loan from MOF II LP to American Web Loan Holdings, LLC was repaid in February 2015, nearly 2 years before Plaintiffs took out loans from American Web Loan. *Id.* ¶¶ 15-17 & Ex. B. Since February 2015, MOF II LP has not provided any funds on any terms to any American Web

---

[2] Plaintiffs do not allege MOF II LP has continuous and systematic contacts with Pennsylvania to support general jurisdiction.

Loan entity.  *Id.* ¶¶ 18-19.  As such, there are no grounds to exercise personal jurisdiction over MOF II LP.[3]

### B.     Personal Jurisdiction is Improper Under RICO

Plaintiffs do not allege personal jurisdiction under RICO in the Amended Complaint, but elsewhere contend RICO grants personal jurisdiction over MOF II LP "pursuant to RICO's nationwide service of process provisions."  ECF No. 53 at 2.  Plaintiffs are wrong.

Under the majority view followed by courts in this District and this Circuit, nationwide service of process in RICO cases is governed by 18 U.S.C. § 1965(b), not § 1965(d).  *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998); *Butcher's Union Local No. 498 (UFCW) v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006); *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 629-30 (E.D. Pa. 2015) (adopting Second Circuit analysis); *Ex rel Carvel v. Ross*, 566 F. Supp. 2d 342, 350-51 (D. Del. 2008); *Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 00-cv-5647, 2004 WL 1102782, at *11 (E.D. Pa. May 17, 2004).

Personal jurisdiction pursuant to § 1965(b) is proper only where a plaintiff first establishes sufficient minimum contacts between at least one defendant and this forum.  *PT United Can Co.*, 138 F.3d at 71; *Vizant Techs.*, 97 F. Supp. 3d at 629-30.  Specifically, RICO plaintiffs must first

---

[3] Plaintiffs' reliance on *Think Finance* (ECF No. 53 at 2) is misplaced.  There, Judge Joyner found jurisdiction over non-tribal defendants who operated a website to funnel Pennsylvania consumers to tribal lenders.  *Pennsylvania v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289, at *27-28 (E.D. Pa. Jan. 14, 2016).  No such allegations exist against MOF II LP.  Further, contrary to Plaintiffs' contention (ECF No. 53 at 2), Judge Joyner did not find jurisdiction based on the assertion defendants were "knowing participants in the scheme":  that conclusion was specifically based on the website operation and violation of a consent decree.  *Id.* at *28 & n.39.

satisfy § 1965(a) by asserting jurisdiction over some defendant who "resides, is found, has an agent, or transacts his affairs" in this District.  18 U.S.C. § 1965(a); *PT United*, 138 F.3d at 71-72.  After meeting that threshold requirement, § 1965(b) permits a court to cause "other parties"—that is, parties other than those subject to § 1965(a)—to be "summoned, and process for that purpose" to be served nationwide upon a showing that the "ends of justice" require it.  18 U.S.C. § 1965(b); *PT United*, 138 F.3d at 71-72.  Here, the Court lacks personal jurisdiction under RICO for three reasons.

*First*, Plaintiffs have not alleged any facts showing that MOF II LP (or any other defendant) "resides, is found, has an agent, or transacts his affairs" in this District under § 1965(a).  The Amended Complaint also does not recite any actions by the named defendants in this District, but instead recites the actions of third parties not before the Court (namely, American Web Loan, Inc. and AWL, Inc.) for which Plaintiffs apparently seek to hold the named defendants liable.  As Plaintiffs fail to satisfy § 1965(a), the Court lacks personal jurisdiction over MOF II LP.

*Second*, even if Plaintiffs had satisfied § 1965(a), the ends of justice would not require MOF II LP to be brought before this Court.  Whether the ends of justice require the assertion of personal jurisdiction in a RICO case "is a flexible concept uniquely tailored to the facts of each case." *Cory*, 468 F.3d at 1232.  At least the Second, Seventh, and Ninth Circuits have suggested that the ends of justice would not be served by exercising personal jurisdiction over a defendant where a different court would have jurisdiction over all defendants.  *See PT United*, 138 F.3d at 70 (ends of justice would not require nationwide service where all defendants were subject to suit elsewhere); *Lisak*, 834 F.2d at 672 (same); *Butcher's Union*, 788 F.2d at 539 (same).

Here, the ends of justice would not require MOF II LP to be haled into this District.  The Amended Complaint contains no factual allegations of conduct by MOF II LP after 2011, nearly

six years before Plaintiffs took loans from American Web Loan and AWL.  Plaintiffs likewise have not alleged all named defendants would not be amenable to suit in another district, or shown any impediment to doing so.  As such, there is no jurisdiction under § 1965(b).

*Third*, even if Plaintiffs meet the requirements of § 1965(a) and § 1965(b), the exercise of personal jurisdiction over MOF II LP in this case would be constitutionally unreasonable under the Fifth Amendment.  The Amended Complaint alleges no conduct by MOF II LP in the six years leading up to the separate events by third parties that supposedly caused Plaintiffs injury, and likewise fails to allege any activities in or directed toward Pennsylvania.  As such, the exercise of personal jurisdiction here would not comport with traditional notions of fair play and substantial justice.  *See*, *e.g.*, *Vizant Techs.*, 97 F. Supp. 2d 628.[4]

## II.    ALL CLAIMS AGAINST MOF II LP MUST BE DISMISSED FOR IMPROPER VENUE

Plaintiffs allege venue is proper under 28 U.S.C. § 1391 "because the events that gave rise to this claim occurred within this district."  Am. Compl. ¶ 12.  That is incorrect as to MOF II LP, and the case must be dismissed for improper venue.

*First*, venue cannot be proper under § 1391(b)(1) because no defendant resides in Pennsylvania, and cannot be proper under § 1391(b)(3) because the Amended Complaint does not suggest there is no judicial district where the action could be brought.

---

[4] Plaintiffs' reliance on *MacDonald* (ECF No. 53 at 2) is misplaced.  There, defendant challenged jurisdiction asserting plaintiff failed to state a claim, and otherwise "reserved" on objecting under the Fifth Amendment.  *MacDonald v. CashCall, Inc.*, No. 16-cv-2781, 2017 WL 1536427, at *15-16 (D.N.J. Apr. 28, 2017).  The court found plaintiff stated a claim, and found "reserving" the jurisdictional challenge improper.  *Id.*  Here, MOF II advances different arguments and does not "reserve" on its objection to personal jurisdiction, including under the Fifth Amendment.

*Second*, venue also cannot lie under § 1391(b)(2) because a substantial part of the alleged acts and omissions that gave rise to Plaintiffs claims did not occur in Pennsylvania.  Venue does not concern a defendant's contacts with a forum, but instead where the "events or omissions giving rise to the claim" actually occurred.  *See*, *e.g.*, *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see also Bockman v. First Am. Mktg. Corp.*, 459 Fed. App'x 157, 161-62 (3d Cir. 2012).  The purpose of requiring a defendant's substantial acts or omissions to occur in the forum is to shield the defendant from being haled into a faraway district for trial.  *See*, *e.g.*, *LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).  The Amended Complaint must be dismissed because none of the alleged acts or omissions involving MOF II LP occurred in this District.  Instead, as to MOF II LP, the only conduct attributed to it in the Amended Complaint occurred outside Pennsylvania in 2011.[5]

*Third*, venue is improper under RICO.  As noted above, Plaintiffs allege no facts to show any of the defendants reside, operate, have agents, or transact affairs in this District under § 1965(a).  *See also generally* Fredericks Decl.  In any event, the ends of justice would likewise not require venue to lie in this district under § 1965(b).

## III.   EVEN IF THE COURT HAS PERSONAL JURISDICTION OVER MOF II LP AND VENUE IS PROPER, THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   Count V (RICO) Against MOF II LP Must Be Dismissed Because Plaintiffs Fail to Allege Proximate Cause

Plaintiffs assert RICO claims under 18 U.S.C. § 1964(c) on the grounds they were injured "by reason of" the collection of unlawful debt—specifically, the collection of usurious loans Plaintiffs obtained from American Web Loan, Inc. or AWL, Inc.—or a conspiracy to that end

---

[5] Plaintiffs' reliance on *Think Finance* (ECF No. 53 at 2) is again misplaced because there are no allegations MOF II LP funneled Pennsylvania consumers to tribal lenders.

under 18 U.S.C. § 1962(c) & (d).  To state such claims, Plaintiffs must first establish they have standing by showing that some conduct by MOF II LP was the proximate cause of their alleged injuries.  Plaintiffs have not alleged this, and therefore their RICO claims must be dismissed.

RICO plaintiffs must allege a *direct relationship* between a defendant's supposedly injurious conduct and the alleged harm to state a claim under § 1964(c).  18 U.S.C. § 1964(c) (permitting civil action by "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter….") (emphasis added).   The Supreme Court has evaluated proximate cause in RICO actions using common-law principles, holding that proximate cause "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  No direct relationship exists where plaintiffs ask courts to look beyond the "first step" in a causation analysis.  *Hemi Grp.*, 559 U.S. at 10; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries.") (emphasis added).

The Supreme Court's most recent decision on this issue in *Hemi Group* is instructive.  In New York, in-state cigarette vendors are responsible for charging, collecting, and remitting cigarette use taxes imposed by the City of New York; out-of-state vendors are not, which leaves the City responsible for collecting use taxes directly from customers.  559 U.S. at 5.  The City discovers who owes taxes through the federal Jenkins Act, which requires out-of-state cigarette vendors to register and file reports with the *State* of New York detailing how many cigarettes they sold in New York and to whom.  *Id.*  Defendant Hemi Group was an out-of-state vendor that failed to file those reports with the State.  *Id.* at 6.  The City sued Hemi Group under RICO, asserting

that the Hemi Group's failure to file reports with the State constituted fraud (i.e., a predicate offense) that was the proximate cause of the City's injuries (i.e., lost use-tax revenue). *Id.* at 6-7.

The Supreme Court held the City failed to show Hemi Group's allegedly injurious conduct (failing to file reports with the State) was the proximate cause of its loss of tax revenue because there was no *direct*, *first-step* relation between the conduct and the injury. *Id.* at 8. The City lost tax revenue (i.e., was allegedly injured) because *customers* failed to pay taxes, not because Hemi Group failed to file reports with the State. *Id.* at 11. The Court concluded the injurious conduct (failing to file reports) was not only a separate *action* from the one that caused injury (not paying taxes) but also those separate actions were carried out by different *parties* (Hemi Group failed to file reports; customers failed to pay taxes), and therefore could not support proximate cause under RICO. 559 U.S. at 11. As such, even if Hemi Group's failure to file reports helped customers who owed taxes avoid paying them, the Supreme Court refused to "stretch[] the causal chain of a RICO violation so far" beyond the first step where "the City's harm was directly caused by the customers, not Hemi [Group]." *Id.*

Here, Plaintiffs' pleading of proximate cause is fundamentally unsound based on the same logic in *Hemi Group*. Plaintiffs' entire proximate cause argument rests on the allegation that MOF II LP extended credit to MacFarlane Group. But extending credit to MacFarlane Group six years before Plaintiffs took out loans from American Web Loan bears no direct, first-step relation to Plaintiffs' alleged injury (collection of usurious interest). Plaintiffs also do not allege MOF II LP collected usurious interest from anyone. Just as in *Hemi Group*, the *actions* that *one* defendant allegedly undertook (MOF II LP extending credit to MacFarlane Group) are not only separate from the actions that allegedly injured Plaintiffs (collecting usurious interest), but those separate actions were undertaken by separate *parties* (MOF II LP extended credit to MacFarlane; American Web

Loan and AWL, Inc. collected usurious interest).  *See Hemi Grp.*, 559 U.S. at 11.  Plaintiffs therefore fail to allege the required direct, first-step connection between the supposedly injurious conduct and their alleged injury (and do not contend otherwise, *see* ECF No. 53).  Accordingly, Plaintiffs' RICO claims as to MOF II LP must be dismissed.[6]

### B.    Count V Against MOF II LP Must Be Dismissed Because Plaintiffs Fail to Allege a RICO Enterprise or MOF II LP's Control Over It.

RICO requires Plaintiffs to allege facts showing a plausible RICO "enterprise" in three ways.  First, Plaintiffs must allege a RICO enterprise distinct from Defendants themselves.  Second, Plaintiffs must allege facts associating MOF II LP with that enterprise.  Third, Plaintiffs must allege facts showing MOF II LP controlled or managed the enterprise.  The Amended Complaint fails to meet those requirements, and Plaintiffs' RICO claims must be dismissed.

### 1.    Plaintiffs Fail to Plead a Distinct RICO Enterprise

Section 1962(c) requires RICO plaintiffs "to allege and prove the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 162-63 (2001); *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 457 (E.D. Pa. 2010) ("[t]o satisfy the 'distinctiveness' requirement under § 1962(c), Plaintiffs must allege that the RICO 'enterprise' is distinct from the Defendant 'person' alleged to have violated RICO and that the 'enterprise' is distinct from the alleged pattern of racketeering activity").  To do that, RICO plaintiffs must show "an ongoing organization, formal

---

[6] Further, the Amended Complaint implicates all three of the reasons the Supreme Court identified for requiring a direct causation requirement.  First, such an indirect alleged injury would make it difficult to ascertain damages.  Second, aside from causation, apportioning damages among defendants who are so far removed would be overly complicated and improper.  Third, it would be unjustified for MOF II LP to remain because Plaintiffs can sue American Web Loan and AWL—the parties that directly caused any harm.  *See Holmes*, 503 U.S. at 269-70.

or informal, and [ ] evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 805 (7th Cir. 2008) (RICO "'enterprise' requires proof of 'an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making'") (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995)). Consequently, liability under § 1962(c) "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185 (emphasis in original).

The Amended Complaint does not plausibly allege a distinct RICO enterprise because it offers no *facts* to show the affairs of the enterprise are separate from Defendants' affairs, such as by describing the supposed *enterprise's* decisions, decision-making, structure, or the specific acts any party undertook on behalf of the distinct enterprise that are distinct from their everyday activities. *See Reves*, 507 U.S. at 185; *Turkette*, 452 U.S. at 583; *Limestone*, 520 F.3d at 805.

The Amended Complaint's only allegations defining the supposed enterprise are conclusory and devoid of factual content, stating either (1) "Defendants" acted as the "alter ego" of American Web Loan, Inc. and AWL, Inc., or (2) that "the American Web Loan, Inc. and AWL, Inc. entities *were an enterprise* of individual persons and entities that formed an association-in-fact" under RICO. Am. Compl. ¶ 115 (emphasis added). Both theories *equate* RICO persons with a RICO enterprise, which is precisely what RICO plaintiffs cannot do to state a claim. *King*, 533 U.S. at 161, 162-63; *Reves*, 507 U.S. at 185. In any event, Plaintiffs' reference to Defendants as an "enterprise" is conclusory and merely refers to them "by a different name," *see King*, 533 U.S. at 161, which is exactly the use of "labels and conclusions," *Twombly*, 550 U.S. at 555, and

"formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, that cannot plausibly state a claim.

### 2. The Amended Complaint Fails to Allege Facts Associating MOF II LP With An Enterprise

Even if Plaintiffs have alleged the existence of *some* RICO enterprise, the Amended Complaint does not allege facts associating MOF II LP with it.  Plaintiffs allege no facts concerning any conduct by MOF II LP showing it acted outside the scope of its typical business affairs or on behalf of anyone other than itself.  *See Reves*, 507 U.S. at 185.  Instead, Plaintiffs allege MOF II LP is a private equity fund with a loan portfolio, Am. Compl. ¶¶ 42-43, and then allege one loan in its portfolio was to MacFarlane Group and Mr. Curry, *id*. ¶ 42.  Plaintiffs likewise fail to allege any facts showing MOF II LP's supposed role in the enterprise's function or structure.  *See Turkette*, 452 U.S. at 583; *Reves*, 507 U.S. at 185.  In short, Plaintiffs' assertion that MOF II LP engaged in some "wrongdoing" that has an "obvious alternative explanation" that is lawful—namely, that MOF II LP made a loan in the ordinary course of its business—cannot plausibly suggest that MOF II LP acted outside the scope of its typical business affairs.  *See Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 567).

Even if Plaintiffs overcome those problems, the Amended Complaint alleges no facts associating MOF II LP with the supposed enterprise *at the time* of the supposed wrongdoing.  *See*, *e.g.*, *Turkette*, 452 U.S. at 583 (enterprise must be "ongoing"); *see also Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148-49 (4th Cir. 1997) (dismissing RICO complaint "because there is no evidence these defendants conducted any of [the enterprise's] affairs whatsoever *on the dates in question*") (emphasis added).  Plaintiffs allege harm from loans they obtained in 2017, Am. Compl. ¶¶ 57, 65, 72, but allege no facts concerning MOF II LP's conduct after 2011, *id*. ¶ 42, six years *before* Plaintiffs obtained loans from American Web Loan or AWL.  Without factual

15

allegations showing MOF II LP's association with the enterprise when Plaintiffs were allegedly harmed in 2017, Plaintiffs cannot state a plausible claim.

### 3.    The Amended Complaint Fails to Allege Facts Showing MOF II LP "Controlled" or "Participated" in the Supposed Enterprise

Mere "association" with a RICO enterprise without directing its affairs is not sufficient to state a claim.  As the Supreme Court has made clear, a defendant cannot be liable under § 1962(c) unless it "participated in the operation or management of the enterprise itself" by having "some part in *directing* those affairs."  *Reves*, 507 U.S. at 179, 183 (emphasis added).  Here, Plaintiffs plead no facts showing how MOF II LP *directed* the affairs of the supposed enterprise, and therefore cannot state a claim against MOF II LP.

Aside from conclusory assertions directed to "Defendants," the Amended Complaint asserts only that MOF II LP made a loan to Curry and MacFarlane Group in 2011.  That lone fact cannot support a claim under § 1962(c) against MOF II LP for three reasons.  *First*, MOF II LP's alleged loan to MacFarlane Group has an obvious and lawful alternative explanation:  MOF II LP made a loan in the ordinary course of its business.  That fact standing alone precludes the establishment of a plausible RICO claim based on the loan to MacFarlane Group.  *See Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 567).

*Second*, merely lending money does not amount to "control" over an alleged RICO enterprise.  *See NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990); *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1346 (N.D. Ga. 2017) ("Generally, '[t]he fact that a bank provided banking services … is not enough to state a claim under § 1962(c).'"); *Berry v. Deutsche Bank Tr. Co. Am.*, No. 07 Civ. 7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008) ("[L]ending money to an enterprise does not establish a role in 'directing the

enterprise[']s affairs.").   As such, "[t]he normal incidents of a borrower-lender relationship, including monitoring, protection and disposition of collateral, do not amount to control."  *NCNB*, 814 F.2d at 936.  Here, the Amended Complaint has no allegations establishing that MOF II LP controlled any RICO enterprise and Plaintiffs' allegation that MOF II LP merely made a loan to Curry and MacFarlane Group cannot show "control" of a RICO enterprise as a matter of law.  The Amended Complaint does not allege that MOF II LP's loan gave it any special rights or powers over American Web Loan or AWL, let alone "[a]ctual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions" that are required to show "control."  *NCNB*, 814 F.2d at 936.

*Third*, merely extending credit does not constitute "participation" in a RICO enterprise. Professional service providers to a RICO enterprise are not liable under § 1962(c), even where they are "essential" providers, unless they "participate in the operation or management of the enterprise itself."  *Reves*, 507 U.S. at 185; *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise"); *Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 554 (D. Md. 1998) ("Since *Reves*, a number of Courts have dismissed complaints and granted summary judgment in favor of professionals, such as lawyers and accountants, whose professional services were essential to an enterprise yet did not participate in the direction, operation, or management of the enterprise.").  Put simply, MOF II LP's alleged loan to MacFarlane Group and Curry in the ordinary course of its business is not participation in the *enterprise's* affairs, but looking after its *own* affairs.  *See Reves*, 607 U.S. at 185 ("§ 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the

defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs"). As such, Plaintiffs' "non-conclusory allegations are more consistent with [MOF II LP] conducting its own business initiatives … and those types of allegations are not sufficient to plead a RICO enterprise."[7] *Parm*, 242 F. Supp. 3d at 1347; *see also Iqbal*, 556 U.S. at 681.[8]

### C.    Count V Also Fails to Allege a RICO Conspiracy

Plaintiffs assert that "Defendants" conspired "to use the American Web Loan, Inc. and AWL, Inc. Enterprise" to "make unlawful loans and collect unlawful debt" at usurious rates. Am. Compl. ¶ 123. That conclusory allegation is the entirety of Plaintiffs' allegations concerning any "conspiracy," and plainly fails to state a claim.

Section 1962(d) requires RICO plaintiffs to "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000). Plaintiffs must supply "supportive factual allegations" that are "sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy."

---

[7] Plaintiffs' reliance on *MacDonald* (ECF No. 53 at 3) is again misplaced. Among other things, there are no allegations MOF II LP "purchased usurious loans" or "served and performed collection efforts" on such loans, and the Amended Complaint does not "provide detailed allegations" concerning MOF II LP's "individual role[]" in providing "resources and support" to any scheme. *MacDonald*, 2017 WL 1536427, at *14.

[8] Plaintiffs only identify §§ 1962(c) & (d) in Count V, but in passing state "Money consisting of unlawful debts collected by Defendants was re-invested in the business of the American Web Loan, Inc. and AWL, Inc. Enterprise," Am. Compl. ¶ 122. That would only be relevant to a § 1962(a) claim, which Plaintiffs have not plead. Plaintiffs again offer no factual allegations to show MOF II LP "reinvested" any "racketeering income" in a supposed enterprise as required to state a claim under § 1962(a). Plaintiffs likewise do not allege injury traceable to any reinvestment of any such income. *See Rose v. Bartle*, 871 F.2d 331, 357-58 (3d Cir. 1989) (adopting "investment injury rule"). As such, to the extent Plaintiffs attempt to silently assert a § 1962(a) claim, it fails.

*Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (internal quotation marks omitted).   Here, Plaintiffs fail to state a § 1962(d) claim against MOF II LP for three reasons.

*First*, the Amended Complaint is devoid of allegations describing the supposed agreement "Defendants" reached, and instead resorts to group pleading in a single conclusory allegation that cannot state a claim.   Am. Compl. ¶ 123.   The law requires RICO plaintiffs to allege facts to show defendants "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements" of a substantive RICO offense.   *Salinas v. United States*, 522 U.S. 52, 65 (1997); *Parm*, 242 F. Supp. 3d at 1349-50.   Here, there are no factual allegations concerning any "agreement" MOF II LP reached with "Defendants," let alone factual allegations that plausibly suggest MOF II LP agreed to support collection of unlawful debt.

Nor can Plaintiffs rely on the bare allegation MOF II LP made a loan to MacFarlane Group and Curry to support a conspiracy claim.   A defendant's "mere association" with a RICO enterprise does not state a claim under § 1962(d).   *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012).   Even a defendant's knowledge that an enterprise is corrupt is not sufficient to state a RICO conspiracy without the specific intent and agreement to carry on the criminal enterprise.   *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017) ("[M]ere knowledge of [a] scheme … coupled with personal benefit[] is not enough to impose liability for a RICO conspiracy.").   Instead, defendants who merely provide services to an enterprise—such as financing—cannot be liable under § 1962(d) unless those services "were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity."   *Smith v. Berg*, 247 F.3d 532, 537 n.11 (3d Cir. 2001).   Here, the bare allegation MOF II LP made a loan in the ordinary course of business without *facts* plausibly showing MOF II LP agreed to do so with specific intent to carry on a criminal enterprise cannot support a conspiracy claim.

*Second*, Plaintiffs fail to allege facts showing MOF II LP knew and intended any loan to MacFarlane Group and Curry would be used to collect unlawful debt.  Plaintiffs' lone allegation "upon information and belief" that MOF II LP "had knowledge that MacFarlane Group intended to use [MOF II LP's] loan to fund high-interest payday lending," Am. Compl. ¶ 43, is boilerplate the Court should not accept as true.  While plaintiffs may allege facts upon information and belief, boilerplate allegations of "knowledge" without supporting *facts* "that show the court their basis for inferring that the defendants acted with 'scienter'" are conclusory and should be rejected.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *Klein v. Cty. of Bucks*, No. CIV.A. 12-4809, 2013 WL 1310877, at *8 (E.D. Pa. Apr. 1, 2013).

Even accepting the allegation MOF II LP had knowledge MacFarlane Group would use its loan "to fund high-interest payday lending," it still cannot support a § 1962(d) claim.  Knowledge that another would use funds to finance "high-interest payday lending" does not mean that lending would be *unlawful*; even if it did, MOF II LP's supposed knowledge MacFarlane and Curry were involved in some kind of "scheme" is "not enough to impose liability for a RICO conspiracy." *Flexborrow LLC*, 255 F. Supp. 3d at 425.

*Third*, even if Plaintiffs had alleged facts showing an agreement and scienter, Plaintiffs have failed to allege any injury from MOF II LP's supposed loan to MacFarlane Group and Curry. The Supreme Court has made clear that a RICO conspiracy plaintiff "cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury," as the law "requires that a RICO conspiracy plaintiff allege injury from an act that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505 (2000) (emphasis in original).  Here, the only *act* attributed to MOF II LP in the entire Amended Complaint is

20

providing financing to MacFarlane Group and Curry.  Am. Compl. ¶ 42.  Providing commercial financing is neither a racketeering act nor the collection of unlawful debt, and therefore cannot give rise to a claim under § 1962(d).  *Beck*, 529 U.S. at 505.

### D.       Plaintiffs' State Law Claims Must Be Dismissed

Counts I-IV assert Pennsylvania state-law claims against "Defendants" on the premise they actually made loans and representations about loans to Pennsylvania consumers.  All of these claims fail because MOF II LP did not even allegedly interact with Pennsylvania residents.

### 1.       Count I Must Be Dismissed Against MOF II LP Because It Made No Loans to Pennsylvania Consumers

Count I asserts MOF II LP violated Pennsylvania's usury law because it made loans at excessive interest rates to Pennsylvania consumers without a license to do so.  But the Amended Complaint does not allege MOF II LP made loans to anyone in Pennsylvania.  Instead, the Amended Complaint states that the consumer loans were made by American Web Loan, Inc.  *See*, *e.g.*, Am. Compl. ¶¶ 42, 44, 57, 65, 72.  While the Plaintiffs attempt to allege that American Web Loan was only the "nominal" lender, there are no facts or allegations that MOF II LP was involved in, or made, any loan to any plaintiff.  Plaintiffs' attempt to manufacture a *theory* in place of *factual allegations* to bypass the named lenders on the loans at issue does not state a claim.

### 2.       Count II Against MOF II LP Likewise Must Be Dismissed Because It Made No Loans to Pennsylvania Consumers

Count II asserts MOF II LP violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law on the grounds "Defendants" (1) charged excessive interest on consumer loans in violation of Pennsylvania's usury law; (2) charged such interest without a license in violation of the Consumer Discount Company Act (the "CDCA"); (3) collected

excessive interest charges or threatened to do so, and (4) misrepresented or deceived consumers as to the legal status of their debt.  Am. Compl. ¶¶ 95, 97, 100.

Count II also fails because there are no factual allegations to assert MOF II LP made loans to anyone in Pennsylvania.[9]  Additionally, the Amended Complaint contains no factual allegations suggesting MOF II LP collected or threatened to collect interest from Plaintiffs or other consumers. Nor can Plaintiffs argue that "funding" loans violates the CDCA, *cf.* Am. Compl. ¶ 98, because the CDCA only requires licensure for those "[1] in the business of negotiating or making loans or advances of money on credit, in the amount or value of twenty-five thousand dollars ($25,000) or less, *and* [2] charge, collect, contract for or receive interest" or certain other consideration on those loans.  7 Pa. Stat. § 6203 (emphasis added).  The allegations do not establish MOF II LP meets those criteria.

### 3. Count III Against MOF II LP Must Be Dismissed Because It Did not Collect Interest on Consumer Loans

Count III asserts MOF II LP violated the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") by collecting or attempting to collect excessive interest charges, falsely representing the legal status of their debt, and threatening illegal action.  Am. Compl. ¶ 105.  Again, this claim fails because the allegations do not establish that MOF II LP made loans to anyone in Pennsylvania.  Plaintiffs also supply no factual allegations showing MOF II LP was a "creditor" as defined under 73 Pa. Stat. § 2270.3 such that it *could* be liable for any conduct under § 2270.5.

---

[9] Contrary to Plaintiffs' suggestion (ECF No. 53 at 3), *Think Finance* is again irrelevant as there are no allegations MOF II LP "specifically approached [a bank] and the tribes in order to circumvent Pennsylvania law," or that it "issue[d] loans" to anyone in Pennsylvania.  *Cf. Think Fin.*, 2016 WL 183289, at *23.

4.      **Count IV Against MOF II LP Must Be Dismissed Because It Was Not A "Loan Broker" or "Credit Services Organization"**

Plaintiffs' final state-law claim (Count IV) asserts that even if "Defendants" were not the "true" lenders to Plaintiffs, Am. Compl. ¶ 108, they still violated FCEUA by misrepresenting the true lender, failing to disclose their interest in the loan, and engaging in "other deceptive conduct." Am. Compl. ¶ 110.  The claim makes little sense:  if American Web Loan was the true lender and MOF II LP said as much (which the Amended Complaint does not even allege), that would be a true statement.  In any event, there are no factual allegations to support the contention MOF II LP was either a "loan broker" or "credit services organization" regulated by FCEUA.  MOF II LP could not be a "credit services organization" because there are no allegations it sells services of improving buyer credit, obtaining extensions of credit, or provides assistance to buyers in Pennsylvania.  73 Pa. Stat. § 2182.  Likewise, MOF II LP could not be a "loan broker" because, among other reasons, there are no allegations it arranged or attempted to arrange to fund a loan of money to anyone in Pennsylvania for a fee.  *Id.*

IV.     **ALL CLAIMS MUST BE DISMISSED AGAINST MOF II LP BECAUSE PLAINTIFFS HAVE FAILED TO JOIN AMERICAN WEB LOAN, AWL, AND THE OTOE-MISSOURIA TRIBE AS INDISPENSABLE PARTIES**

Under Rule 19, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" when a necessary party cannot be joined.  Fed. R. Civ. P. 19(b).  Rule 19 lists several factors for the court to make that decision, but courts have held that "when an indispensable party is immune from suit, there is very little room for balancing of other factors' set out in rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (internal quotation marks omitted) (quoting *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989); *Wichita &*

*Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 n. 13 (D.C. Cir. 1986); *see also Gilliand v. Koch Trucking, Inc.*, No. 11-cv-3073, 2015 WL 2395148, at *5 (D. Md. May 19, 2015) (dismissing case where School Board was "indispensable," and could not be joined because of its immunity under Eleventh Amendment).

A case dependent on collecting unlawful debt cannot accord complete relief among the parties named unless the entities that made and collected that debt are present.  Here, that means American Web Loan, Inc., AWL, Inc., and the Otoe-Missouria Tribe of Indians are indispensable parties because they are the *lenders*.  None of the parties to this case are tribal entities and, as such, disposition of this case without them—including, specifically, to assert the debt was *lawful* under sovereign tribal law—will, to a certainty, impair or impede their ability to protect their interest in continuing to make online loans pursuant to their laws.  *See* Fed. R. Civ. P. 19(a)(1).  The absence of those tribal parties will leave existing parties—namely, all of the Defendants here, none of which even allegedly made loans to Pennsylvania consumers—subject to substantial risk of incurring multiple and inconsistent obligations for acts they did not perform.

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed.

Dated:  November 21, 2018                    Respectfully submitted,

                                             /s/ Stephen R. Chuk
                                             Stephen R. Chuk (PA Bar No. 309715)
                                             1001 Pennsylvania Avenue, NW
                                             Suite 600 South
                                             Washington, DC 20004
                                             Telephone: (202) 416-6800
                                             Facsimile: (202) 416-6899
                                             Email:  schuk@proskauer.com

                                             Christopher E. Ondeck (admitted *pro hac vice*)
                                             Proskauer Rose LLP
                                             1001 Pennsylvania Avenue, NW
                                             Suite 600 South
                                             Washington, DC 20004
                                             Telephone: (202) 416-6800
                                             Facsimile: (202) 416-6899
                                             Email:  condeck@proskauer.com

                                             Timothy W. Mungovan (admitted *pro hac vice*)
                                             Michael R. Hackett (admitted *pro hac vice*)
                                             William D. Dalsen (admitted *pro hac vice*)
                                             Proskauer Rose LLP
                                             One International Place
                                             Boston, MA 02110
                                             Telephone:  (617) 526-9600
                                             Facsimile:  (617) 526-9899
                                             Email:  tmungovan@proskauer.com
                                                     mhackett@proskauer.com
                                                     wdalsen@proskauer.com

                                             *Counsel for Specially-Appearing Defendant Medley
                                             Opportunity Fund II, LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on November 21, 2018.

_/s/ Stephen R. Chuk_____
Stephen R. Chuk