# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA WILLIAMS and MICHAEL STERMEL, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   vs.<br><br>RED STONE, INC., as successor in interest to MACFARLANE GROUP, INC., MEDLEY OPPORTUNITY  FUND II, LP, MARK CURRY, BRIAN MCGOWAN, VINCENT NEY, and other JOHN DOE Persons or entities,<br><br>     Defendants. | CASE NO. 2:18-cv-02747-MSG |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MEDLEY OPPORTUNITY FUND II, LP

---

Sarah T. Hansel, Esq. (PA I.D. No. 319224)
BEREZOFSKY LAW GROUP, LLC
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
(856) 667-0500
shansel@eblawllc.com

Michael J. Quirk, Esq. (PA I.D. No. 204677)
BEREZOFSKY LAW GROUP, LLC
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118-3324
(856) 667-0500
mquirk@eblawllc.com

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iii

INTRODUCTION…………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………3

ARGUMENT………………………………………………………………………...5

     A.      The Court Has Personal Jurisdiction Over Defendant MOF……………………..5

          1.      The Court Has Specific Jurisdiction Based on Plaintiffs' Claims…………5

          2.      The Court Also Has Personal Jurisdiction Under RICO…………………9

     B.      Venue Also is Proper……………………………………………………………10

     C.      Plaintiffs' Claims Against Defendant MOF are Actionable……………………11

          1.      Plaintiffs' RICO Claim is Actionable…………………………………...11

               a.      Proximate Causation……………………………………………..12

               b.      Enterprise…………………………………………………...13

                c.      Conspiracy………………………………………………15

          2.      Plaintiffs' Pennsylvania State Law Claims are Actionable…………….16

               a.      Usury……………………………………………………..16

                b.      UTPCPL…………………………………………………..17

                c.      FCEUA…………………………………………………..19

                d.      CSA…………………………………………………..19

     D.      The Tribal AWL Entities Are Not Indispensable Parties…………………….20

CONCLUSION……………………………………………………………………...21

## <u>TABLE OF AUTHORITIES</u>

**Page**

### CASES

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)……………………………………12

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773 (2017)………………………...5

*Commonwealth of Pa. v. Think Finance, Inc.*, No. 14-cv-7139-JCJ,
    2016 U.S. Dist.LEXIS 4649 (E.D. Pa. Jan. 14, 2016)
    ("*Pa. v. Think Finance I*")……………………………………………………………..*passim*

*Commonwealth of Pa. v. Think Finance, Inc.*, No. 14-cv-7139-JCJ,
    2018 U.S. Dist. LEXIS 15538 (E.D. Pa. Jan. 26, 2018)
    ("*Pa. v. Think Finance II*")……………………………………………………...1, 6, 8

*Daimler AG v. Bauman*, 517 U.S. 117 (2014)………………………………………………….5

*Dollar Sav. Bank v. First Sec. Bank*, 746 F.2d 208 (3d Cir. 1984)………………………………..6

*ESB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)…………………………………10

*Gingras v. Rosette*, No. 5:15-cv-101-GWC, 2016 U.S. Dist. LEXIS 66833
    (D. Vt. May 18, 2016)……………………………………………………………*passim*

*Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915 (2011)…………………………….5, 9

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010)………………………………...12

*In re Rockefeller Ctr. Prop's Sec. Litig.*, 184 F.3d 280 (3d Cir. 1999)…………………………...8

*MacDonald v. CashCall, Inc.*, No. 16-cv-2871-MCA, 2017 U.S. Dist. LEXIS
    64761 (D.N.J. April 28, 2017)………………………………………………..*passim*

*Mellon Bank PSFS, N.A. v. Farino*, 960 F.2d 1218 (3d Cir. 1992)…………………………5-6, 7

*Shuman v. Computer Assoc's Int'l, Inc.*, 762 F. Supp. 114 (E.D. Pa. 1991)……………………..9

*Sloan v. GM, LLC*, 267 F. Supp. 3d 840 (N.D. Cal. 2018)………………………………………5

*United States v. Hallinan*, No. 16-cr-00130-ECR, 2016 U.S. Dist. LEXIS 179625
    (E.D. Pa. Dec. 29, 2016)………………………………………………………12

iii

**STATUTES**

18 U.S.C. §§ 1961 *et seq.*………………………………………………………2

18 U.S.C. § 1961(4)………………………………………………………...13

18 U.S.C. § 1962(c)………………………………………………………...11

18 U.S.C. § 1962(d)………………………………………………………...15

18 U.S.C. § 1964(c)………………………………………………………….4

18 U.S.C. § 1965…………………………………………………………10

18 U.S.C. § 1965(a)………………………………………………………...9, 11

18 U.S.C. § 1965(b)……………………………………………………….9

28 U.S.C. § 1391(b)(2)……………………………………………………10-11

7 Pa. Stat. §§ 201 *et seq.*………………………………………………….4

41 Pa. Stat. §§ 101 *et seq.*………………………………………………….4

41 Pa. Stat. § 502…………………………………………………………….4

73 Pa. Stat. §§ 201-1 *et seq.*………………………………………………...4, 17

73 Pa. Stat. § 201-9.2(a)…………………………………………………...4

73 Pa. Stat. §§ 2270.1 *et seq.*………………………………………………4, 19

73 Pa. Stat. §§ 2181 *et seq.*………………………………………………4, 19

73 Pa. Stat. § 2191…………………………………………………………...4

**COURT RULES**

Fed. R. Civ. P. 12(d)…………………………………………………………8

Fed. R. Civ. P. 19…………………………………………………………...20

Plaintiffs Christina Williams and Michael Stermel, on behalf of themselves and those similarly situated, hereby oppose the Motion to Dismiss by Defendant Medley Opportunity Fund II, LP ("MOF") (Doc. 59) and state in opposition thereto as follows.

## <u>INTRODUCTION</u>

Plaintiffs both are citizens of Pennsylvania and residents of Philadelphia.  They both entered into high-interest payday loans over the internet from their homes in Philadelphia.  Ms. Williams entered into two loans, each charging interest at an annual percentage rate (APR) over 500%.  Mr. Stermel entered into one loan, which charged interest at over 490% APR.  These loans were illegal under Pennsylvania law, which caps interest at 6% for non-licensed lenders.

Plaintiffs filed this putative class action on behalf of themselves and thousands of other similarly situated Pennsylvania consumers, alleging that Defendants funded, solicited, arranged, serviced, and/or collected on these high-interest payday loans in violation of Pennsylvania and federal law.  With respect to Defendant MOF, Plaintiffs allege that in 2011 it provided a $22.9 million loan to Defendants Mark Curry and MacFarlane Group, Inc., n/k/a Red Stone, Inc., knowing they were using this money to fund issuance of high-interest payday loans in excess of state usury limits, from which MOF received returns substantially in excess of its investment.

MOF moves to dismiss on the grounds that the Court lacks personal jurisdiction over it and that Plaintiffs fail to state actionable claims.  The arguments MOF raises have been addressed and rejected by this District Court and others.  *See*, *e.g.*, *Commonwealth of Pa. v. Think Finance, Inc.*, No. 14-cv-7139-JCJ, 2018 U.S. Dist. LEXIS 15538 (E.D. Pa. Jan. 26, 2018) ("*Pa. v. Think Finance II*"); *Commonwealth of Pa. v. Think Finance, Inc.*, 2016 U.S. Dist. LEXIS 4649 (E.D. Pa. Jan. 14, 2016) ("*Pa. v. Think Finance I*"); *MacDonald v. CashCall, Inc.*, No. 16-cv-2871-MCA, 2017 U.S. Dist. LEXIS 64761 (D.N.J. April 28, 2017).

1

First, the Court has specific personal jurisdiction over MOF because Plaintiffs' claims arise out of MOF's contacts with Pennsylvania.  Plaintiffs allege that MOF and its co-Defendants are the true lenders of their and Class members' payday loans made in Pennsylvania because Defendants funded, controlled, and collected nearly all the profits from these loans.  MOF's $22.9 million loan provided the funds necessary for Defendants to make usurious payday loans in Pennsylvania and other states with usury limits, and MOF knew that its funds were being used for this unlawful purpose.  These contacts with Pennsylvania give the Court personal jurisdiction over MOF with respect to Plaintiffs' usury and racketeering-based claims.

The Court also has personal jurisdiction over MOF pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*  Each Defendant has sufficient transactional contacts with Pennsylvania by virtue of the loans made to Plaintiffs and Class members on which Defendants are the true lenders or lenders-in-fact.  Moreover, the ends of justice also require that this Court or another Pennsylvania court exercise jurisdiction because no other court has either general personal jurisdiction over all Defendants, who or which reside in multiple different states, or specific jurisdiction with respect to the claims herein based on illegal payday loans made in Pennsylvania.

Finally, Plaintiffs' claims against MOF are actionable. Plaintiffs allege that MOF funded and reaped substantial profits from usurious payday loans made in Pennsylvania, knowing that they were illegal and that the illegality was being concealed through use of the names of Indian tribal entities that had no substantial interest in the loans.  Plaintiffs' Pennsylvania state statutory and federal RICO claims based upon this rent-a-tribe payday lending scheme are actionable. *See*, *e.g.*, *Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at *56, 71-72; *MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *37.  The motion to dismiss should be denied.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on June 29, 2018 as a putative class action on behalf of themselves and similarly situated Pennsylvania citizen consumers who entered into loans with interest charges far in excess of 6% APR where the nominal lender was "American Web Loan, Inc." or "AWL, Inc."  *See* Class Action Complaint (Doc. 1), ¶ 78.  They filed their First Amended Class Action Complaint ("FAC") (Doc. 4) on July 26, 2018.

Plaintiffs allege that MOF and its co-Defendants funded, solicited, arranged, serviced, collected on, and/or substantially profited from these payday loans made to Pennsylvania citizens over the internet.  FAC, ¶ 2.  Plaintiffs further allege that Defendants structured this lending scheme with the nominal lender designated as either of the two AWL entities, which are Indian tribal corporations whose own conduct may be shielded from liability under state or federal law by the doctrine of tribal sovereign immunity, so that Defendants (all *non-tribal* persons or entities) could make and profit from these loans in Pennsylvania while evading its licensure, usury, and consumer protection laws.  *Id.*

As to Defendant MOF, Plaintiffs allege that it provided the $22.9 million loan to Defendant MacFarlane Group/Red Stone that funded the origination of the subject payday loans. *See id.*, ¶¶ 41-42.  Plaintiffs further allege that MOF made this loan knowing that the proceeds would be used to fund payday lending at high interest rates in excess of borrowers' home-state usury limits.  *Id.*, ¶¶ 42, 44.  Plaintiffs further allege that MOF shared substantially in the profits from this high-interest payday lending by charging MacFarlane Group 26% annual interest, which was the highest effective interest rate in MOF's entire loan portfolio.  *Id.*, ¶ 43.

Plaintiffs allege that MOF and its co-Defendants are the true lenders or lenders in fact on the subject payday loans to Pennsylvania consumers because they funded, controlled, and

recovered nearly all the revenues and profits from these usurious and thus illegal loans. *Id.*, ¶¶ 2-3. Plaintiffs further allege that MOF and its co-Defendants concealed the illegality of the subject payday loans through their use of the names of the AWL Indian tribal entities that in fact had no substantial interest in the loans. *Id.*

Plaintiffs thus claim that MOF and its co-Defendants violated Pennsylvania's usury statute—the Loan Interest and Protection Law ("LIPL"), 41 Pa. Stat. §§ 101 *et seq.*—by making these loans with interest rates grossly in excess of 6% APR without a license under Pennsylvania's Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 201 *et seq. See* FAC, ¶¶ 87-89.

They further claim that Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201-1 *et seq.*; Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270.1 *et seq.*; and/or its Credit Services Act ("CSA"), 73 Pa. Stat. §§ 2181 *et seq.*, by making and collecting on these illegal high-interest loans to Pennsylvania citizen consumers. *See* FAC, ¶¶ 92-113.

Finally, Plaintiffs also claim that Defendants violated RICO by participating in this scheme to impose, collect, and profit from debts that are illegal under applicable Pennsylvania law. *See* FAC, ¶¶ 114-124.

Plaintiffs seek triple damages under 41 Pa. Stat. § 502, 73 Pa. Stat. § 201-9.2(a), and 18 U.S.C. § 1964(c); actual and punitive damages under 73 Pa. Stat. § 2191; a declaratory judgment that Defendants violated these laws by making loans that are illegal in Pennsylvania; an injunction prohibiting Defendants from offering, making, arranging, funding, servicing, and/or collecting on usurious loans in Pennsylvania; and an award of attorneys' fees and costs. *See* FAC, Counts I-V.

4

## ARGUMENT

### A.     The Court Has Personal Jurisdiction Over Defendant MOF.

#### 1.     The Court Has Specific Jurisdiction Based on Plaintiffs' Claims.

The Supreme Court recently reaffirmed that "the Fourteenth Amendment limits the jurisdiction of state courts." *Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773, 1779 (2017). As the Court explained, "[b]ecause 'a state court's assertion of jurisdiction exposes defendants to the State's coercive power,' it is 'subject to review for compatibility with the Fourteenth Amendment's Due Process Clause.'" *Id.* (quoting *Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).

Here, since this case is before a United States District Court, not a state court, the due process concern with unforeseeable exercise of a state's sovereign power does not apply. *See, e.g.*, *Sloan v. GM., LLC*, 267 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018) ("In contrast to *Bristol-Myers*, the due process right does not obtain here because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereign of a foreign state government.").

However, even assuming due process personal jurisdiction requirements do apply to this Court, they are readily satisfied. "The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers*, 137 S. Ct. at 1779. "Specific" or "case-linked" personal jurisdiction is established where the lawsuit "arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 517 U.S. 117, 127 (2014) (internal citation omitted). The Court may exercise personal jurisdiction over a defendant where there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919; *see also Mellon Bank PSFS, N.A. v. Farino*, 960 F.2d

1217, 1221 (3d Cir. 1992) ("Specific jurisdiction arises when the plaintiff's 'claim is related to or arises out of the defendant's contacts with the forum.'") (quoting *Dollar Sav. Bank v. First Sec. Bank*, 746 F.2d 208, 211 (3d Cir. 1984)).

This is just such a case. Plaintiffs' claims are based on the payday loans made over the internet to themselves and similarly situated persons in Pennsylvania with funds provided by Defendant MOF, which knew that its funds were being used for illegal high-interest payday lending in Pennsylvania and other states with usury limits and which reaped substantial profits from these loans. *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23.

This District Court and numerous others have held or found that they have specific personal jurisdiction over parties engaged in this type of conduct through "rent-a-tribe" payday lending schemes. *See*, *e.g.*, *Pa. v. Think Finance II*, 2018 U.S. Dist. LEXIS 15538, at *12-13 (rejecting defendant's argument that "its only conduct relevant to the loans was its purchase of participation interests from the tribes, which was also negotiated and executed outside of Pennsylvania;" holding that this District Court has personal jurisdiction where defendants "actively participated in the design, implementation, and direction of a scheme that targeted customers located in Pennsylvania with . . . payday loans . . . ."); *Pa. v. Think Finance I*, *supra*, 2016 U.S. Dist. LEXIS 4649, at *84 n.39 ("Further, the OAG alleges that these Defendants have been knowing participants in the scheme to issue illegal loans to citizens of Pennsylvania."); *MacDonald*, *supra*, 2017 U.S. Dist. LEXIS 64761, at *42 n.16 ("Defendants do not dispute that CashCall, WS Funding, and Delbert are subject to specific personal jurisdiction based on their contacts with New Jersey relating to the origination, servicing, and collection of Plaintiff's loan."); *Gingras v. Rosette*, No. 5:15-cv-101-GWC, 2016 U.S. Dist. LEXIS 66833, at *33 (D. Vt. May 18, 2016) ("[A] personal physical presence in the state is not required to satisfy the

6

minimum contacts test.  Plaintiffs allege that Mr. Rees and the companies which he controls developed a nationwide, illegal lending scheme which resulted in predatory loans to Vermont residents.").  The same conclusion applies here.

MOF's arguments to the contrary should be rejected.  As is customary, MOF devotes considerable space to identifying types of physical contact it *does not* have with Pennsylvania. *See* MOF Memorandum ("MOF Memo.") (Doc. 59-1) at 3 (no residence; no business registration; no offices, accounts, telephone numbers, P.O. boxes, or employees; no real property; no registered agent).  The Third Circuit has squarely rejected this type of argument made by defendants against personal jurisdiction:

> Defendants go on to list all the physical contacts that they do not have with Pennsylvania, e.g., no residence, no office, no bank accounts, no telephone listing, no property in the Commonwealth.  While it may be true that the defendants have no physical connection with the forum, that is not dispositive.  When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Mellon Bank*, 960 F.2d at 1225 (citation omitted).

Here, although MOF also denies making any loan or investment in Pennsylvania, *see* MOF Memo. at 3, Plaintiffs allege to the contrary.  Plaintiffs allege that MOF's provision of funding for and collection of substantial profits from the subject payday loans with knowledge that its funds were being used for this purpose *make it a lender in fact*, while placement of the tribal AWL entities' names on the payday loan agreements was mere window dressing to conceal their illegality.  *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23.

Thus, MOF's personal jurisdiction challenge really is a merits argument in disguise. MOF's contention that it did not make loans in Pennsylvania would require the Court to reject Plaintiffs' primary contention—that MOF's and its co-Defendants' funding of, control over, and

collection of nearly all profits from the subject payday loans make them the lenders in fact—and to ratify the artifice Defendants created through their use of the tribal AWL entities' names to conceal the loans' illegality.

This District Court previously has rejected such arguments attempting to ratify rent-a-tribe payday lending schemes in Pennsylvania, with respect to both personal jurisdiction and the merits of claims.  *See Pa. v. Think Finance II*, 2018 U.S. Dist. LEXIS 15538, at *16-17 ("Lastly, evidence shows that the movants were active participants with actual control over the scheme. Not only did Victory Park fund the scheme through GPLS, but it later illustrated its control over the scheme when it forced a temporary halt to the purchase of all participation interests.  . . . This level of engagement takes the movants from passive investors to collaborators in a scheme that targeted Pennsylvania residents.  Even though the conduct occurred outside of Pennsylvania, it connects them to the forum in a meaningful way.") (citation omitted); *Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at *32 ("Similarly, although conditions on a term sheet are typical of legal business transactions, here they indicate a level of control over the loans that supports the inference that the Think Defendants are the true lenders.").  The Court should reach the same conclusions here with respect to the rent-a-tribe payday lending claims Plaintiffs have pleaded.[1]

---

[1]  MOF asks the Court to look beyond the pleadings to its untested declaration discussing a loan MOF made to "American Web Loan Holdings, LLC."  *See* MOF Memo. at 4; Declaration of John Fredericks (Doc. 59-2).  The Court should not do so.  This would convert MOF's motion into one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Summary judgment may be granted only if Plaintiffs have a reasonable opportunity to present all material relevant to the motion. *See, e.g.*, *In re Rockefeller Ctr. Prop's Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999).  Here, Plaintiffs have had no right to discovery related to the alleged 2011 MOF-American Web Loan Holdings, LLC loan or any other as-yet unidentified MOF activity connected with the subject payday loans.  MOF's evidentiary submission thus is premature and should be discarded.  *See*, *e.g.*, *Gingras*, 2016 U.S. Dist. LEXIS 66833, at *38 (denying summary judgment without prejudice and permitting discovery on personal jurisdiction question as to two defendants).

## 2.     **The Court Also Has Personal Jurisdiction Under RICO.**

The RICO venue provisions further support the Court's exercise of personal jurisdiction over MOF.  Any civil action under RICO "against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(a).  Plaintiffs satisfy this provision with respect to MOF because, as discussed, they allege it transacted in Pennsylvania as a lender-in-fact on the subject payday loans through its funding of, control over, and collection of substantial profits from the loans.  *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23.

The Act further permits the Court to exercise jurisdiction over all Defendant participants to the RICO scheme based on its jurisdiction over any one of them:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).  "In determining whether an 'ends of justice' finding should be made, a substantial factor to be considered is whether an alternative forum exists where venue would be proper as to all defendants."  *Shuman v. Computer Assoc's Int'l, Inc.*, 762 F. Supp. 114, 118 (E.D. Pa. 1991).

Here, there is no other venue that would be proper as to all Defendants.  Each Defendant is a citizen of a different state or territory than the others.  *See* FAC, ¶¶ 6-10.  Thus, no other state or district would have general jurisdiction over all Defendants.  *See generally Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regard as at home."); *see also Gingras*, 2016 U.S. Dist. LEXIS 66833, at

*36-37 ("[I]t is not clear that there is another forum in which all defendants can be sued (except pursuant to § 1965(b)). Only the Tribal Defendants are citizens of Montana. The other parties and Mr. Rees are from different states.").

Nor would any other state or district have specific jurisdiction over all Defendants with respect to Plaintiffs' claims, which are based on the origination of and collection upon illegal payday loans to persons in Pennsylvania. *See Gingras*, 2016 U.S. Dist. LEXIS 66833, at *37 ("[T]here is nothing inherently unfair or unjust about requiring representatives of a lender doing business in Vermont to defend their practices in this state."); *see also MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *44 ("[T]he burden is on the defendant to demonstrate that the exercise of jurisdiction under 18 U.S.C. § 1965 would result in 'such extreme inconvenience or unfairness' as to violate the Due Process Clause of the Fifth Amendment.") (quoting *ESB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997)). The ends of justice thus permit the Court to exercise personal jurisdiction over MOF with respect to Plaintiffs' claims.

Here again, MOF's only answer, *see* MOF Memo. at 8, is to resist Plaintiffs' claim that its funding of, control over, and substantial profiting from the subject payday loans make it a lender-in-fact that transacted in Pennsylvania. *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23. These well-founded allegations permit this Court to exercise personal jurisdiction both under RICO and under general Constitutional principles. MOF's request for dismissal based on lack of jurisdiction should be denied.

## B.    <u>Venue Also is Proper.</u>

Venue also is proper for the same reasons. A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

." 28 U.S.C. § 1391(b)(2).  RICO also authorizes a civil suit to be filed in any district where the defendant "transacts his affairs."  18 U.S.C. § 1965(a).

Here, the subject illegal payday loans were issued and collected upon in Pennsylvania to and from Pennsylvania consumers.  *See* FAC, ¶¶ 2,3, 57, 65, 72, 79.  This suffices to make venue proper in this Court under both the general and RICO provisions.  *See Gingras*, 2016 U.S. Dist. LEXIS 66833, at *57 ("Plaintiffs' allegations—that as a result of the actions of Rees and the Think Defendants, Plain Green entered into multiple illegal loan transactions with Plaintiffs— satisfies either standard.  Venue is proper in the District of Vermont.").

In resisting venue, MOF again argues that no conduct occurring in Pennsylvania can be attributed to it.  *See* MOF Memo. at 10.  Here again, though, MOF's argument would require the Court to reject Plaintiffs' primary allegation—that MOF's and the other Defendants' funding of, control over, and collection of nearly all profits from the subject payday loans make them the lenders in fact—and to ratify the artifice Defendants created through their use of the tribal AWL entities' names to disguise the loans' illegality.  For the same reason the Court should reject this argument with respect to personal jurisdiction, it also should do so with respect to venue.

## C.   Plaintiffs' Claims Against Defendant MOF are Actionable.

### 1.   Plaintiffs' RICO Claim is Actionable.

Plaintiffs claim that Defendant MOF violated RICO, 18 U.S.C. § 1962(c), by participating in an enterprise to collect illegal debt by funding, controlling, and collecting substantial profits from the subject usurious payday loans.  FAC, ¶ 122.  Plaintiffs further claim that MOF also violated RICO, 18 U.S.C. § 1962(d), by conspiring to use the AWL tribal entities enterprise or artifice to conceal the illegality of these loans.  FAC, ¶ 123.

This District Court and numerous others have recognized the viability of these types of claims based upon one or more defendants' participation in similar rent-a-tribe payday lending schemes.  *See*, *e.g.*, *Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at \*48-49; *MacDonald*, 2017 U.S. Dist. LEXIS 64761, at \*36-37; *Gingras*, 2016 U.S. Dist. LEXIS 66833, at \*110-111; *see also United States v. Hallinan*, No. 16-cr-00130-ECR, 2016 U.S. Dist. LEXIS 179625, at \*2 n.2 (E.D. Pa. Dec. 29, 2016) (in criminal RICO prosecution, "simply affiliating with an Indian tribe did not give Hallinan and Neff the benefits of tribal immunity . . . .  Here the Court is obligated to accept as true the indictment's allegations that Hallinan and Neff set up sham arrangements in order to evade state usury laws.").  This Court likewise should recognize the viability of Plaintiffs' civil RICO claim here.

### a.      Proximate Causation

MOF argues for dismissal of Plaintiffs' RICO claim primarily on the ground that Plaintiffs fail to sufficiently allege proximate causation.  *See* MOF Memo. at 10-13.  The Court should reject this argument.

Proximate cause under RICO "is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case.'"  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (quoting *Holmes v. Sec's Investor Prot. Corp.*, 503 U.S. 258, 272 (1992)) (internal citation omitted).  Instead, all that is required is a direct relation between the injury and the unlawful conduct alleged.  *Id.*  In *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), a plurality of the Supreme Court recognized a "first step" inquiry for assessing proximate cause or directness under RICO, *see id.* at 10 (plurality op.), under which an important consideration is "whether better situated plaintiffs would have an incentive to sue."  *Id.* at 11-12.

Here, there are no other potential plaintiffs better situated to sue than Plaintiffs and putative Class members herein.  They were the direct victims of the rent-a-tribe payday lending scheme who paid the illegal and exorbitant interest on the loans that Defendant MOF funded, controlled, and substantially profited from.  *See* FAC, ¶¶ 62-64, 70-71, 77-78.

MOF nonetheless argues that this is not the required "first-step" relationship because it loaned the funds to Defendant MacFarlane Group/Red Stone and did not directly collect usurious interest from Plaintiffs or Class members.  *See* MOF Memo. at 12-13.  The Court should reject this argument because Plaintiffs allege that MOF *did* receive substantial profits from the consumer payments on the payday loans by charging MacFarlane Group 26% annual interest on its loan, which was paid back with usurious payday loan interest.  *See* FAC, ¶¶ 42-44.  MOF thus received a substantial share of the illegal interest charged on the payday loans.  This is a sufficiently direct relationship between unlawful conduct and injury to establish proximate cause under RICO.  *See*, *e.g.*, *Gingras*, 2016 U.S. Dist. LEXIS 66833, at *88-89 ("The conduct at issue includes the alleged marketing and collection of usurious interest rates.  The injury is the alleged payment of interest at excessive rates.  That is a sufficiently direct relationship to satisfy proximate cause.").

### b.   <u>Enterprise</u>

MOF next argues that Plaintiffs fail to allege an enterprise that is distinct from the individual Defendants' ordinary affairs.  *See* MOF Memo. at 13-14.  This, too, is incorrect.

Under RICO, an "enterprise" includes in relevant part "any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO "enterprise" is deemed distinct from the RICO "persons" participating in the enterprise where there is present a

13

third party that is otherwise outside of or apart from the other participants' ordinary business. *MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *40-41.

Here, the involvement of the third-party AWL tribal entities (American Web Loan, Inc. and AWL, Inc.) as nominal lenders, *see* FAC, ¶¶ 40-41, 46, 49, renders the enterprise sufficiently distinct from Defendants' ordinary business affairs to qualify it as a RICO enterprise.  *See*, *e.g.*, *MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *40 ("Due to the inclusion of third-party Western Sky, a separate legal entity with a different owner than Defendants, Plaintiff has alleged a RICO enterprise that is not simply the same person referred to by a different name.") (citation omitted). Here, the AWL entities were created by the Otoe-Missouria Tribe (albeit at Defendants' behest). *See* FAC, ¶¶ 40, 49.  Moreover, the AWL entities had a modest financial stake in the payday lending business of the enterprise, *see id.*, ¶ 46, just as the third-party tribal entity did in *MacDonald*.  *See* 2017 U.S. Dist. LEXIS 64761, at *40 (Western Sky received percentage of face value of executed payday loans with guaranteed monthly minimum payment).  Plaintiffs thus allege a distinct RICO enterprise.

MOF also is incorrect in arguing that Plaintiffs fail to allege facts associating it with the enterprise.  *See* MOF Memo. at 15.  Plaintiffs allege that MOF provided the funding necessary to launch the illegal payday lending enterprise, that it had knowledge of the illegal purposes for which its funds would be used, and that it both contributed to and profited from the illegal usury by charging its co-Defendants 26% annual interest, which itself is far in excess of Pennsylvania's 6% usury limit and also is greater than the interest MOF has charged on any other of its loans. *See* FAC, ¶¶ 13-14, 42-44.  This suffices to associate MOF as part of the subject RICO enterprise.  *See*, *e.g.*, *Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at *51-52 ("We find it is not necessary that the OAG allege Mr. Rees personally collected the [payday] loans because

14

'principal' includes a wide range of activities.  Mr. Rees is alleged to have participated in designing and directing the business activity described.  This is sufficient to find that he, for example, counseled and induced the lending scheme.") (citation omitted).

Similarly, MOF's contention that even if it participated in the enterprise, it did not exercise control so as to be liable under RICO, *see* MOF Memo. at 16-17, also is incorrect.  By loaning or investing the necessary funds to launch the payday lending enterprise and demanding in return payments with 26% annual interest, FAC, ¶ 43, MOF ensured that the payday loans would be made with interest rates well in excess of Pennsylvania's 6% usury limit.  Moreover, MOF's assertion that its investment in its co-Defendants' payday lending merely constitutes "a loan in the ordinary course of its business[,]" MOF Memo. at 16, is belied by Plaintiffs' allegation that the 26% return MOF was to receive was the highest effective interest rate in its entire loan portfolio.  *See* FAC, ¶ 43.  The Court should hold that MOF was a substantial participant in and driver of the alleged illegal payday lending enterprise.

### c.  <u>Conspiracy</u>

The Court also should reject MOF's argument that Plaintiffs fail to allege any RICO conspiracy, *see* MOF Memo. at 18-20, for largely the same reasons.

The Act provides in relevant part that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  Plaintiffs allege that Defendants—including Defendant MOF—violated § 1962(d) by conspiring to use the AWL enterprise with the artifice of the tribal AWL entities names as lenders to collect unlawful debt consisting of interest at rates far over Pennsylvania's 6% usury limit.  FAC, ¶ 123.

MOF argues that Plaintiffs fail to allege any agreement it reached with its co-Defendants.  MOF Memo. at 19.  This is incorrect.  Plaintiffs allege that MOF entered into an agreement to

15

lend money to its co-Defendants at an annual interest rate of 26%, FAC, ¶¶ 42-44, which again is itself far in excess of Pennsylvania's 6% usury limit and thus ensured that the payday loans made to Pennsylvania consumers would charge unlawfully excessive interest.

MOF also argues that Plaintiffs fail to allege facts showing its knowledge that its loan funds would be used for illegal payday lending.  MOF Memo. at 20.  This, too, is incorrect. Plaintiffs allege that at the time MOF made the loan to MacFarlane Group, MacFarlane's owner and Executive Vice President/Chief Treasury Officer—Defendants Curry and McGowan—had previously operated Geneva-Roth Ventures, Inc., d/b/a Loan Point USA, which also was in the business of making online payday loans to consumers and had been barred by banking regulators from doing business in at least seven states.  *See* FAC, ¶¶ 22-35.  Given this background, it is more than plausible and indeed likely that MOF knew its co-Defendants were using its funds to further another high-interest and unlawful online payday lending scheme.

Finally, the Court should reject MOF's argument that Plaintiffs fail to allege injury from its unlawful conduct.  *See* MOF Memo. at 19-20.  MOF again contends that its only relevant conduct was providing commercial financing.  This again ignores Plaintiffs' allegations that it made this loan to known illegal high-interest payday lenders and charged them interest in excess of that charged to its other borrowers and far in excess of that allowed under Pennsylvania law.

For all of these reasons, Plaintiffs state an actionable RICO claim against MOF, and the motion to dismiss this claim should be denied.

### 2.    Plaintiffs' Pennsylvania State Law Claims are Actionable.

#### a.    Usury

MOF argues for dismissal of Count I—Pennsylvania Usury Law on the grounds that it did not make the subject payday loans.  *See* MOF Memo. at 21.  This is incorrect.

Here again, MOF ignores Plaintiffs' allegations that its provision of funding for and collection of substantial profits from the subject payday loans with knowledge that its funds were being used for this purpose *make it a lender in fact*, while placement of the tribal AWL entities' names on the payday loan agreements was mere window dressing to disguise their illegality.  *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23.

This District Court and others have recognized the viability of usury claims against the lender-in-fact in this setting of rent-a-tribe payday lending.  *See*, *e.g.*, *Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at *32 ("The segmentation of services and the high rate of payment that the Defendants received for these services provide additional circumstantial evidence supporting the conclusion that the Think Finance Defendants are the true lenders here."); *MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *31-32 (plaintiff's allegation that "Western Sky is nothing more than a front to enable CashCall to evade licensure by state regulators and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators" suffice to state usury claim against CashCall); *Gingras*, 2016 U.S. Dist. LEXIS 66833, at *78-79 ("[T]he FAC adequately alleges that Rees benefitted from Plain Green's transactions with Plaintiffs.  The FAC alleges that he is a substantial investor in Think Finance, and that Think Finance retained almost all of the revenue produced from Plain Green's lending operation.  That is a sufficient 'benefit' for the purposes of unjust enrichment.").

The Court should reach the same conclusion here and hold that Plaintiffs state an actionable usury claim against Defendant MOF as a lender-in-fact on their illegal payday loans.

**b.      UTPCPL**

Plaintiffs also state actionable claims against MOF for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201-1 *et seq.*

Plaintiffs claim that MOF and its co-Defendants violated the UTPCPL both by charging interest in excess of applicable usury limits under Pennsylvania's consumer lending laws and by deceptively concealing the illegality of the loans through the artifice of naming the tribal AWL entities as lenders when Defendants were the true lenders or lenders-in-fact. *See* FAC, ¶¶ 93-101.

Here again, MOF seeks dismissal on the ground that "there are no factual allegations to assert MOF II LP made these loans to anyone in Pennsylvania." MOF Memo. at 22. In *Pa. v. Think Finance I*, the Court held that the Attorney General's UTPCPL claim based upon rent-a-tribe payday lending was actionable:

> The FAC alleges that the Defendants specifically approached the FBD and the tribes in order to circumvent Pennsylvania law. The FAC alleges that the Defendants partnered with the tribes in order to claim vicarious benefit of whatever legal immunities the tribe enjoys. In other words, the Defendants partnered with the tribes in homes the tribes' sovereign immunity would prevent these loans from ever being challenged in court.

> The alleged deception includes the Defendants' representation to consumers that these loans are lawful.

2016 U.S. Dist. LEXIS 4649, at *71-72; *see also MacDonald*, 2017 U.S. Dist. LEXIS 64761, at *34-35 ("[T]he Complaint and its attachments allege that each of the Defendants participated in a scheme to use Western Sky as a 'front' to deceive customers and regulators and circumvent New Jersey's usury and licensing laws, actually charged or collected a usurious rate of interest and were not properly licensed under New Jersey law . . . .").[2]

---

[2] MOF's attempt to distinguish *Pa. v. Think Finance* on the ground that Plaintiffs do not allege that it issued loans to anyone in Pennsylvania, *see* MOF Memo. at 22 n.9, also fails because it ignores Plaintiffs' lender-in-fact allegations against it, which parallel those made by the Attorney General against the *Think Finance* defendants. *Compare* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23; *with* 2016 U.S. Dist. LEXIS 4649, at *4-6.

### c.   **FCEUA**

Plaintiffs also state an actionable UTPCPL claim based upon MOF's violation of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270.1 *et seq.* Plaintiffs claim that MOF and its co-Defendants violated the FCEUA by collecting unlawful interest charges, falsely representing the legal status of alleged debts, and threatening action that cannot legally be taken.  FAC, ¶¶ 104-106.

Here again, MOF contends it did not extend credit to anyone in Pennsylvania.  *See* MOF Memo. at 22.  In *Pennsylvania v. Think Finance I*, the Court held that the Attorney General stated actionable FCEUA unlawful debt collection claims against parties to a rent-a-tribe payday lending scheme, including a defendant that did not directly lend to or collect from consumers. *See* 2016 U.S. Dist. LEXIS 4649, at *62-65.  The same conclusion should apply here.

### d.   **CSA**

Plaintiffs alternatively state an actionable claim based upon MOF's violation of Pennsylvania's Credit Services Act ("CSA"), 73 Pa. Stat. §§ 2181 *et seq.*  Plaintiffs claim that MOF and its co-Defendants, only to the extent they are not deemed the true lenders (which they are), operated as a loan broker and credit services organization and violated the CSA by failing to disclose their substantial financial interests in the loans they brokered.  *See* FAC, ¶¶ 107-113.

MOF seeks dismissal on the grounds that there are no allegations of its conduct constituting that of a loan broker or servicer.  *See* MOF Memo. at 23.  This argument again ignores MOF's role in at least facilitating the subject payday loans by providing the necessary funding, while it failed to disclose its substantial interest in having its advanced funds repaid with interest in excess of that allowed in Pennsylvania on the subject consumer loans.  Only to the extent their lender-in-fact claims fail, Plaintiffs state an actionable alternative CSA claim.

19

D.     **The AWL Entities are Not Indispensable Parties**

Finally, the Court also should reject MOF's arguments that all claims against it must be dismissed because the tribal AWL entities are indispensable parties.  *See* MOF Memo. at 23-24. They are not.

MOF argues that "[a] case dependent on collecting unlawful debt cannot accord complete relief among the parties named unless the entities that made and collected that debt are present." *Id.* at 24.  This argument again ignores Plaintiffs' true lender or lender-in-fact allegations—that MOF's and its co-Defendants' funding of, control over, and collection of nearly all profits from the subject payday loans make them, not the AWL entities, the lenders in fact.  *See* FAC, ¶¶ 2-3, 42-44, 87-89, 98, 122-23.

Based upon the Attorney General's substantively similar allegations about a rent-a-tribe payday lending scheme, this District Court held that the tribal entities were not indispensable under Fed. R. Civ. P. 19 because any interest they had was aligned with those of the defendants. *See Pa. v. Think Finance I*, 2016 U.S. Dist. LEXIS 4649, at *21-22.  As the Court explained:

> [T]he interests of the Defendants substantially align with the tribes.  The Defendants have the same interest as the tribes in proving the legality of the loan contracts because the legality of the loans is central to this cause of action. Therefore, we find that the tribes, while claiming contractual and sovereignty interest in this litigation, are not 'as a practical matter' impaired or impeded in these interests.  Accordingly, we find they are not necessary parties under Rule 19(a).

*Id.*[3]  The same conclusion should apply here, and MOF's argument for dismissal based on allegedly indispensable parties should be rejected.

---

[3]  Having found the tribal entities not necessary under Rule 19(a), the Court held that it need not separately analyze whether they were indispensable under Rule 19(b).  *See* 2016 U.S. Dist. LEXIS 4649, at *22 n.7.

## <u>CONCLUSION</u>

For all of the reasons set forth herein, the Court should deny Defendant MOF's Motion to Dismiss in its entirety.

<u>Dated</u>: December 6, 2018

Respectfully submitted,

/s/ *Michael J. Quirk*
Michael J. Quirk (PA I.D. No. 204677)
BEREZOFSKY LAW GROUP, LLC
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118-3324
(856) 667-0500
mquirk@eblawllc.com

Sarah T. Hansel, Esq. (PA I.D. No. 319224)
BEREZOFSKY LAW GROUP, LLC
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
(856) 667-0500
shansel@eblawllc.com

Robert C. Cocco, Esq. (PA I.D. No. 61907)
LAW OFFICES OF ROBERT P. COCCO, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200
rcocco@rcn.com

Matthew W.H. Wessler, Esq.
(*Pro Hac Vice Application Forthcoming*)
GUPTA WESSLER PLLC
1900 L Street, Suite 312
Washington, D.C. 20036
(202) 888-1741
matt@guptawessler.com

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I here by certify that on this 6th day of December 2018, I electronically filed the

foregoing Memorandum of Law in Opposition with the Clerk using the Court's CM/ECF system,

and thereby served it upon all counsel of record for Defendants.

<u>Dated</u>:              December 6, 2018

/s/ *Michael J. Quirk*

Michael J. Quirk
*Counsel of Record for Plaintiffs*
*and the Putative Class*

22