# **EXHIBIT 4**

# OTOE-MISSOURIA TRIBE OF INDIANS

# THE AMENDED AND RESTATED
# OTOE-MISSOURIA DEVELOPMENT ACT OF 2006

## INDEX TO CHAPTERS AND SECTIONS

Section    Name                              Page

### CHAPTER ONE
### GENERAL PROVISION

100. Citation ............................................................... 3
101. Declaration ........................................................... 3
102. Purposes .............................................................. 5
103. Definitions ........................................................... 7

### CHAPTER TWO
### BOARD OF DIRECTORS

200. Economic Development Commission Created ........................ 9
201. Board Created – Number .......................................... 9
202. Appointment of Board Members ................................... 9
203. Qualifications of Board Members ................................. 9
204. Term of Office .................................................... 10
205. Officers .......................................................... 10
206. Removal of Board Members ....................................... 11
207. Compensation to be Paid ......................................... 11
208. Quorum ............................................................ 11
209. Duties of Officers ............................................... 11
210. Meetings .......................................................... 12

### CHAPTER THREE
### POWERS OF THE AUTHORITY

301. Period of Existence .............................................. 13
302. Power To Sue and Be Sued ........................................ 13
303. General Powers.................................................... 13
304. Securing Financial Assistance.................................... 17
305. Certain Property Laws Do Not Apply............................... 17

AWL-RS-00003744

# CHAPTER FOUR
## OBLIGATIONS

401. Authority to Issue Obligations................................17
402. No Personal Liability on Obligations................................18
403. No Tribal Liability on Obligations................................18
404. Obligations are Tax Exempt................................18
405. Manner of Issuance and Sales................................18
406. Obligations are Negotiable................................19
407. Security of Obligations................................19
408. Actions to be Filed for Record................................21

# CHAPTER FIVE
## MISCELLANEOUS PROVISIONS

501. Reports................................21
502. Acquisitions of Interests Prohibited................................21
503. Compliance with Federal Law................................22
504. Fidelity Bonds................................22
505. Property of Authority as Public Property................................22
506. No Execution on Authority Property................................22
507. Personnel Policies to be Enacted................................23
508. Judicial Notice................................23
509. Special Certificate of Incorporation................................23
510. Severability of Provisions ................................24
511. Records and Audit................................24
512. Rules, Regulations and Procedures................................24
513. Amendment of Title ................................24

# CHAPTER SIX
## MANAGEMENT OF TRIBAL ENTERPRISES

601. General Management Provisions................................24
602. Achieving Independent Status as a Tribal Enterprises................................25
603. Chartering of Independent Tribal Enterprise................................25

AWL-RS-0000374S

# DEVELOPMENT AUTHORITY

## CHAPTER ONE

### GENERAL PROVISIONS

**Section 100.  Citation**

This Title may be cited as the Otoe-Missouria Development Act.

**Section 101.  Declaration of Need and Legislative Findings**

It is hereby declared and found:

a.  That the health, safety and welfare of the people of the Otoe-Missouria Tribe of Indians are enhanced by continual encouragement, development, growth and expansion of private enterprise within the Indian country under the jurisdiction of the Otoe-Missouria Tribe of Indians. That the Indian country under the jurisdiction of the Otoe-Missouria Tribe of Indians is an economically depressed area that needs particular attention to create new jobs, stimulate economic activity and attract private sector investment to improve the quality of life for those within the tribal jurisdiction. It is, therefore, the purpose of the Act to stimulate employment, business and industrial growth and to encourage new economic activity in the Indian country under the jurisdiction of the Otoe-Missouria Tribe by means of developing the legal and physical infrastructure necessary for business and industry, the removal of unnecessary governmental barriers to the creation of economic growth, providing assistance to business and industries, providing tax incentives and utilizing to the fullest extent tribal sovereignty and the Indian Tribal Government Tax Status Act of 1982.

b.  That the jurisdictional area of the Otoe-Missouria Tribe of Indians is an area of chronic and substantial economic underdevelopment, and there exists a critical need for the development of economic and industrial activities within the jurisdiction of the Otoe-Missouria Tribe of Indians in order to address the disproportionate and persistent unemployment rate which detrimentally affects the tribe membership and other persons within the tribe's jurisdiction.

c.  The active and planned tribal participation by the Otoe-Missouria Tribe of Indians in both its business and governmental capacity in economic endeavors can have a significant and positive impact on the long-term economic stimulation of both the tribe and the local economy.

d.  That an economic strategy maintaining a sound balance between the development of the tribe's economic and industrial opportunities-tribal

AWL-RS-000003746

business-within the jurisdiction of the Otoe-Missouria Tribe of Indians, and the acquisition of land for these purposes is essential to the prosperity, peace and welfare of those within the tribal jurisdiction.

e.   That a critical need exists for the Otoe-Missouria Tribe of Indians to focus its considerable energies and strengths on the development of diversified and stable economic endeavors within the jurisdiction of the Otoe-Missouria Tribe of Indians. This includes emphasizing the development of the Tribe as a business initiator, a planner/manager of tribal enterprises, and a government creating the legal infrastructure necessary to support, enhance, and encourage the creation of a heretofore non-existent private business sector within the jurisdiction of the Otoe-Missouria Tribe of Indians.

f.   That it is vital for the Otoe-Missouria Tribe of Indians to establish a focal point for economic development activities within the tribal structure by tribal legislation by which the business committee can delegate specific duties and by which it can create tribal enterprises and develop the legal infrastructure necessary to support the development of a private business sector within the jurisdiction of the Otoe-Missouria Tribe of Indians.

g.   That in order to address these identified needs and to established a focal point through which a solution can be analyzed, proposed and initiated, the Otoe-Missouria Tribal Council finds it in the public interest to create and authorize the operation of the Otoe-Missouria Development Authority ("OMDA").

h.   That the creation and operation of the OMDA serves as an essential government function of the Otoe-Missouria Tribe of Indians by allowing the Tribe to address the serious economic, social, and health problems associated with the serious unemployment and underemployment within the jurisdiction of the Otoe-Missouria Tribe of Indians, the general lack of available tribal funds available to address these problems, the general lack of a sufficient land base for the economic development needs of the tribe, and the attendant impact upon the public health, safety, and welfare.

i.   That the creation and operation of the OMDA addresses a situation which has not, and cannot, be wholly relieved through the operation of private sector enterprises alone.   Providing job training and relief from critical unemployment and underemployment rates, developing tribal revenue to generate public and private sectors, acquiring land for development purposes, and developing tribal sources for economic development and land acquisition are public uses and purposes that are essential governmental functions of tribal concern for which public monies can be spent and private property acquired.

j.   That the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination.

AWL-RS-00000747

### Section 102. Purposes

The OMDA shall be organized and operated for the purpose of:

a. Remedying the disproportionate unemployment rate of tribal members and other persons residing within the jurisdiction;

b. Remedying the disproportionate underemployment rate of tribal members and other persons within the tribal jurisdiction;

c. Providing revenues with which the Tribe may address other pressing matters of public health, safety, and welfare, or other tribal purposes;

d. Attracting private industry to the tribal jurisdiction;

e. Expanding the tribal land base and economic development potential through the purchase of additional land for tribal purposes;

f. Identifying, planning, initiating, and developing tribal economic and industrial activities on behalf of the Tribe, to provide for the orderly creation and management of tribal business enterprises;

g. Acting as a catalyst to provide for the orderly creation and management of tribal business enterprises.

h. Making recommendations of legislative changes to the Otoe-Missouria Council which are useful and necessary for the development of private sector business enterprise within the jurisdiction of the Tribe including but not limited to, recommendations regarding taxation, business licensing, finance, land acquisition, use and zoning requirements, environmental protection, and authorized forms for business structures such as corporations, partnerships, limited liability companies, and joint ventures.

In addition to the general purposes expressed in Subsection (a) through (i) of this Section, the OMDA shall be operated to further any economic development purposes allowed to be implemented by an Indian tribe pursuant to federal law, including, but not limited to the following purposes:

1. The purpose of encouraging and promoting agriculture, commerce, and industry for creating a real estate bond fund to be used for the acquisition of real property for economic development and other purposes, for the provision of income and support of the Otoe-Missouria Tribe of Indians as guaranteed to the Otoe-Missouria Tribe of Indians in the various treaties between the United States and the Otoe-Missouria Tribe of Indians to further the rights of self-government and social advancement recognized and provided

for by the laws of the United States;

2. The purpose of providing land and borrowing money for the acquisition of land and issuance of loans for the Otoe-Missouria Tribe of Indians, other Indian Tribes and individual Indians or groups of Indians pursuant to Section 5 of the Act of June 18, 1934, 48 Stat. 985 (25 U.S.C. § 465), and Section 1 and 2 of the Act of June 26, 1936, 49 Stat. 1967 (25 U.S.C. § 501, § 502), the insurance of loans for such acquisitions pursuant to the Act of April 11, 1970 (25 U.S.C.§ 488 et seq.) and other Federal laws providing for the acquisition of land for Indian individuals and Indian Tribes, and the providing of Federal insurance for loans made to Indian tribes, individuals, or others;

3. The purpose of furthering Indian industry and labor and economic development within the Indian country as provided for the Act of June 25, 1910, 36 Stat. 861 (25 U.S.C. § 47). Section 1 of Act of May 9, 1938, 52 Stat. 302 (25 U.S.C. § 306), and other federal laws supporting the economic development of Indian Country;

4. The purpose of furthering the investment of individual Indian tribal land funds as provided in the Act of June 24, 1938, 25 Stat. 1037 (25 U.S.C. § 162a);

5. The purpose of furthering any necessary irrigation projects within the Otoe-Missouria Tribe of Indians jurisdiction needed to make agricultural lands productive to complement the provisions of Chapter 11 of Title 25 of the United States Code;

6. The purpose of providing income and a taxable economic and industrial base in order for the Otoe-Missouria Tribe of Indians to operate a Judicial and Law and Order system sufficient to meet the requirements of Title II of the Act of April 11, 1968, 82 Stat. 77 (25 U.SC. § 1301 et seq.);

7. The purpose of providing income and an economic and industrial tax base in order for the Otoe-Missouria Tribe of Indians to further the purposes of Congress expressed in Section 1451 of the Act of April 12, 1974, Stat. 77 (25 U.S.C. § 1451), and the balance of said Act. (Indian Financing Act);

8. The purpose of providing income and an economic and industrial tax base in order for the Otoe-Missouria Tribe of Indians to further the purposes of Congress expressed in Section 3 of the Act. (Health Care);

AWL-RS-00003749

9. The purpose of providing income and an economic and industrial tax base in order for the Otoe-Missouria Tribe of Indians to further the purposes of Congress express in Section 101 of the Act of October 17, 1978, 92 Stat. 3069 (25 U.S.C. § 1802), and balance of said Act. (Higher Education);

10. The purpose of providing income and an economic and industrial tax base in order for the Otoe-Missouria Tribe of Indians to further the purposes of Congress expressed in Section 3 of the Act of November 1, 1978, 92 Stat. 3069 (25 U.S.C. § 1902), and balance of said Act. (Child and Family Service Programs);

11. The purpose of providing funds for the further tribal development of Indian owned mineral resources pursuant to the Act of December 22, 1982, 96 Stat. 1938 (25 U.S.C. 2101 et seq.);

12. The purpose of providing funds for Indian Land consolidation pursuant to the Act of January 12, 1983, 96 Stat. 2517 (25 U.S.C. § 2201 et seq.);

13. The purpose of providing income and an economic and industrial tax base in order for the Otoe-Missouria Tribe of Indians to further the policies of Congress expressed in the Act of January 4, 1975, Stat. 206 (25 U.S.C. § 450 et seq.) and particularly in Section 102 of Title 1 of that Act (25 U.S.C. § 405f) (Indian Self-Determination) and the Act of November 2, 1921, 42 Stat 208 (25 U.S.C. § 13) (Snyder Act);

14. The purpose of promoting economic development pursuant to the Indian Tribal Energy Development and Self-Determination Act of 2005 (42 U.S.C. §16001);

15. The purpose of executing as an agency of the Otoe-Missouria Tribe of Indians applications for receipt and administration of federal grants and contracts which fund types of activities in which OMDA may engage.

And the exercise of each and every essential governmental function reasonably necessary or proper to further the purposes and policies of the above laws, acts and directives and any future laws, acts or directives that may be implemented by the United States of America.

### Section 103. Definitions

The following terms whenever used or referred to in this ordinance, shall have the following respective meaning, unless a different meaning clearly appears from the

AWL-RS-000037SO

context:

    a.    "Authority" means the Otoe-Missouria Development Authority.

    b.    "Claim" means a claim for personal injury, wrongful death, property damage, or for recovery of property arising in tort law.

    c.    "Contract" means any agreement express or implied by law for the exchange of consideration.

    d.    "Misconduct in Office" means misconduct in office as defined be Article IX, Section 2 of the Otoe-Missouria Tribe of Indians Constitution.

    e.    "Obligations" means any notes, bonds, interim certificates, debentures, or other forms of obligation issued by the OMDA pursuant to this ordinance.

    f.    "Obligee" includes any holder of an obligation, an agent or trustee for any holder of an obligation, or lessor demising to the authority property used in connection with a project, or any assignees or such lessor's interest or any part thereof, and the federal government when it is a party to any contract with the OMDA in respect to a project.

    g.    "OMDA" means the Otoe-Missouria Development Authority.

    h.    "Personal property" means any property which is the subject of ownership not coming under the denomination of real property.

    i.    "Real property" means land and generally whatever is erected or growing upon or affixed to land, including but not limited to the surface of the land, structures and plants on the surface of the land, mineral rights to the land and water rights.

    j.    "Tribal Chairman" means the Chairman of the Otoe-Missouria Tribe of Indians.

    k.    "Tribal Court" means the Otoe-Missouria Tribal Court including the CFR Court if the Otoe-Missouria Tribe does not maintain a separate court.

    l.    "Tribal Council" means the Otoe-Missouria Tribal Council.

    m.    "Tribal Jurisdiction" means all the land within the original boundary lines of the Otoe-Missouria Tribal reservation established in 1883, and any and all future additions of land acquired within or without said boundary line by he Secretary of the Interior or by the Tribe, except as otherwise provided by law.

AWL-RS-00003751

# DEVELOPMENT AUTHORITY

## CHAPTER TWO

## BOARD OF DIRECTORS

### Section 200. Economic Development Commission

a. Pursuant to the authority vested in the Tribal Council of the Otoe-Missouria Tribe of Indians by Section 1 of Article VIII of the Tribal Constitution, and through its authority and duty to provide for the health, safety, morals, and welfare of all persons within the jurisdiction of the Tribe, there is hereby established and created a public body corporate and politic known as the Otoe-Missouria Development Authority (OMDA) Which shall be an agency of the Otoe-Missouria Tribe of Indians and have the purpose, powers, and duties as herein or hereafter provided by tribal law.

b. In any suit, action, or preceding involving the validity or enforcement of, or relating to any if its contracts, the Authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers upon proof of the adoption of the ordinance. A copy of this ordinance, duly certified by the Secretary of the Authority, shall be admissible in evidence in any suit action, or proceeding. The Tribal Court shall take judicial notice of the Title.

### Section 201. Board Created – Number

The affairs of the Commission shall be managed by the Board of Directors composed of five (5) members including the Tribal Chairman.

### Section 202. Appointment of Board Members

The Board Members shall be appointed, and may be re-appointed by the Tribal Chairman. A resolution of the OMDA signed by the Tribal Chairman, attested by the OMDA Secretary as to the appointment or re-appointment of any Board Member shall be conclusive evidence of the due and proper appointment of such Board Member.

### Section 203. Qualifications of Board Members

a. A Board Member may be a member or non-member of the Tribe. At least two (2) Board Members shall be members of the Tribe, but no more than two (2) Board Members at any one time may be members of the Tribal Council.

b. No person shall be barred form serving on the Board because they are an employee of an enterprise of OMDA or the Tribe, has a business contractual

AWL-RS-00003752

relationship with OMDA or the Tribe, or operates a private business within the Tribal Jurisdiction. However, no such Board Member shall be entitled or permitted to participate in or be present at any portion of a meeting (except in their capacity as a member of the public or as an employee), or to be counted or treated as a member of the Board, concerning any matter involving his individual right, obligations or status.

c.   Each Board Member shall be at least eighteen (18) years of age and legally capable of entering into a binding contract.

d.   Each Board Member shall take an oath to support and defend the Constitution and laws of the Otoe-Missouria Tribe of Indians.

e.   If the OMDA is engaged in gaming operations, each Board Member is not eligible and shall be barred from serving as a Board Member until such time as a Primary Management Official License is issued to the individual trustee by the Otoe-Missouria Gaming Commission pursuant to the application process of submitting to finger printing, a background investigation, and a suitability determination.

**Section 204.  Term of Office**

The term of office shall be ten (10) years. The first appointment of Board members shall be for staggered terms of ten (10), eight (8), six (6), and four (4) years for the respective members. The limitation on terms in office shall not apply to the Tribal Chairman. Thereafter, all appointments shall be for ten (10) years beginning from the date of appointment or the receipt of a Primary Management Official License, whichever is later. In the case of a vacancy occurring prior to the expiration of a regular term, an appointment to that seat shall be only for the length of the unexpired term. Each member of the Board shall hold office until their successor has been appointed and has qualified.

**Section 205.  Officers**

a.   The Board of Directors shall elect from among its members a President/ Executive Director, a Vice-President, a Secretary and a Treasurer/Comptroller as officers of the OMDA.

b.   The Officers shall serve as officers at the pleasure of the Board of Directors. Removal of a Director from an office shall not be deemed to be a removal from the Board of Directors. However, removal of an officer from the Board of Directors pursuant to Section 206 of this ordinance shall constitute a removal from his office whether or not specifically so stated in removal proceedings.

AWL-RS-00003753

### Section 206. Removal of Board Members

A member of the Board may be removed by the Tribal Council for serious inefficiency, for neglect of duty, for misconduct in office, or for conviction of or a plea of nolo contendre to a felony involving a crime of moral turpitude. Prior to removal the Board Member shall be grated (a) a hearing before the Tribal Council, and (b) given a written notice of the specific charges against him or her at least ten (10) days prior to the hearing. At any such hearing, the Board Member shall have the opportunity to review a record of the proceeding, together with the charges and findings therein. Charges and findings shall be filed with the office of the OMDA Secretary, and a certified copy filed with the Clerk of the Tribal Court. The Tribal Court shall furnish a record to the Tribal Council upon their request. Notwithstanding the defense of sovereign immunity, any person removed from their position as a member of the Board may appeal such removal by filing, in the Tribal Court only, a civil action for injunctive and declaratory relief naming the Tribal Council as defendant. The Tribal Court shall review the record of the removal proceedings. The Tribal Court may vacate the removal and declare that person is still a member of the Board if prejudicial error was committed or if no just cause is shown therein for the removal. The Tribal Council shall be bound by the Tribal Court's decision. The parties shall have the right to appeal such court findings as in other cases, and the Tribal Court not vacate the order of the Tribal Council if it determines that any error found in the proceedings was harmless.

### Section 207. Compensation to be Paid

The Board Members may receive compensation for their services at a rate to be established by the Board of Directors, and may receive reimbursement for expenses, including traveling expenses, when incurred in the discharge of their duties. Expenses may be advanced with the approval of the Board. No member of the Board of Directors shall have their compensation reduced during their term of office, except that if funds are unavailable for appropriation, the compensation of all Board Members may be reduced proportionately to the availability of funds.

### Section 208. Quorum

Three (3) Board Members shall constitute a quorum.

### Section 209. Duties of Officers

a.   The President/Executive Director shall preside at all meetings of the Board, and shall generally be responsible for the efficient and orderly functioning of the Authority.

b.   The Vice-President shall assume the duties of the President/Executive Director in their absence, or upon their neglect, failure, or refusal to undertake the duties required or delegated to the President/Executive Director by law.

AWL-RS-00003754

c. The Secretary shall keep complete and accurate records of all meetings and actions taken by the Board. One (1) copy of the record of the meetings and actions taken by the Board shall be filed in the OMDA Secretary's office.

d. The Treasurer/Comptroller shall keep full and accurate financial records, make periodic reports to the Board, and submit complete quarterly and annual reports, in written form, to the Tribal Council as required by Section 501 of this ordinance.

## Section 210. Meetings

a. Regular meetings of the Board shall be held: (a) monthly on a day that twenty-four (24) hours actual notice shall be provided, or (b) upon meeting the Emergency Requirements of Section 210(b)(4).

b. Meeting Notices

1. Manner of Notice. The OMDA President/Executive Director shall be responsible for sending notice setting forth the meeting date, meeting place and business to be conducted to the Board Members, including the Tribal Chairman, at least twenty-four (24) hours before the meeting. The meeting notice shall be delivered either personally or mailed to each Board Member at their address appearing in the OMDA records or by facsimile transmission. A Board Member who is unable to attend an upcoming meeting shall be responsible for providing their notice to the President/Executive Director.

2. Date of Delivery of Notice. A personal delivery shall be deemed delivered upon receipt by the Board Member. A notice which is mailed forty-eight (48) hours in the advance of the meeting shall be deemed to be delivered when deposited with the United States Postal Service properly addressed to the Board Member, with postage prepaid thereon. If notice be given by facsimile transmission, such notice shall be deemed to be delivered upon completion of transmission to the Board Member.

3. Waiver of Notice. Unless otherwise provided by law, a written waiver of the notice requirements set forth herein signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

4. Notice Requirements for Valid Emergency Meeting. A special emergency meeting may be held without full compliance with the notice requirements set forth herein and without written waivers of notice if all Board Members have actual notice of the meeting, a quorum is present and the Board Members present vote that an emergency meeting is necessary.

AWL-RS-0000375S

# DEVELOPMENT AUTHORITY

## CHAPTER THREE

## POWERS OF THE AUTHORITY

**Section 301.  Period of Existence**

The OMDA shall have perpetual existence and succession in its own name.

**Section 302.  Power to Sue and Be Sued**

a.  The OMDA shall have the power to sue in any Court in its own name, and with the written consent of the Tribal Council expressed by a tribal resolution, to sue on behalf of the Otoe-Missouria Tribe by styling the case as "the Otoe-Missouria Tribe of Indians ex rel. Otoe-Missouria Development Authority."

b.  No property of the Authority located within the tribal jurisdiction may be taken by attachment, Court order, lien or otherwise to satisfy any judgment rendered in such a case absent the consent of the Tribal Council expressed by a tribal resolution.

c.  The Tribe shall not be liable nor any of its property attached for any of the debts, liabilities, or obligations of the Authority, nor may any Court make or enforce any order concerning execution upon or right to possession of any tribally owned property assigned to the use of the Authority unless the Tribal Council gives its written consent to such order expressed by tribal resolution.

**Section 303.  General Powers**

The OMDA shall have the following powers which it may exercise consistent with the purpose for which it is established:

a.  To adopt and use a corporate seal;

b.  To enter into agreements, contracts, and undertakings with any governmental agency, federal, state, or local (including any tribe) or with any person, partnership, corporation, and to agree to any conditions attached to federal financial assistance;

c.  To lease property from or to the Tribe and others for such periods as are authorized by law, and to hold and manage or sublease the same;

d.  To borrow or lend money, to issue temporary or long term evidence of

AWL-RS-00003756

indebtedness, and to repay the same. Obligations shall be issued and repaid in accordance with the provisions of Chapter Four of this Act;

e. To pledge the assets and receipts of the Authority as security for debts, and to acquire, sell, lease exchange, transfer or assign personal property or interests therein;

f. To purchase or take by gift any land or interest in land within or without the tribal jurisdiction provided that such land located within the tribal jurisdiction shall upon payment of the purchase price and satisfaction of any purchase money or pre-purchase mortgage on the land, be placed in trust upon the approval of the Secretary of the Interior for the benefit of the Otoe-Missouria Tribe of Indians and will then be assigned to the use of the Commission to the extent provided by law, provided that the Authority may not lease tribal land assigned to its use for a period exceeding the term of the assignment of the land to OMDA or for more than ten (10) years absent the consent of the Tribal Council. For the purposes of this subparagraph, as assignment of tribal land to OMDA for an indefinite term, or for no stated term shall be an assignment which is revocable upon thirty (30) days notice by the Tribal Council that the land is needed for other tribal purposes. The determination of the Tribal Council of such need shall be final and conclusive;

g. To undertake and carry out studies and analysis of employment and job training needs within the tribal jurisdiction, to operate economic development projects and tribal businesses, to aid and assistance with achieving compliance with the tribal jurisdiction including assistance with achieving compliance with appropriate trial laws and regulations;

h. To make rules and regulations regarding its activities pursuant to this act as the Board may deem necessary and desirable to effectuate the powers granted by this Title, provided, that all such rules and regulations shall be filed for record in the OMDA Secretary's office and the Tribal Court Clerk's office prior to being given any force or effect;

i. To purchase insurance from any stock or mutual company for any property or against any risk or hazards, and the sovereign immunity of the OMDA is hereby waived to the limit of the scope and extent of such insurance as may be in force as to any claim payable by such insurance;

j. To invest such funds as are not required for immediate disbursements;

k. To establish and maintain such bank accounts as may be necessary or convenient;

l. To employ additional officers as may be necessary or convenient, and to

AWL-RS-0000375 7

employ technical and maintenance personnel and such other offices and employees, permanent or temporary, as the Authority may require, to establish the conditions of their employment, and to delegate to such officers and employees such powers or duties as the Authority shall deem proper;

m.   To take such further actions, not inconsistent with this act, as are commonly engaged in by public or corporate bodies or this character as the Authority may deem necessary or convenient to effectuate the purposes of the Authority;

n.   To enter into partnerships, joint ventures, and other business arrangements with any legal entity to effectuate the purposes of the Authority, including the purchasing of stock of any corporation pursuant to the requirements of the Small Business Administration 8(a) Program;

o.   To adopt such rules and regulations for the government of its internal affairs as the Authority deems necessary or appropriate to administer or enforce this Title and its activities thereunder, provided, that all such rules and regulations shall be filed for record in the OMDA Secretary's office and the Tribal Court Clerk's office prior to begin given any force or effect;

p.   To operate, manage, use, and control, including entering into leases as herein before provided, such real or personal property which the Tribal Court shall assign to its use;

q.   To pay over yearly to the Tribe such percentage of its profits which, according to sound business practices, will be available for general expenditure for purposes other than business development, with regard being had for further expansion of tribal business enterprises, contingencies, bad debts, and the like;

r.   To exercise any and all powers of a domestic corporation under the Otoe-Missouria Business Corporation Act not inconsistent with this Title;

s.   To engage in any lawful business;

t.   To use the name "Otoe-Missouria Development Authority" In any business activities within or without the tribal jurisdiction, and to incorporate or hold stock in such other corporations as may be necessary or convenient. The name "Otoe-Missouria Development Authority" is hereby reserved to the use of OMDA and no other domestic or foreign corporation may use such name within the tribal jurisdiction;

u.   To exercise, in conformance with tribal law, the power of eminent domain excepting land or interests therein held by any other agency of the Otoe-Missouria Tribe of Indians, in order to further the purposes and powers

AWL-RS-0000358

expressed in this Title;

v. To develop, construct, own, lease, operate, maintain, promote, and finance Tribe Gaming Facilities and Related Gaming Activities, and engage in any other lawful activity related to the business of gaming. OMDA shall assume all obligations, responsibilities and duties of the Tribal Council under gaming law existing at or to be enacted after the date of enactment of the Otoe-Missouria Development Act, with the exceptions of the power of gaming regulation, gaming licensing and enforcement of applicable law, which powers are reserved to the Otoe-Missouria Gaming Commission, and the power of liquor regulation, liquor licensing, and liquor enforcement, which powers are reserved to the Otoe-Missouria Tax Commission;

w. To promulgate rules and regulations not inconsistent with other tribal law, which rules and regulations shall have the force of statute, and to provide penalties for the violation thereof not in excess of Two Hundred Dollars ($200.00), for each violation or per day of violation of the Authority's rules and regulations, concerning the following:

   1. The zoning of areas designated as industrial or commercial areas by the OMDA into such subcategories of use as may be necessary to protect the public and environment and to further the highest and best use of the property;

   2. The protection of the environment, both physical and human, from unacceptable hazard or risk created by industrial and commercial activities within the Tribal jurisdiction;

   3. Construction and maintenance of industrial and commercial buildings, plants, facilities, and all appurtenances thereto belonging. Including specifically, but not limited to, construction and building codes for industrial and commercial improvement, fire codes, emergency procedures to be followed in case of industrial accident or casualty, reporting requirements, and the issuance of building permits;

   4. At such time or times as the Tribes may have contracted the issuance of Indian Trader's Licenses pursuant to 25 U.S.C. §261 et seq., 25 C.F.R. §251.1 et seq. The issuance and supervision of Licensed Indian Traders within the Tribal jurisdiction;

   5. The maintenance or worker's compensation insurance or other similar insurance to protect industrial and commercial employees in hazardous occupations or otherwise against loss of wages, medical bills, and other loss or damages as a result of injuries sustained in the course of their employment;

AWL-RS-0000375759

6. The protection of employees, invites, and guest of industrial and commercial establishments from unnecessary risk of injury by providing for safety and health requirements of industrial and commercial establishments;

7. The establishment of minimum public liability insurance requirements necessary to protect the public from personal injury or property damage resulting from industrial and commercial activities;

8. The establishment and regulation of the insurance industry within the Tribal jurisdiction;

Provided, that such rules and regulations shall not be effective until a certified copy or original thereof have been filed in the office of the Tribal Court Clerk and the OMDA Secretary for at least thirty (30) days.

### Section 304. Securing Financial Assistance

It is the purpose and intent of this Title to authorize the Authority to do any and all things necessary or desirable and not prohibited to secure the financial aid or cooperation of the Federal government or private sources of capital in the undertaking construction, maintenance, or operation of any project of the Authority subject to the limitations contained in this Title.

### Section 305. Certain Property Laws Do Not Apply

No ordinance or other enactment of the Tribe with respect to the acquisition, operation, or disposition of tribal property shall be applicable to the Authority in its operations pursuant to this Title, unless specifically so stated herein.

## DEVELOPMENT AUTHORITY

## CHAPTER FOUR

## OBLIGATIONS

### Section 401. Authority to Issue Obligations

The Authority may issue obligations from time to time in its discretion for any of its purposes and may also issue refunding obligations for the purposes of paying or retiring obligations previously issued by it, provided that the Commission shall file notice of intent to issue such obligations in the Offices of the OMDA Secretary and the Tribal Court Clerk at least thirty (30) days prior to the first issuance of any particular obligation or series of obligations. The Authority may issue such types of obligations as it may determine, including obligations on which the principal and interest are payable:

AWL-RS-0000370

a. exclusively from the income and revenues from the project financed with the proceeds of such obligations, or with such income and revenues together with a grant from the federal government, in an allowable cost, in aid of the project;

b. exclusively from the income and revenues of certain designed projects whether or not they are finance in whole or in part with the proceeds of such obligations; or

c. from its revenues generally, any of such obligations may be additionally secured by a pledge of any revenues of any project or other project or other property of the Commission.

All such obligations shall be subject to the jurisdiction of the Tribal Court for enforcement of their provisions wherever they may be physically located.

### Section 402.  No Personal Liability on Obligations

Neither the Directors of the OMDA, nor any person executing the obligations shall be personally liable on the obligations by reason of issuance thereof.

### Section 403.  No Tribal Liability on Obligations

The notes and other obligations of the Authority shall not be considered a debt of the Tribe, and the obligations shall so state on their face.

### Section 404.  Obligations are Tax Exempt

Obligations of the OMDA are issued hereunder in furtherance of an essential governmental function and for public purposes, and the proceeds, together with interest thereon and income therefrom, shall be exempt from taxes imposed by the Tribe. The tax exemption provisions of this Title shall be considered part of the security for the repayment of obligations and shall constitute, by virtue of this Title and without necessity of being restated in any other Title or Code, the obligation, between (a) the Authority and the Tribe, and (b) the holders of obligations and each of them, including all transferees of the obligations from time to time.

### Section 405.  Manner of Issuance and Sales

Obligations shall be issued and sold in the following manner:

a. Obligations of the Authority shall be authorized by a resolution adopt by the vote of a majority of the full Board and may be issued in one (1) or more series;

AWL-RS-0000037б1

b. The obligations shall bear such dates, be in such dates, mature at such times, bear interest at such rates, be in such denominations, be in such form, either coupon or registered, carry such conversion or registration privileges, have such rank or priority, be executed I such manner, be payable in such medium of payment and at such places, and be subject to such terms or redemption with or without premium, as such resolution may provide;

c. The obligations may be sold at public or private sale at not less than par value;

d. In case any of the Directors of the Authority whose signatures appear on any obligations cease to be Directors before the delivery of such obligations, their signature shall, nevertheless, be valid and sufficient for all purposes, the same as if the Directors had remained in office until delivery;

e. Whenever necessary, the Authority shall comply in the issuance of its obligations with the Securities laws of the federal government.

## Section 406. Obligations are Negotiable

Obligations of the Authority shall be fully negotiable unless otherwise stated on their face. In any suit, action or proceeding involving the validity or enforce-ability of any obligation of the Authority to aid in financing a project pursuant to this Title shall be conclusively deemed to have been issued for such purpose in the absence of fraud by the holder or with the knowledge of the holder thereof in the procurement of the obligations, and the project for which such obligation was issued shall be conclusively deemed to have been planned, located and carried out in accordance with the purposes and provisions of this Title in the absence of fraud in the procurement of such obligation or security.

## Section 407. Security of Obligations

In connection with the issuance of such obligations, or incurring obligations under leases, and to secure the payment of such obligations, the Authority, subject to the limitations in this Title, may:

a. pledge all or part of its gross or net rents, fees, or revenues to which its right then exists or may thereafter come into existence;

b. provide for the powers and duties of obligees, and limit their liabilities, and provide the terms and conditions on which such obligees may enforce and covenant to their rights securing or relating to the obligations;

c. covenant against pledging all or any part of its rents, fees and revenues or personal property to which its title or right then exists or may thereafter come into existence or permitting or suffering any lien or such revenues or

AWL-RS-000037762

property;

d. covenant with respect to limitations on its right to sell, lease, or otherwise dispose of any project or any part thereof;

e. covenant as to the obligations to be issued and as to the issuance of such obligations in escrow or otherwise, and as to use and disposition of the proceeds thereof;

f. provide for the replacement of lost, destroyed, or mutilated obligations;

g. covenant against extending the time for the payment of its obligations or interest thereon;

h. redeem the obligations and covenant for their redemption and provide the terms and conditions thereof;

i. covenant concerning the rents and fees to be charged in the operation of a project or projects, the amount to be raised each year or other period of time by rents, fees and other revenues, and as to the use and disposition to be made thereof;

j. create or authorize the creation of special funds for monies held for construction or operation costs, debt service, reserves or other purposes, and covenant as to the use and disposition of the monies held in such funds;

k. prescribe the procedure, if any, by which the term of any contract with holders of obligations may be amended or abrogated, the proportion of outstanding obligations the holders of which must consent thereto, and manner in which such consent may be given;

l. covenant as to the use, maintenance, and replacement of its real or personal property, the insurance to be carried thereon, the use and disposition of insurance monies;

m. covenant as to the rights, liabilities, powers, and duties arising upon the breach by it of any covenant, condition or obligation;

n. covenant and prescribe as to events of default and terms and conditions upon which any or all of its obligations may become or may be declared due before maturity, and as to the terms and conditions upon which such declaration and its consequences may be waived;

o. vest in any obligees or any portion of them the rights to enforce the payment of the obligations or any covenants or security relating to the obligations;

AWL-RS-0000763

p.  exercise all or any parts or combination of the powers granted in the Section;

q.  make covenants other than, and in addition to the covenants expressly authorized in this Section, or of like or different character; and

r.  make any covenants and do any acts and things necessary or convenient or desirable in order to secure its obligations, or in the absolute discretion of the Authority, tending to make the obligations more marketable although the covenants, acts, or things are not enumerated in this Section.

## Section 408. Actions to be Filed for Record

The minutes and records of all actions of the Authority with respect to obligations issued by it shall be filed for record in the Office of the OMDA Secretary, and the Office of the Clerk of the Tribal Court.

# DEVELOPMENT AUTHORITY

# CHAPTER FIVE

# MISCELLANEOUS PROVISIONS

## Section 501. Reports

The Authority shall submit quarterly and annual reports, signed by the President/Executive Director of the Board, to the Tribal Council showing:

a.  a summary of the period activities;

b.  the financial condition of the Authority;

c.  the condition of the properties under Authority management or control;

d.  a summary of any unprofitable ventures and plan for correction;

e.  any significant problems and accomplishments;

f.  plans for the future; and

g.  such other information as the Authority or the Tribal Council shall deem pertinent.

## Section 502. Acquisition of Interests Prohibited

During his or her tenure and for three (3) years thereafter, no Director or Officer of the Authority or any other public official who exercises any interest, direct or indirect, in any

AWL-RS-0000374

project of the Authority, shall voluntarily acquire any interest, direct or indirect, in any matter or in any property contract relating to the project; unless, prior to such acquisition, he or she discloses such interest in writing to the Authority and such disclosure is entered upon the minutes of the Authority, and the Director, Officer, or the public official shall not participate in any action by the Authority relating to the property or contract in which he or she has an interest. If a Director, Officer, or the public official involuntary acquires any such interest, or voluntarily or involuntarily acquired any such interest prior to appointment or employment, in any such event, the person shall immediately disclose his or her interest in writing to the Authority, and such disclosure shall be entered upon the minutes of the Authority relating to the property or contract in which he or she has any such interest. Any violation of the foregoing provisions of this Section shall constitute misconduct in office and a violation of the public trust and shall subject the party to removal from the Board or other office held, and make such party liable to the Authority for any and all profits of any kind or character which he or she may have obtained by virtue of the violation of such trust. This Section shall not be applicable to the acquisition of any interest in obligation of the Authority issued in connection with any project, or to the execution of agreements by banking institutions for the deposit or handling of funds in connection with a project or to act as trustee under any trust indenture, or to utility service rates which are fixed or controlled by a governmental agency.

### Section 503.  Compliance with Federal Law

Each project developed or operated under a contract providing for federal financial assistance shall be developed and operated in compliance with all regulations and requirements proscribed from time to time by the federal government in connection with such assistance.

### Section 504.  Fidelity Bonds

The Authority shall obtain or provide for the obtaining of adequate fidelity bonds for all Directors, Officers and employees handling cash, or authorized to sign checks or obligations or to certify vouchers.

### Section 505.  Property of Authority as Public Property

The property of the OMDA is declared to be public property used for essential governmental functions and public purposes of the Otoe-Missouria Tribe of Indians.

### Section 506.  No Execution on Authority Property

All property within the Tribal jurisdiction including funds acquired or held by the Authority pursuant to this Title shall be exempt from levy and sales by virtue of an execution, and no execution or other judicial process shall issue against the same, nor shall any judgment against the Authority be deemed to be a charge or lien upon such property. However, the provisions, of this Section shall not apply to or limit the right of

AWL-RS-0000375ᄃ

obligees to pursue any remedies for the enforcement of any pledge, or lien given by the Authority on its rents, fees, or revenues, or to enforce any purchase money mortgage upon lands purchased by the Authority with the proceeds of the note secured by such purchase money mortgage.

### Section 507. Personnel Policies to be Enacted

There shall be a Personnel Policy Manual which shall be approved by the Board of Directors.

### Section 508. Judicial Notice

The Tribal Court shall take judicial notice of this Title, and of all rules and regulations of the Commission.

### Section 509. Special Certificate of Incorporation

The OMDA Secretary is directed to issue a special certificate of Incorporation to the OMDA in the name of "Otoe-Missouria Development Authority" is substantially the following form:

# OFFICE OF THE SECRETARY
# OTOE-MISSOURIA TRIBE OF INDIANS
# CERTIFICATE OF INCORPORATION

To all Whom these Presents shall Come, Greeting:

WHEREAS, The Otoe-Missouria Tribe of Indians Development Act of 2006 has authorized the Otoe-Missouria Economic Development Authority conduct business as "Otoe-Missouria Development Authority" And said Act has been filed in the office of the Secretary of the Otoe-Missouria Tribe of Indians.

NOW THEREFORE, I, the undersigned, Secretary of the Otoe-Missouria Development Authority, by virtue of the powers vested in me by law, do hereby issue this Certificate of Incorporation.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the Great Seal of the Otoe-Missouria Tribe of Indians.

Filed at the Otoe-Missouria Tribal Headquarters,
This_____ day of_____ A.D., 20___.

_____

Secretary

BY: _____

### Section 510. Severability of Provisions

Notwithstanding any other evidence of the intent of the Otoe-Missouria **Tribal Council, it** is hereby declared to be the intent of the Otoe-Missouria Tribal Council that if any provision of this ordinance other application thereof to any persons or circumstances shall be adjudged by any court of competent jurisdiction to be valid, such judgment shall not affect, impair, or invalidate the reminder of this ordinance or its application to their persons and circumstances, but shall be confined in its operations to the provisions of this Act or the application thereof to the persons and circumstances directly involved in the controversy in which such judgment shall have been rendered.

### Section 511. Records and Audit

The Otoe-Missouria Development Authority shall keep records as the Otoe-Missouria Tribal Council shall prescribe and as will facilitate an effective audit.

### Section 512. Rules, Regulations and Procedures

The Otoe-Missouria Tribal Council shall prescribe such rules, regulations and procedures to carry out the provisions of this Title in any such case in which the Otoe-Missouria Economic Development Authority is not authorized by the terms of this Title to prescribe its own rules on the subject. Notwithstanding the foregoing, the OMDA shall have the powers enumerated in Title to promulgate the rules and regulations necessary to facilitate the implementation of this Title.

### Section 513. Amendment of Title

This Title may be amended by a vote of the majority of the Directors then serving as Directors of the OMDA. Such amendment shall then be submitted to the Otoe-Missouria Tribal Council.

# DEVELOPMENT AUTHORITY

# CHAPTER SIX

# MANAGEMENT OF TRIBAL ENTERPRISES

### Section 601. General Management Provisions

All tribal enterprises not separately established by legislation or organized pursuant to the Otoe-Missouria Corporations Act or other tribal laws regulating corporation's partnerships, or joint ventures shall be managed by the OMDA.

AWL-RS-00003767

### Section 602.   Achieving Independent Status as a Tribal Enterprise

Whenever, in the discretion of the Board of Directors, a project or enterprise of the OMDA has attained such measure of stability and profitability that it has attained the capacity to function as a separate self-sustaining entity, the Board of Directors shall recommend to the Otoe-Missouria Tribal Council in writing the chartering of the entity as a tribal enterprises independent from the oversight of the OMDA.

### Section 603.   Chartering of Independent Tribal Enterprises

Upon receiving a recommendation for the OMDA that a project of the Authority be reorganized as a separate entity the Otoe-Missouria Tribal Council shall review the recommendations and may either:

    a.    authorize the establishment of the project as an independent tribal enterprise by special legislation, and enact the necessary legislation to establish that enterprise; or

    b.    authorize the establishment of the project as an independent tribal enterprise pursuant to the general tribal corporation, partnership, or joint venture laws, and authorize by legislation, a person to organize such entity with such restrictions as may be necessary or useful; or

    c.    direct the Authority to conduct further studies, or investigate other alternatives, or take such other action upon such recommendations as the Otoe-Missouria Tribal Council may deem appropriate.

AWL-RS-00003768

# Section 3:
# The Otoe-Missouria Tribal Constitution



OTOE-MISSOURIA
DEVELOPMENT AUTHORITY

AWL-RS-00003769

# CONSTITUTION

## OF THE

## Otoe-Missouria Tribe of Oklahoma

### PREAMBLE

We, the members of the Otoe-Missouria Tribe of Indians in recognition of God Almighty, in order to promote our common welfare, conserve and develop our lands and resources, and secure for ourselves and our descendants the rights, powers and privileges of self government do establish and ratify this Constitution for the Otoe-Missouria Tribe of Indians pursuant to our inherent powers of self-government and the Act of Congress approved June 26, 1936 (49 Stat. 1967), known as the Thomas-Rogers Oklahoma Indian Welfare Act.

## ARTILE I –NAME

The name of this organization shall be the Otoe-Missouria Tribe of Indians.

## ARTICLE II – JURISDICTION

The jurisdiction of the Otoe-Missouria Tribe of Indians shall extend to all Indian country, as defined by 18 U.S.C. 1151, within the original boundaries of the Otoe-Missouria reservation established in 1883, and to such other land as may hereafter be acquired by the Tribe or added thereto under any law of the United States.

## ARTICLE III – PURPOSE

The objectives of the Otoe-Missouria Tribe of Indians in organizing under this Constitution shall be:

Section 1. To promote the general welfare of the Tribe and its members.

Sec. 2. To secure for the Tribe and its members the benefits, rights, privileges and powers provided for in the Act of Congress approved June 26, 1936 (49 Stat. 1967), known as the Oklahoma Indian Welfare Act.

Sec. 3. To secure for the Otoe-Missouria Tribe of Indians a charter of incorporation from the Secretary of the Interior that allows the Tribe to enjoy, in addition to those powers specifically mentioned in the Oklahoma Indian Welfare Act, any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984), as incorporated by reference through Section 3 of the Oklahoma Indian Welfare Act, 25 U.S.C. 503.

Sec. 4. To secure the benefits, rights, privileges and powers as provided by any laws of the United States now existing or that may hereafter be enacted for the benefit of Indians or other citizens of the United States.

Sec. 5. The protections guaranteed to persons by Title II of the Civil Rights Act of 1968 (82 Stat. 77), against actions of a Tribe in exercising its powers of self-government shall apply to the Otoe-Missouria Tribe of Indians, its officers and all persons within its jurisdiction.

## ARTICLE IV – MEMBERSHIP

Section 1. The membership of the Otoe-Missouria Tribe of Indians shall consist of the following persons who have not received land or money by virtue of being enrolled as members of another Indian Tribe:

(a) All persons whose names appear on the official membership roll of the Tribe as of October 14, 1966.

(b) All persons who met the requirements for enrollment in effect as of October 14, 1966, but whose names do not appear on the roll of that date.

(c) All person born to a tribal member after October 14, 1966, who are of at least one-fourth (1/4) degree Otoe-Missouria Tribal blood.

Sec. 2. The Tribal Council shall implement the provisions of the Membership Resolution adopted February 24, 1949, for determining membership eligibility under Section 1(b) above and shall have the power to enact an enrollment ordinance consistent with the above provisions, subject to approval by the Secretary of the Interior, which shall include provision for adoption and loss of membership and all other enrollment rules and procedures, including the establishment of an enrollment committee.

## ARTICLE V – GENERAL COUNCIL

Section 1. Composition. The General Council shall consist of al members of the Tribe eighteen (18) years of age or older, who are duly registered to vote.

Sec. 2. Powers. The specific powers reserved to the General Council are set forth in Section 2(a) of Article VIII.

## ARTICLE VI – TRIBAL COUNCIL

Section 1. Composition. The representative governing body of the Tribe shall be the Tribal Council composed of seven (7) members elected by secret ballot by the qualified voters of the Tribe. Such governing body shall be known as "The Otoe-Missouria Tribal Council."

Sec. 2. Powers. The Tribal Council's powers are set forth in Section 1 of Article VIII.

AWL-RS-0000377I

Sec. 3. Officers. A Chairman, Vice-Chairman, Secretary, Treasurer, and three (3) Councilmen shall be elected at large by plurality vote; provided, that a person shall be a candidate for only one (1) of the seven (7) positions.

## ARTICLE VII – ELECTIONS

Section 1. First Election. Within ninety (90) days after the date this Constitution is ratified, the Election Board, which conducted the ratification election, shall conduct the first election to fill the seven (7) Tribal Council positions and the four (4) positions on the tribal Election Board pursuant to regulations prescribed by that interim Election Board which shall be consistent with this Constitution. The Chairman, Secretary, and two (2) Councilmen shall be elected to serve until their successors are installed following the November 1986 regular election. The Vice-Chairman, the Treasurer and the remaining councilman shall be elected to serve until their successors are installed following the first regular election to be held in November 1985. Thereafter, all terms of office shall be for three (3) years or until successors are duly elected and installed.

Regarding establishment of the Election Board, one (1) position shall initially be filled for one (1) year term, one (1) shall be for a term of two (2) years, another shall be filled for a three (3) year period, and the remaining position shall be filled for a four (4) year term of office. Thereafter, elections for filling the vacancy that occurs each year on the Election Board shall be by secret balloting during the annual General Council meeting and those elected shall serve for four (4) year terms or until their successors are duly elected and installed.

The Business Committee in existence at the time this Constitution is ratified shall continue to serve until those initially elected to the Council are installed in office.

Sec. 2. Regular Elections.

  (a) Tribal Council.  Regular elections for the Tribal Council shall be conducted on the first Saturday of November during those years on which terms expire, beginning in 1985.

  (b) Election Board.  Regular elections for the Election Board shall be by secret ballot during annual meetings of the General Council.

Sec. 3.  Election Ordinance. All tribal elections, including initiative, recall and referendum, shall be conducted by an impartial election board pursuant to an election ordinance which shall be enacted by the Tribal Council within six (6) months following the effective date of this Constitution. Such ordinance shall be consistent with this Constitution and shall include provision for advance nomination of candidates, voter registration, absentee voting, secret ballots, and a procedure for resolving election disputes. Further, the ordinance shall set forth procedures for submitting petitions and determining their validity.

Sec. 4. Election Board. A four (4) member Election Board shall be created by electing persons to that body on an at-large basis at the first election following ratification of this Constitution as provided in Section 1 of this Article. Candidates for election to the

AWL-RS-0000003772

Election Board must meet those qualifications set forth in Section 5 of Article VII. The Election Board shall carry out provisions of the Election Ordinance objectively and fairly. No person who is a member of the Election Board shall, at the same time, be a candidate for, or serve on, the Tribal Council. An Election Board member, who is a candidate for reelection to that body, shall not serve during such election in order to avoid a conflict of interest.

Sec. 5. Qualifications of Candidates. Any person who desires to become a candidate for election or appointment to elective tribal office, and prospective candidates for appointment to the Tribal Court, must meet the qualifications set forth below; provided, that any elected person removed or recalled from office after ratification of this Constitution for any reason shall not be eligible to become a candidate for a period of four (4) years from the date of such removal or recall.

  (a) must be an enrolled member of the Tribe,
  (b) must be at least twenty-five 25 years of age,
  (c) must be duly registered to vote in the tribe's voter registration system,
  (d) must be eligible to be bonded on order to satisfy the requirements of Section 4 of Article XIII, and
  (e) must not have been convicted of a felony by a court of competent jurisdiction.

Sec. 6. Filing to be a Candidate. It shall be the responsibility of prospective candidates to file declaration of candidacy with the Election Board and Certify (or furnish documentary evidence) their qualifications.

Sec. 7. Lack of Candidates. If there are positions on either the Tribal Council or the Election Board which are vacant due to a lack of candidates, those positions shall be considered vacant and filled according to Article IX, Section 1.

Sec. 8. Voter Qualifications. In order to be a qualified voter, the following requirements must be met:

  (a) an enrolled member of the Tribe,
  (b) at least eighteen (18) years of age on the date of the election, and
  (c) be duly registered to vote in the tribe's voter registration system.

Sec. 9. Installation of Election Officials. The duly elected Tribal Council members and members of the Election Board shall be installed in office at a meeting to be held as soon as possible following the election. The oath of office shall be administered by an appropriate tribal member chosen by the Election Board.

Sec. 10. Recall. Upon receipt of a valid petition signed by at least three-hundred (300) adult members, it shall be the duty of the Election Board to call and conduct, within thirty (30) days, a special meeting of the General Council to vote by secret ballot on the recall of any elected official. Before voting on that issue, such official shall be given a written statement of the charges against him/her at least ten (10) days before the recall meeting. Such meeting shall be subject to the quorum provisions set forth in Article XI, Section 1(a). An elected official shall be subjected to recall proceedings only once during any term of office. Only one (1) official shall be considered for recall at any given recall meeting.

AWL-RS-0000 3773

## ARTICLE VIII – POWERS

<u>Section 1.</u> <u>Tribal Council.</u> The Tribal Council shall have final authority to transact business and otherwise speak or act on behalf of the Tribe in all matters on which the Tribe is empowered to act now or in the future, except as otherwise provided in this Constitution. The Tribal Council shall have authority to appoint subordinate committees and representatives and delegate to them any of the Tribal Council's powers. Further, the Tribal Council's authority shall include the power to enact ordinances and adopt regulations to administer governmental functions of the Tribe. The exercise of tribal powers shall be consistent with this Constitution and Federal Law.

<u>Sec. 2.</u> <u>Qualified Voters.</u> The powers set forth in this Section are reserved for exercise by the qualified voters in the manner described below:

(a) <u>General Council</u>. The following powers are to be exercised in meetings of the General Council:

    1. enact an ordinance dealing with land acquisition and management for implementation by the Tribal Council.

    2. make decisions regarding changes in the tribal burial program.

    3. adopt or reject initiative proposals in accordance with Section 1 of Article X.

    4. adopt or reject referendum proposals in accordance with Section 2 of Article X.

(b) <u>Elections</u>. The powers set forth below are to be exercised at elections which which require absentee voting and secret balloting. While such elections may be held in conjunction with General Council sessions, they are separate from requirements for meetings of the qualified voters:

    1. election and recall of tribal officials in accordance with Article VII

    2. filling of vacancies in accordance with Article IX, Section 1

    3. ratification of this Constitution in accordance with Article XVI

(c) <u>Petition</u>. The following powers are to be exercised by petition:

    1. propose amendments to this Constitution in accordance with Article XV

    2. initiate recall proceedings in accordance with Section 10 of Article VII

    3. request the calling of special General Council meetings in accordance with Section 1(c) of Article XI

<u>Sec. 3.</u> <u>Inherent Powers.</u> No provisions of this Constitution shall be construed as a limitation on the inherent sovereign powers of the Otoe-Missouria Tribe of Indians.

AWL-RS-00003774

# ARTICLE IX – VACANCIES, REMOVAL AND FORFEITURE

Section 1.  Vacancies. Vacancies in the membership of the Tribal Council which occur in the first two (2) years of the elected term shall be filled at a special election as provided for in the election ordinance. Vacancies occurring in the last year of the elected term shall be filled by the Tribal Council appointing a person who meets the qualifications for election to that position.

Vacancies on the Election Board shall be filled by the Tribal Council appointing a person who qualifies for election to such position. The appointee shall serve until the next annual meeting of the General Council at which time a qualified successor shall be elected to fill that position for any time remaining in such term of office. Voluntary resignation by any Tribal Council member *or* member of the Election Board shall be in writing and shall be effective when accepted by a resolution of the Tribal Council.

Sec. 2. Removal. Any elected or appointed official found guilty in a court of competent jurisdiction, or by the Tribal Council, of behavior involving misconduct reflecting on the dignity and integrity of the *t*ribal government, malfeasance in office, or gross neglect of duty, may be removed from office if at least four (4) members of the Tribal Council vote in favor of such removal. Voting must be by secret ballot and the Chairman is entitled to vote. If the accused is a Tribal Council member, he/she shall have the right to vote by secret ballot. Before, the vote for removal is taken, the accused tribal official shall be given a written statement of the charges at least ten (10) days before the Tribal Council meeting at which he or she is to appear, and shall be given an opportunity to answer any and all charges at such meeting. Any removed member of the Tribal Council or Election Board shall not be returned to office unless subsequently elected by the Tribe's qualified voters. No member of the Tribal Council shall call or preside over the meeting at which his or her removal is being considered. The decision of the Tribal Council shall be final.

> (a) Absences. Tribal Council members who are absent from two (2) successive regular meetings of that body, or total of three (3) regular meetings in one (1) year, may be removed from office by a majority vote of the Tribal Council members present at a meeting called for that purpose, unless such absences are excused by a majority vote of the Tribal Council. The due process provisions set forth above shall also be required in pursuing removal for unexcused absences.

Sec. 3. Forfeiture. Any member of the Tribal Council, the Election Board, or the Tribal Court, who, during the term for which he or she is elected or appointed, is convicted of a felony by a court of competent jurisdiction, shall automatically forfeit his or her position effective on the date of the initial conviction.

# ARTICLE X – POPULAR PARTICIPATION IN GOVERNMENT

Section 1. Initiative. Upon receipt of a valid petition signed by at least one hundred fifty (150) adult enrolled tribal members, it shall be the duty of the Election Board to call and conduct within sixty (60) days, an initiative election to be conducted at a special meeting of the General Council. Such meeting shall be for the purpose of presenting to

AWL-RS-0000377S

the qualified voters for their determination any issue or question, except recall, and as otherwise provided by this Constitution.

A decision by the majority of those voting shall be binding on the Tribal Council until its expires by its own terms or is otherwise changed by action of the voters. A quorum must be present to validate such action. Once an initiative issue has been submitted to the voters and rejected, that same issue shall not again be considered for such action for at least six (6) months.

Sec. 2. Referendum. Upon receipt of a valid resolution supported by an affirmative vote of at least four (4) members of the Tribal Council, the Election Board shall refer to the voters for their determination, such issue requested by the Tribal Council. The referendum may be conducted at an annual or special meeting of the General Council. Except for special meetings called for referendum purposes, it shall not be necessary to give prior notice of the matter being referred to the voters. A majority of those who vote shall decide the issue and such decision shall be binding on the Tribal Council until otherwise changed by voters; provided, a quorum is present. The Tribal Council's request for a referendum election may include decisions related to those powers reserved to the General Council set forth in Section 2(a) 1 and 2 of Article VIII.

## ARTICLE XI – MEETINGS

Section 1. General Council.

(a) Quorum. One-hundred (100) qualified voters shall constitute a quorum in order to conduct business at any annual or special meeting of the General Council. No enactment of the General Council shall have any validity in the absence of a quorum at the time it is voted upon.

(b) Annual Meeting. The Otoe-Missouria General Council shall meet annually on the first Saturday in November. The Tribal Council shall properly notice the hour and place of the meeting. Upon determination by the Tribal Council that, due to an extreme emergency, the annual meeting cannot be held on the First Saturday in November, the Tribal Council shall designate another meeting date; provided, the meeting is held within thirty (30) days of the regular date upon proper notice.

(c) Special Meeting. Special meetings of the Otoe-Missouria General Council may be called at the discretion of the Chairman of the Tribal Council; provided, that in each instance, a notice, including the purpose of the meeting, shall be posted and published at least ten (10) days in advance. Special meetings of the General Council shall be called by the Chairman upon receipt of a valid petition signed by at least one hundred fifty (150) adult members of Tribe, or by resolution of the Tribal Council, for the purpose of bringing special business or issues to the Tribal Council, for the discussion and/or enactment. The petition or resolution must state the purpose of

the meeting. If, upon validation of the petition by the Election Board, the Chairman does not call and notice the meeting within fifteen (15) days after validation, the next highest ranking officer shall exercise such authority, and upon the failure of any of the Tribal Council members to call and notice the special meeting, the petitioner spokesman shall proceed to call, notice and conduct the special meeting; provided, the quorum of one hundred (100) General Council members shall be required to validate actions taken at such meeting. Special meetings of the General Council shall not be cancelled after the ten (10) day notice is posted and published.

Sec. 2. Tribal Council Meetings.

    (a) Quorum. Five (5) members of the Tribal Council shall constitute a quorum of the Tribal Council membership thereof. No enactment of the Tribal Council will have any validity in the absence of a quorum.

    (b) Regular Meetings. Regular meetings of the Tribal Council shall be held monthly at a place and date established by ordinance of the Tribal Council. The Tribal Secretary shall be responsible for telephoning or sending written notices to each member in advance of the meeting if the regular date and place should have to be changed. The Tribal Council shall have the authority to call an Executive Session of any Tribal Council meeting.

    (c) Special Meetings. Special meetings of the Tribal Council may be called by the Chairman at his discretion, and shall be called by the Chairman upon the written request of at least four (4) members of the Tribal Council; provided, that the reason for the meeting is stated in the request and that each member of the Tribal Council is given at least seventy-two (72) hours advance notice of any special meeting. Upon refusal by the Chairman to call a special meeting within seventy-two (72) hours upon the written request of four (4) members who requested the special meeting may proceed to call and conduct the special meeting; provided, a quorum of five (5) members of the Tribal Council is present.

# ARTICLE XII – TRIBAL COURT

Section 1. Until such time as the Tribal Council determines that the Tribe is financially and otherwise prepared to maintain a separate Tribal Court, the judicial authority of the Tribe shall be exercised by the Court of Indian Offenses. The jurisdiction of the Court of Indian Offenses shall include, but not be limited to, criminal and civil jurisdiction, including settlement of tribal disputes and interpretation of this Constitution and tribal enactments.

Sec. 2. When the Tribal Council determines that the Tribe is prepared to begin exercising its judicial authority, it shall notify the Court of Indian Offenses by resolution, transmitting the following:

    (a) a copy of the judicial ordinance,
    (b) a plan for establishing the Tribal Court, and
    (c) a time table and procedures for orderly transition of pending cases.

In line with the above provisions, the judicial authority of the Tribe will, thereafter, be exercised by the Tribal Court. If, because of financial or other reasons, it is not appropriate for the Tribe to continue to maintain a separate Tribal Court, the Tribal Council may restore jurisdiction to the Court of Indian Offenses.

Sec. 3. If the Tribal Council determines that the Tribe shall maintain a separate Tribal Court, or courts, that court shall posses all of the judicial powers of the Tribe, including such powers that may, in the future, be granted to the Tribe by Federal Law. The Tribal Council shall enact a judicial ordinance subject to approval by the Secretary of the Interior to provide for the Tribal Court to exercise judicial powers including those set forth in Section 1 of this Article. Other features of the Tribal Court are set forth below:

- (a) The authority of the Tribal Court shall extend to all criminal offenses Committed by Indians which occur within the jurisdiction of the Tribe and all civil matters occurring within the Tribe's jurisdiction.

- (b) The duties and procedures of the court or courts shall be established by Ordinance of the Tribal Council, which shall also include the tenure and compensation for the tribal judges.

- (c) The tribal court shall consist of a Chief Judge and two (2) Associate Judges, Appointed by the Chairman of the Tribal Council and confirmed by a majority vote of the Tribal Council.

- (d) In order to qualify for appointment to the Tribal Court, a person must meet the Requirements set forth in Section 5 of Article VII, except that he/she must be at least thirty (30) years-of-age and not more than seventy (70) years of age.

- (e) Tribal judges may be unseated from their positions only by expiration of their term of appointment or by the removal or forfeiture provision of Article IX.

- (f) The judicial ordinance may include provisions for a Tribal Police Force.

## ARTICLE XIII – DUTIES OF OFFICERS

Section 1. The Chairman. The Chairman of the Tribal Council shall preside over all Tribal Council and General Council meetings of the Tribe, except as otherwise provided in this Constitution. The Chairman shall be allowed to vote only in case of a tie, except as provided in Article IX, Section 2, and in the elections of the Tribal Council, and shall exercise only the authority specifically delegated by the Tribal Council or as otherwise provided by this Constitution. The Chairman shall have general supervision over the affairs of the Tribal Council and shall perform all duties pertaining to the office of the Chairman.

Sec. 2. The Vice-Chairman. The Vice-Chairman of the Tribal Council shall assist the Chairman when called upon to do so. In the temporary absence of the Chairman, the

AWL-RS-00003778

Vice-Chairman shall preside, and when so presiding, shall have the rights, privileges, and duties, as well as the responsibilities of the Chairman. In the event of an extended absence or inability of the Chairman to perform the duties as Chairman, and when the office if for either of these reasons declared by a majority vote of the Tribal Council to be vacant, the Vice-Chairman shall automatically succeed the Chairman and inherit the designated duties and responsibilities of that position. The Vice-Chairman shall assume the office of Chairman in the event of a permanent vacancy in the office of Chairman until such time the vacancy is filled pursuant to Section 1 of Article IX.

Sec. 3. The Secretary. The Secretary of the Tribal Council shall correctly record the proceedings of all meetings of the Tribal Council and the General Council. The Secretary shall be responsible for the prompt and efficient handling of correspondence pertaining to the business of the Tribal Council. The Secretary shall make out the order of business at the direction of the Chairman, shall notify Tribal Council members of their appointments, and shall have custody on behalf of the Tribe of the records and papers of the Tribe.

The Secretary shall keep a correct list and terms of members of the Tribal Council, shall authenticate accounts or order of the Tribal Council and in the absence of the Chairman and Vice-Chairman, shall call either the Tribal Council or the General Council meeting to order until a Chairman Pro Tempore is selected. The Secretary shall read the minutes of the previous meeting. At the expiration of the term of office, all records, equipment, supplies and tribal papers in the possession of the Secretary shall immediately be turned over to the successor. The records which are the responsibility of the Secretary, shall be maintained at the tribal office. The Secretary shall issue notices of General Council meetings and make available by public announcement the anticipated agenda of such meetings.

In the event of an extended absence or inability of the Secretary to perform the Secretary's duty, and when the office is for either of these reasons declared by a majority vote of the Tribal Council to be vacant, the Treasurer shall assume the designated duties of office of the Secretary until such time as the vacancy is filled by an election or appointment of a new Secretary according to Section 1, Article IX. In the event the Treasurer is absent, the Tribal Council may designate another member of the Tribal Council as acting Secretary on a one-meeting basis.

Sec. 4. The Treasurer. The Treasurer of the Tribal Council shall be responsible for each yearly budget allowance received by the Tribal Council and shall keep an accurate account of all receipts and disbursements from this budget allowance. The Treasurer shall make appropriate reports (of all accounts) to the Tribal Council and present summary reports at meetings of the General Council. The accounts and records of the Tribal Council shall be open at all times for inspection and audit by the Assistant Secretary – Indian Affairs or his authorized representative. The records of the Treasurer shall be subject to audit or inspection at the discretion of the Tribal Council. All tribal funds entrusted to the care of the Treasurer shall be kept in a special account in a bank authorized by the Tribal Council and all disbursements therefrom shall be made by check with the checks to be countersigned by the Chairman.

The Treasurer shall have a position surety bond satisfactory to the Tribal Council. The cost of all tribal surety bonds shall be paid from tribal funds. All disbursements from

AWL-RS-0000377

11

tribal funds shall be made under authority of a properly executed resolution. In the event of an extended absence or inability of the Treasurer to perform the Treasurer's duties, and when the office is otherwise declared by a majority vote of the Tribal Council to be temporarily or permanently vacant, the designated duties of the Treasurer shall be assumed by other members of the Tribal Council in the following order:

1. The Secretary
2. One of the three (3) Tribal Council members who shall be properly bonded, and shall serve until a new Treasurer has been elected or appointed according to Section 1, Article IX.

Sec. 5. Appointed Committees. The duties of all appointive committees and officers shall be clearly defined by an ordinance or administrative guidelines at the time of their creation or appointment. Such committees or officers shall report from time to time, as required, to the Tribal Council; their activities and decisions shall be subject to review by the Tribal Council upon petition of any person aggrieved.

## ARTICLE XIV – TRIBAL ENACTMENTS

Section 1. Resolution. All final decisions of the Tribal Council on matters of temporary interest or matters relating to particular circumstances, officials or individuals shall be embodied in resolutions. Every resolution shall begin with the words, "Now, therefore, be it resolved by the Tribal Council of the Otoe-Missouria Tribe of Indians."

Sec. 2. Ordinances. On going matters necessary to the orderly administration of tribal affairs, shall be embodied in ordinances. Every ordinance shall begin, "Be it enacted by the Tribal Council of the Otoe-Missouria Tribe of Indians."

## ARTICLE XV – AMENDMENTS

Amendments to this Constitution may be proposed by a valid petition signed by at least three hundred (300) qualified voters, and, *if* approved by the Secretary of the Interior, shall be submitted to a referendum of the qualified voters of the Tribe pursuant to regulations of the Secretary (25 CFR Part 81 and 82 ) and shall become effective when ratified by a majority vote of those voting in the election; provided, that at least thirty percent (30 %) of those entitled to vote shall cast ballots in such election.

## ARTICLE XVI – RATIFICATION

This Constitution, when approved by the Secretary of the Interior and ratified by a majority vote of the qualified voters of the Otoe-Missouria Tribe of Indians voting at an election called for that purpose by the Secretary of the Interior, in which at least thirty percent (30 %) of those entitled to vote shall cast their ballots, shall be effective from the date of ratification.

AWI-RS-0000380

## ARTICLE XVII – CERTIFICATE OF APPROVAL

I, _____ John W. Fritz _____, Deputy Assistant Secretary – Indian Affairs (Operations) by virtue of the authority granted to the Secretary of the Interior by the Act of June 26, 1936 (49 Stat. 1967), as amended, and delegated to me by 209 D.M. 8.3, do hereby approve this Constitution of the Otoe-Missouria Tribe of Indians. It shall become effective upon ratification by the qualified voters of the Tribe in an election in which at least thirty percent (30%) of those entitled to vote cast ballots; provided, that nothing in this approval shall be construed as authorizing any action under this Constitution that would be contrary to Federal Law.

Deputy Assistant Secretary
Indian Affairs (Operations)

Washington, D.C.

Date: OCT 06 1983

## ARTICLE XVIII – CERTIFICATE OF RATIFICATION

Pursuant to an order approved by - John W. Fritz _____, Deputy Assistant Secretary – Indian Affairs (Operations), on October 6 _____, 1983, this Constitution of the Otoe-Missouria Tribe of Indians was submitted for ratification to the qualified voters of the Otoe-Missouria Tribe of Indians and was on February 4 _____, 1984, duly ratified by a vote of _98_ for, and _49_ against, in an election in
rejected _____ (number) _____ (number)
which at least thirty percent (30%) of the _256_ entitled to vote cast their ballots
(number)
in an election called for that purpose.

Chairman, Election Board

Election Board Member

Election Board Member

Date: February 4, 1984

48 of 54

AWL-RS-00003781

# Section 4:
# Illegal Letters,
# Invalid Resolutions, and
# Court Orders



OTOE-MISSOURIA
DEVELOPMENT AUTHORITY

AWL-RS-00003782



# **Otoe-Missouria Tribe**
## **Office of The Tribal Council**
### **8151 Highway 177, Red Rock, Oklahoma 74651-3048**

(580) 723-4466 Tribal Operations
(580) 723-4595 FAX

August 7, 2006

Eastman National Bank
5th and Prospect
Ponca City, OK 74601

Dear Sir:

The $2,000,000.00 deposit from Pioneer Bank on Friday, August 4, 2006, an account opened on behalf or in the name of the Otoe-Missouria Tribe, was not approved by a Tribal Resolution from the Otoe-Missouria Tribal Council. A Tribal Resolution is required to open any new checking account for the Tribe.

We are requesting no expenditures from this account be made until such Tribal Resolution is approved.

Lorraine Sigwing, Tribal Treasurer

Wesley J. Hudson, Tribal Secretary

Mildred Hudson, Member

Curtis Burgess, Member

CC: Tribal Council

50 of 54

AWL-RS-0000783

IN THE COURT F INDIAN OFFENSES
FOR THE OTOE-MISSOURIA TRIBE OF OKLAHOMA
REDROCK, OKLAHOMA

OTOE-MISSOURIA DEVELOPMENT AUTHORITY,                  )
     Petitioner,                                                      )
                                                            )      $CN$
vs.                                                                        )      Case No. $P$-$Ob$-$PO3$
Wes Hudson,                                                           )
Lorraine Sigwing,                                                    )
Curtis Burgess,                                                      )      **COURT OF INDIAN OFFENSES**
Mildred Hudson,                                                     )      **F I L E D In The**
Each individually and collectively                            )      **Office Of The Court Clerk**
in their Official Capacity as members of the Otoe- Missouria   )
Tribal Council ,                                                      )      AUG 1 0 2006
&                                                                          )      DOCKET_____ PAGE_____ RECORDED
Each individually in their individual capacity,             )      IN JOURNAL_____ ON PAGE_____
     Respondents,                                                  )      MARGARET L. KOMALTY, Court Clerk
                                                                       )      By_____ Deputy

## *ORDER FOR EX-PARTE EMERGENCY RELIEF*

**ON THIS** $10^{\underline{th}}$ **DAY OF** Aug 5 2006, the Court upon Petition being
filed and application filed for emergency orders by the Petitioners upon reviewing filings and
evidence and hearing testimony of witness the Court Finds the Following:

That the Court has jurisdiction and: That the petitioner has standing to bring this action

That there appears exist an emergency situation that requires immediate Court intervention
and that the petitioner will suffer irreparable harm without such intervention by the Court.

The Court finds that Petitioner, OMDA has authority over the funds in controversy and that said
funds should be released to Petitioner by Eastman Bank.

The Court finds that it appears that the respondents have superceded their authority, acting
outside their scope of authority in the transmittal to Eastman bank , which by evidence has
caused interference in the ability to conduct business, acting outside of the constriction of the
tribe.

The Court Orders :

The release of the funds to the proper representatives of OMDA

And that the respondents are enjoined from the interference of OMDA in exercising their powers
under the new Act absent proof of constitutional compliance.

AWL-RS-00003784

THIS MATTER IS SET FOR SHOW CAUSE ON 21st Day of August, 2006,
at the time of 2:00 pm O'clock

RedRock, OK.

______________________

Magistrate

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT AND COMPLETE COPY OF THE INSTRUMENT HEREWITH SET OUT AS IT APPEARS ON RECORD IN THE COURT CLERK'S OFFICE OF INDIAN OFFENSES, SOUTHERN PLAINS REGION TRIBES.

Witness my hand and seal 10th day of [illegible], 20 06

MARGARET L. KOMALTY, COURT CLERK

By ______________________, Deputy

AWL-RS-00003785

IN THE COURT OF INDIAN OFFENSES
FOR THE OTOE-MISSOURIA TRIBE OF OKLAHOMA
REDROCK, OKLAHOMA

OTOE-MISSOURIA DEVELOPMENT AUTHORITY, )
    Petitioner, )
vs. )
Wes Hudson, )
Lorraine Sigwing, )
Curtis Burgess, )
Mildred Hudson, )
Each individually and collectively )
in their Official Capacity as members of the Otoe- Missouria )
Tribal Council , )
& )
Each individually in their individual capacity, )
    Respondents, )

Case No.
Civ - 06-P03

COURT OF INDIAN OFFENSES
**FILED** In The
Office Of The Court Clerk

OCT 0 5 2006

Docket _____ Page ___ _____ Recorded
In Journal _____ on Page _____
                              Court Clerk

## EMERGENCY EX PARTE ORDER

**ON THIS** the 5th Day Of October, 2006 the Court upon application of the petitioner does find cause to issue the following:

That no parties in this matter shall take any measure: either for or against, or the amending or repealing of the Otoe -Missouria Development Act or Authority, through Tribal Council or other political means at this time.

Nor shall any collateral issue concerning the Otoe - Missouria Act or Authority be addressed by Council until further orders of the Court.

That the Status -Quo shall be maintained in this matter until further Orders of the Court.

This matter is set for Hearing before the Court on the 16th Day of October, 2006 at 2:00 p.m.

**IT IS SO ORDERED!**
    **Phil Lujan**
_____

Magistrate

I HEREBY CERTIFY THE FOREGOING IS A TRUE AND CORRECT AND COMPLETE COPY OF THE INSTRUMENT HEREWITH SET OUT AS IT APPEARS ON RECORD IN THE COURT CLERK'S OFFICE OF THE COURT OF INDIAN OFFENSES, ~~PAWNEE AGENCY~~ BUREAU OF INDIAN AFFAIRS.
Witness my hand and Seal this _16th_ day
of _____Oct_____, 20 _06_
                Court Clerk
_____
(Seal)

53 of 54

Submitted on this 12th day of September 2006

**Otoe Missouria Constitution**
**Approved October 6, 1983**

Article X - Popular Participation in Government Section 2. Referendum.
Upon receipt of a valid Resolution supported by an affirmative vote of at least (4) members of the Tribal Council, the Election Board shall refer to the voters for their determination, such issue requested by the Tribal Council. The referendum may be conducted at an annual or special meeting of the General Council. Except for special meetings called for ref. purposes, it shall not be necessary to give prior notice of the matter being referred to the voters. A majority of those who vote shall decide the issue and such decision shall be binding on the Tribal Council until otherwise changed by the voters; requested or a referendum election may include decisions related to those powers reserved to the General Council set forth in Section 2 (a) 1 and 2 of Article VIII.

Hereby submitted is a Resolution OMTC# 71262 FY-06. The Resolution adopts a Law which Constitutes a major change in Government. Four of the Council Members who voted on this Resolution in great haste, do by request the Otoe Missouria Election Board to call a Special Meeting of the Otoe Missouria General Council to decide this issue. The issue is causing great distress among our people and our Council, and endangering our Programs.


Lorraine Sigwing, Tribal Treasurer


Marge Hudson, Tribal Council Third Member


Wes Hudson, Tribal Secretary


Curtis Burgess, Tribal Council Second Member