# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA WILLIAMS and MICHAEL STERMEL, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>RED STONE, INC., as successor in interest to MACFARLANE GROUP, INC., MEDLEY OPPORTUNITY FUND II, LP, MARK CURRY, BRIAN MCGOWAN, VINCENT NEY, and other JOHN DOE persons or entities,<br><br>      Defendants. | No. 2:18-cv-02747-MSG |

**DEFENDANTS BRIAN MCGOWAN'S AND VINCENT NEY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................1

II.  BACKGROUND .....................................................................................................1

    A. Plaintiffs' Loans. ...........................................................................................1

    B. Brian McGowan .............................................................................................3

    C. Vincent Ney....................................................................................................4

    D. Other Defendants ..........................................................................................5

III. ARGUMENT ..........................................................................................................5

    A. Legal Standard ..............................................................................................5

    B. This Court Lacks Personal Jurisdiction over McGowan and Ney................6

        1. McGowan and Ney are not subject to general jurisdiction.....................7

        2. McGowan and Ney are not subject to specific jurisdiction.....................7

    C. Plaintiffs Have Failed to State a Claim for Violation of the Pennsylvania
       Usury Law.......................................................................................................9

    D. Plaintiffs Have Failed to State a Claim for Violation of the UTPCPL. ......11

    E. Plaintiffs Have Failed to State a Claim for Violation of the FCEUA..........13

    F. Plaintiffs Have Failed to State a Claim for Violation of the PCSA. ...........15

    G. Plaintiffs' Claims for Injunctive Relief Under Pennsylvania Law All Fail
       (Counts I-IV). ...............................................................................................16

    H. Plaintiffs Have Failed to State a Claim for RICO. .....................................17

        1. Plaintiffs have failed to demonstrate their injuries have been proximately
           caused by Ney or McGowan....................................................................18

        2. Plaintiffs' group pleading is insufficient to allege a RICO cause of action
           against McGowan or Ney. ......................................................................20

        3. Plaintiffs do not allege that McGowan or Ney participated in an
           enterprise or did so *through* the collection of an unlawful debt. ..........21

        4. Plaintiffs' RICO conspiracy claim fails. ...............................................23

**5. Plaintiffs' "Alter-Ego" claim fails.** ............................................................................**24**

**I. McGowan and Ney are entitled to immunity.** ..................................................**25**

**IV. CONCLUSION** ...........................................................................................................**25**

## **TABLE OF AUTHORITIES**

**Cases**

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007) .......................................................................... 22

*Aldorasi v. Crossroads Hospitality and Mgmt. Co., LLC*,
   2018 WL 4613939 (E.D. Pa. Sept. 25, 2018) ............................................................. 10, 11, 15

*Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ *passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) ........................................................ *passim*

*Boring v. Google, Inc.*, 598 F. Supp. 2d 695 (W.D. Pa. 2009), ................................................... 16

*Commonwealth v. Parisi*, 873 A.2d 3 (Pa. Commw. Ct. 2005) ................................................... 13

*Commonwealth v. Think Finance, Inc.*, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016) ..................... 9

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) ......... 7

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). ......................................................................... 7

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ...................................................................... 22

*Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th Cir. 2014) ................................... 19

*Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018) .................................................................. 19

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990) ............................................................. 17

*Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505 (E.D. Pa. 2009) ........... 12, 14

*GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) ......................... 24

*Goleman v. York Intern. Corp.*, No. 11-1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) .... 16, 17

*Hartman v. Deutsche Bank Nat. Trust Co.*,
   No. CIV.A. 07-5407, 2008 WL 2996515 (E.D. Pa. Aug. 1, 2008) ......................................... 14

*Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp. 3d 665 (E.D. Pa. 2018).. 20

*Heinemeyer v. Twp. of Scotch Plains,* 198 F. App'x 254 (3d Cir. 2006) ..................................... 22

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). ................................................... 18, 19

*Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992)..................................................... 18, 19

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.,* 804 F.3d 633 (3d Cir. 2015)........... 18

*In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300 (3d Cir. 2010).................................. 17, 20, 21

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)............................................................................ 7

*Japhet v. Francis E. Parker Mem'l Home, Inc.,* No. CIV.A. 14-01206 SRC,
    2014 WL 3809173 (D.N.J. July 31, 2014) .................................................................. 6

*Kaites v. Pa. Dep't of Envtl. Res.,* 529 A.2d 1148 (Pa. Commw. Ct. 1987)................................ 10

*Kamara v. Columbia Home Loans, LLC,* 654 F. Supp. 2d 259 (E.D. Pa. 2009) ......................... 12

*Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649 (S.D.N.Y. 1996)................................ 17

*Kaymark v. Bank of Am., N.A.,* 783 F.3d 168 (3d Cir. 2015) ....................................................... 15

*Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993)................................................. 24

*Lima LS PLC v. PHL Variable Ins. Co.,*
    No. 3:12-CV-1122-WWE, 2013 WL 3327038 (D. Conn. July 1, 2013) ................................. 20

*Loften v. Diolosa,* No. 3:05-cv-1193, 2008 WL 2994823 (M.D. Pa. July 31, 2008) ................. 12

*Lumax Indus., Inc. v. Aultman,* 669 A.2d 893 (Pa. 1995)............................................................ 24

*Macauley v. Estate of Nicholas,* 7 F. Supp. 3d 468 (E.D. Pa. 2014) ........................................... 20

*Maio v Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000) ................................................................. 18

*Moore v. Johnson & Johnson,* 2014 WL 12603141 (E.D. Pa. Feb. 4, 2014) .............................. 10

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline,* 117 F.3d 142 (4th Cir. 1997) .................. 22

*Pennsylvania v. Exxon Mobil Corp.,*
    No. 1:00-1898, 2015 WL 4092326 (S.D.N.Y. July 2, 2015).............................................. 11, 12

*Pettit v. Retrieval Masters Creditor Bureau, Inc.,* 211 F.3d 1057 (7th Cir. 2000)..................... 15

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri,*
    No. 5:11-cv-01860-ODW, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) .................. 20

*Reves v. Ernst & Young,* 113 S. Ct. 1163 (1993)......................................................................... 21

*Santiago v. Warminster Tp.*, 629 F.3d 121 (3d Cir. 2010). ........................................... 6

*Surgical Laser Techs. v. C.R. Bard, Inc.*, 921 F. Supp. 281 (E.D. Pa. 1996), ............... 8

*United Healthcare Serv., Inc. v. Cephalon, Inc.*,
   No. 17-555-MJG, 2018 WL 878766 (E.D. Pa. Feb. 13, 2018). ................................. 7

*United States v. Bergrin*, 650 F.3d 257 (3d Cir.2011) ................................................. 17

*United States v. Marshall*, 75 F.3d 1097 (7th Cir. 1996) ........................................... 22

*United States v. Pepe*, 747 F.2d 632 (11th Cir. 1984) ............................................... 22

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534, 1539 (3d Cir.1993) .......................................................... 18, 23

*Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001) ....................................................... 13

*Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86 (Pa. Sup. Ct. 1983) ............................ 10

*Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73 (3d Cir. 2017) ...................... 18

**Statutes**

18 U.S.C. § 1962(a); .............................................................................................. 23

18 U.S.C. § 1962(b); .............................................................................................. 23

18 U.S.C. § 1962(c); ....................................................................................... *passim*

18 U.S.C. § 1962(d); ....................................................................................... 17, 23

18 U.S.C. § 1964(c); .............................................................................................. 18

41 Pa. Cons. Stat. § 101 ........................................................................................... 9

41 Pa. Cons. Stat. § 502 ........................................................................................... 9

73 P.S. § 201-9.2 ............................................................................................. 13, 15

73 P.S. § 2270.5 .................................................................................................... 15

73 Pa. Cons. Stat. § 2182 ...................................................................................... 16

73 Pa. Cons. Stat. § 2190(a) .................................................................................. 16

73 Pa. Cons. Stat. § 2270.1. ........................................................................................ 13

73 Pa. Cons. Stat. § 2270.2 ......................................................................................... 13

## I.     INTRODUCTION.

Defendants Brian McGowan ("McGowan") and Vincent Ney ("Ney") submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). In short, Plaintiffs' claims in the FAC against McGowan and Ney must be dismissed because: (1) Plaintiffs' claims are subject to mandatory arbitration; (2) McGowan and Ney are not subject to personal jurisdiction in Pennsylvania; (3) Plaintiffs' group pleading allegations do not apprise McGowan and Ney of the specific misconduct they are alleged to have engaged in, which dooms all claims in the FAC; (4) Plaintiffs fail to plead facts demonstrating an actionable violation of the Pennsylvania Usury Law (Count I), Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count II), the Fair Credit Extension Uniformity Act ("FCEUA") (Count III), the Pennsylvania Credit Services Act ("PCSA") (Count IV), or the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count V); and (5) Plaintiffs have failed to allege facts that either McGowan or Ney participated in racketeering or in a conspiracy to violate RICO. For these reasons, Plaintiffs' FAC should be dismissed *with prejudice*.

## II.     BACKGROUND.

### A.     Plaintiffs' Loans.

This case arises from short-term loans that American Web Loan, Inc. ("American Web Loan") and AWL, Inc. ("AWL") extended to the named plaintiffs. American Web Loan and AWL are lending companies established under the laws of the federally recognized Otoe-Missouria Tribe of Indians (the "Tribal Law") and located on the Tribe's land in Red Rock, Oklahoma. Potential borrowers can apply for American Web Loan's or AWL's installment loans online and have the requested funds transferred to their bank account once approved. Neither American Web Loan nor AWL are defendants in this case. Tribal Law provides that American

1

Web Loan and AWL (and any other regulated entity) may enter into loan agreements with consumers that "provide for the interest rate or the fee equivalent as agreed upon by the parties." (See Motion to Compel Arb., Exhibit A, ECF No. 87 Otoe-Missouria Tribal Consumer Financial Services Ordinance § 6.4(b)(1)).  Tribal Law also requires that American Web Loan, AWL, and all regulated entities comply with no less than 17 specified federal consumer protection laws. *Id.*at 5.2(a).  Tribal Law provides that the Tribe has jurisdiction over non-members of the Tribe "who enter into consensual relationships (e.g. commercial dealings, contracts, leases, or other arrangements) with the Tribe, its arms and instrumentalities, businesses organized under Tribal law, and its Members."  *Id.* at § 4.14(c)(ii); *see also id.* at § 4.14(c)(2) (explicitly providing that Tribal Law recognizes that a consumer obtaining a loan or other product authorized under the Consumer Financial Services Ordinance invokes the Tribe's jurisdiction and consents to that jurisdiction).

Plaintiff Christina Williams lives in Philadelphia, Pennsylvania. She alleges that on or about January 17, 2017 she entered into an agreement over the internet with American Web Loan for a $1,400 loan (the "January 2017 loan"). FAC ¶ 57. Williams alleges that the January 2017 loan, if repaid according to the loan's initial payment schedule, required her to pay $4,605.94 in interest. *Id.* ¶ 59. Williams also alleges that she entered into a very similarly-styled loan on or about April 25, 2017 (the "April 2017 loan"). *Id.* ¶¶ 65-71. Williams alleges that she executed an Electronic Funds Transfer ("EFT") agreement to allow American Web Loan and its agents to debit her bank account in Pennsylvania for the January 2017 and April 2017 loans. Williams does ***not*** allege that McGowan and Ney are American Web Loan's agents who debited payments from her account. She states that she made two bi-weekly payments on the January 2017 loan, and four on the April 2015 loan. *Id.* ¶¶ 61-62.

Plaintiff Michael Stermel lives in Philadelphia, Pennsylvania. He alleges that he entered into an agreement over the internet with AWL for a $1,000 loan. FAC ¶ 72. Stermel alleges—in a highly similar fashion to Williams—that if repaid according to the loan's initial payment schedule, he would be required to pay $3,260.96 in interest. *Id.* ¶ 74. Stermel alleges that she executed an EFT agreement to allow AWL and its agents to debit his bank account in Pennsylvania. Stermel does ***not*** allege that McGowan and Ney are AWL agents who debited payments from his account.

### B.    Brian McGowan.

Mr. McGowan is a former officer of two now-nonexistent companies, Geneva-Roth and MacFarlane Group.  FAC ¶¶ 23, 35.  Geneva-Roth is alleged to have made loans to consumers— not plaintiffs—at some point years in the past, while MacFarlane Group is alleged to have provided "a variety of business services," to other companies.  *Id.*  Geneva-Roth and MacFarlane Group are not defendants and are not alleged to have any contacts with Plaintiffs. *See generally* FAC. McGowan is also alleged to be a current member of AWL's board of directors. *Id.* ¶ 53.

The 124-Paragraph FAC contains only the following ***five*** specific factual allegations (outside of the introduction and citizenship allegations) as to McGowan:

- "While Defendant Curry was Geneva-Roth's sole owner, Defendant Brian McGowan was an officer of the company." FAC ¶ 23;

- "The consent decrees between Geneva-Roth and various of these States were signed by either Defendant Curry, as company owner, or Defendant McGowan, as company officer." FAC ¶ 31;

- "While Defendant Curry was MacFarlane Group's owner, Defendant McGowan served as its Executive Vice President and Chief Treasury Officer." FAC ¶ 35;

- "In early 2010, Defendants Curry and McGowan and MacFarlane Group introduced online payday lending to the Otoe-Missouria Tribe of Indians." FAC ¶ 37; and

- "The Texas State filings for AWL, Inc. list Defendants Curry, McGowan, and Ney, all non-tribal members, as being on the company's Board of Directors." FAC ¶ 53.

Beyond these five innocuous statements, the FAC is devoid of individualized allegations of McGowan conduct which supposedly provides the basis for his liability. McGowan's name is mentioned specifically only *eight times total in the entire 35-page FAC*, including the introduction and citizenship statement. FAC ¶¶ 2, 9, 23, 31, 35, 37, 53, 54. Instead, the FAC simply groups McGowan with the other "Defendants" in at least *44 Paragraphs* of the FAC. *See* FAC ¶¶ 17, class allegations (a)-(e), subclass allegations (a)-(b), 83, 85(a)-(b), 87-89, 93-101, 103, 105, 108, 110, 111, 113, 115, 118, 122-124.

### C.   Vincent Ney.

Mr. Ney is alleged to be the founder of a now-nonexistent online payday lending company named Government Employees Credit Center, Inc. ("GECC"), which he is alleged to have created in 2003, and is alleged to have been involved in payday lending on behalf of Blue King, Inc. and various other loan servicing companies. FAC ¶¶ 19, 54. GECC, Blue King, and the other entities that Ney is alleged to have created and/or co-owned are not defendants and are not alleged to have any contacts with Plaintiffs. *See generally* FAC. Ney is alleged to be a current member of AWL's board of directors. *Id.* ¶ 53.

The 124-Paragraph FAC contains only the following *three* allegations (outside of the introduction and citizenship allegations) as to Ney:

- "On September 9, 2003, Defendant Vincent Ney ('Ney') created the online payday lending company Government Employees Credit Center, Inc., d/b/a GECC, d/b/a Cash Direct Express, and d/b/a chasedirectexpress.com ('GECC')." FAC ¶ 19.

- "The Texas State filings for AWL, Inc. list Defendants Curry, McGowan, and Ney, all non-tribal members, as being on the company's Board of Directors." FAC ¶ 53; and

- "As with Defendants Curry and McGowan, AWL, Inc. is not Defendant Ney's first foray into rent-a-tribe payday lending. In mid-to-late 2012, Defendant Ney raised at least $8 million from private, non-tribal investors to fund payday loans made in the name of Blue King, Inc., which was owned by the Chukchansi Indian Tribe of eastern California. A substantial part of the revenues generated by Blue King, Inc. payday loans was paid to the loan servicing companies Arcapex LLC, Blackthorn Advisory Group LLC, and Light Sword LLC, all of which were co-owned by Defendant Ney." FAC ¶ 54.

Like with McGowan, the allegations as to Ney are innocuous, conclusory, and wholly irrelevant to Plaintiffs' claims. And as with McGowan, the FAC is devoid of individualized allegations of Ney's conduct which supposedly provides the basis for his liability to Plaintiffs for the purported harm they suffered. Ney's name is mentioned specifically only ***seven times total in the entire FAC,*** including the introduction and citizenship statement. FAC ¶¶ 2, 10, 19, 53, 54. Instead, the FAC simply groups Ney with "Defendants" 44 times, just as with McGowan.

### D.   Other Defendants.

The other defendants in this action are generally service providers, funders, and an executive connected to American Web Loan and AWL, two companies admitted to be tribal corporations formed by the Otoe-Missouria Tribe. The other defendants are not alleged to have any direct contact with Plaintiffs. Instead, Plaintiffs allege that the other defendants are responsible for, and receive income as a result of, loans made by American Web Loan and AWL.

## III.   ARGUMENT.

### A.   Legal Standard.

Pleadings in federal court are governed by Rule 8(a)(2). A pleading must contain a "'short and plain statement of the claim.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 demands more than conclusory allegations, which are those that are no more than "an unadorned, the defendant-unlawfully-harmed-me accusation, labels, and conclusions, a formulaic recitation of the elements

of a cause of action, or naked assertion[s]." *Id*. Group pleading does not meet the Rule 8(a) standard. *See e.g., Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. CIV.A. 14-01206 SRC, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014) (noting that allegations that "'defendants' undertook certain illegal acts […] injects an inherently speculative nature into the pleadings," and "undermines the notice pleading regime of Rule 8….").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In resolving such a motion, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and then determine[s] whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011). However, this principle is "inapplicable to either legal conclusions or 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* at 72 (citing *Twombly*, 550 U.S. at 555).

To determine the sufficiency of a complaint, courts in the Third Circuit must perform a three-step analysis. *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, a court must identify plaintiff's claims and determine the required elements of those claims. *Id.* Second, a court must identify, and strike, conclusory allegations contained in plaintiff's complaint. *Id.* Finally, a court must determine if the remaining factual allegations "plausibly give rise to an entitlement for relief." *Id.* at 73.

### B.     This Court Lacks Personal Jurisdiction over McGowan and Ney.

The FAC does not plead any actual or meaningful contacts by either McGowan or Ney with Pennsylvania that would establish personal jurisdiction over them. To be proper, the exercise of jurisdiction must (1) be appropriate under Pennsylvania's long-arm statute, and (2) not violate the Due Process clause. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft*

*Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Pennsylvania's long-arm statute provides that its reach is coextensive with constitutional limits of Due Process and, therefore, a court "need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause." *United Healthcare Serv., Inc. v. Cephalon, Inc.*, No. 17-555-MJG, 2018 WL 878766, at *2 (E.D. Pa. Feb. 13, 2018).

There are two types of jurisdiction under the Due Process clause: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1779-1780 (2017). In this case, Plaintiffs have failed to allege facts to support either general or specific jurisdiction consistent with due process.

### 1.     McGowan and Ney are not subject to general jurisdiction.

McGowan and Ney are not subject to general personal jurisdiction in Pennsylvania. The FAC does not allege any facts showing that McGowan and Ney had actual contact with Pennsylvania, let alone any facts showing contacts so "constant and pervasive" to render them essentially at home in Pennsylvania. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014).

### 2.     McGowan and Ney are not subject to specific jurisdiction.

Specific jurisdiction is also lacking. Specific personal jurisdiction can only be exercised consistent with due process when the defendant's "in-state activities are not only 'continuous and systematic, but also give rise to the liabilities sued on.'" *Id.* at 761 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). To satisfy specific jurisdiction, courts must find all three parts of a three-part test satisfied: (1) the plaintiff needs to show that the defendant has constitutionally sufficient "minimum contacts" with the forum; (2) the litigation must 'arise out of or relate to' at least one of those activities; and (3) if the two prior requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *See Cephalon*, 2018 WL 878766, at *2; *D'Jamoos*, 566 F.3d at 102. Here,

Plaintiffs have not satisfied each of the first two prongs, and the failure to plead any material contacts by McGowan and Ney with Pennsylvania makes clear that exercising jurisdiction would violate traditional notions of fair play and substantial justice.

In terms of jurisdictional contacts, the FAC's allegations can be boiled down to this: a Kansas resident (McGowan) and a Texas resident (Ney) have, from time to time, been involved with online lending companies that *are not parties to this litigation and have no connection to Plaintiffs*, and now sit on AWL's board of directors—the company that provided online loans to Plaintiffs in Pennsylvania. FAC ¶¶ 23, 31, 35, 37, 53, 54. From this, Plaintiffs' allege that McGowan and Ney have committed wrongful acts against Pennsylvania residents (Plaintiffs).

The mere presence of Pennsylvania residents in this equation is not sufficient to satisfy due process with respect to McGowan and Ney.  This case bears similarities to another case from this district, *Surgical Laser Techs. v. C.R. Bard, Inc.*, 921 F. Supp. 281 (E.D. Pa. 1996), where the court dismissed a nonresident party far removed from the alleged bad acts for lack of personal jurisdiction. There, plaintiff alleged that one defendant conveyed plaintiffs' secret information to another defendant, Trimedyne, which was not located in Pennsylvania. *Surgical Laser*, 921 F. Supp. at 285. Plaintiffs alleged that Trimedyne used the information in India. *Id.* The court concluded that Trimedyne had not directed any activity at Pennsylvania, and that while it may have been able to foresee potential harm in Pennsylvania, knowledge of harm "standing alone does not establish the minimum contacts required…." *Id.* (dismissing Trimedyne for lack of personal jurisdiction).

Here, there is *even less* that could arguably give rise to personal jurisdiction over McGowan and Ney than there was in *Surgical Laser*. McGowan and Ney are not alleged to have done anything except sit on AWL's board. They are not alleged to have personal knowledge of

AWL's loans to Plaintiffs—which in any event, would not be enough. They did not use Plaintiffs' information, as Trimedyne used plaintiffs in *Surgical Laser*, or take Plaintiffs' payments. In short, there are literally no contacts alleged in the FAC between McGowan and Ney and the Commonwealth of Pennsylvania.

Plaintiffs may resort to an argument that McGowan and Ney were "knowing participants in [a] scheme to issue illegal loans to the citizens of Pennsylvania," and are therefore subject to personal jurisdiction here. *See Commonwealth v. Think Finance, Inc.*, 2016 WL 183289, at *28, n.39 (E.D. Pa. Jan. 14, 2016). But unlike the *Think Finance* case, where the defendants challenging jurisdiction were alleged to "tak[e] the consumers' information and provide[] it to the lenders," *id.*, McGowan and Ney are not alleged to have actively participated in ***anything***. Plaintiffs allege only that McGowan was employed by a legacy company (MacFarlane Group) ***back in 2010***, that Ney was previously involved in payday lending unrelated to this case for a time, and that both Ney and McGowan are current AWL board members. (FAC ¶¶ 35, 53, 54.) There are, however, no facts connecting McGowan and Ney to Plaintiffs or their loans.

In short, McGowan and Ney do not have the necessary minimum contacts with Pennsylvania—indeed, there are no contacts at all—and the exercise of personal jurisdiction over them will violate Due Process. The FAC claims against McGowan and Ney should be dismissed.

C.     **Plaintiffs Have Failed to State a Claim for Violation of the Pennsylvania Usury Law.**

Plaintiffs' first claim (Count I) asserts—against all "Defendants," the group in which they include McGowan and Ney—a violation of Pennsylvania's usury law, 41 Pa. Cons. Stat. § 101 *et seq*. fails to state a claim as a matter of law. The usury law allows any plaintiff who has paid a rate of interest in excess of that allowed by law to recover "against *the person* who has *collected* such excess interest or charges." 41 Pa. Cons. Stat. § 502 (emphasis added).

9

Here, McGowan and Ney are not alleged to have **collected any interest or charges**. *See generally* FAC. Plaintiffs concede their loans were with American Web Loan (Ms. Williams) and AWL (Mr. Stermel). FAC ¶¶ 57, 65, 72. Plaintiffs make the conclusory assertion that they authorized American Web Loan and AWL "and their agents" to take payments from their accounts, ostensibly to drag McGowan and Ney into this group. FAC ¶¶ 61, 69, 76. But there are no allegations that McGowan or Ney actually debited any payments from either Plaintiff, either in their individual capacity or as "agents" of Plaintiffs' lenders. Plaintiffs could have identified who collected their loans, but they did not. Instead, they chose to allege violation of the usury law generally against "Defendants." FAC ¶¶ 86-91. This does not meet Rule 8(a)'s standard, or the *Iqbal/Twombly* standard requiring more than "an unadorned, the defendant-unlawfully-harmed-me accusation, labels, and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertion[s]." *Twombly*, 550 U.S. at 570.

McGowan's and Ney's status as AWL board members similarly does nothing for Plaintiffs' claims. Under Pennsylvania's "participation theory" for corporate officer liability, a corporate officer is not liable for a company's wrongful conduct simply by virtue of their title. *See Aldorasi v. Crossroads Hospitality and Mgmt. Co., LLC*, 2018 WL 4613939, at *5 (E.D. Pa. Sept. 25, 2018) ("[L]iability under the participation theory 'attaches only where the corporate officer is an actor who participates in the wrongful acts.'") (quoting *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86 (Pa. Sup. Ct. 1983)); *see also Moore v. Johnson & Johnson*, 2014 WL 12603141, at *2 (E.D. Pa. Feb. 4, 2014) (board members not personally liable if a complaint does not assert that they "personally directed, participated in, or cooperated in any tortious conduct."); *Kaites v. Pa. Dep't of Envtl. Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987) (applying participation theory to alleged violation of statute and finding corporate officer not

liable for company's acts) (cited with approval by *Aldorasi*). Plaintiffs' Complaint does not allege that McGowan and Ney were actively participating in AWL's business, that they were directly involved in the decision to offer loans over the internet to Plaintiffs, or that they have individually participated in acts or omissions causing Plaintiffs' harms. Instead, Plaintiffs allege only that Ney and McGowan are responsible for the acts of others. Plaintiffs' allegations are, thus, insufficient to impose personal liability on McGowan and Ney; they cannot be liable solely because they are board members of AWL.

Given that McGowan and Ney are not alleged to be "the person" who collected Plaintiffs' loans, Count I of the FAC should be dismissed, with prejudice.

### D.    Plaintiffs Have Failed to State a Claim for Violation of the UTPCPL.

In Count II, Plaintiffs baldly allege that McGowan and Ney engaged in various activities in violation of Sections 2(4)(i), (ii), and (xxi) of the UTPCPL. FAC ¶ 101. However, Plaintiffs fail to plead any specific facts as to McGowan's or Ney's improper conduct that violates the statute.  This requires dismissal.

***First***, group pleading allegations are inappropriate under the UTPCPL and do not satisfy the *Iqbal/Twombly* pleading standards. *See Pennsylvania v. Exxon Mobil Corp.* (*In re Methyl Tertiary Butyl Ether ("MTBE" Prods. Liab. Litig.*), No. 1:00-1898, 2015 WL 4092326, at *5 (S.D.N.Y. July 2, 2015) ("The remaining allegations accusing defendants—as a group—of engaging in deceptive conduct or otherwise violating the UTPCPL are simply too vague as to each defendant under *Twombly* and its progeny to state a claim.").

In *Pennsylvania v. Exxon Mobil Corp.*, the Commonwealth of Pennsylvania sought to recover for alleged injury and threat of future injury to Pennsylvania's waters caused by MTBE. The Attorney General brought UTPCPL claims against more than 30 defendants, alleging that the defendants engaged in "unfair and deceptive actions" in their sale and marketing of MTBE

gasoline. The defendants moved to dismiss the UTPCPL claims because Plaintiff employed "group-wide allegations." *Id.* The district court agreed and dismissed the claim because the complaint failed to "provide a plausible factual basis to distinguish the conduct of each of the defendants." *Id*.

Similarly, here, Plaintiffs plead as to all "Defendants," and fail to apprise McGowan or Ney of the alleged actions they took that violated the statute. By lumping McGowan and Ney together with the "Defendants," generally, without any differentiation among any of them, Plaintiffs make it impossible for McGowan and Ney to formulate a cogent response to the factual allegations. Plaintiffs' pleading tactic obfuscates the basis of their claims against McGowan and Ney. Such group-wide pleading is insufficient not only under Rule 8(a) in general, but also under the UTPCPL specifically. *See Exxon Mobil Corp*., 2015 WL 4092326, at *5 (finding that plaintiff's UTPCPL allegations "lacked specificity and fail to differentiate among defendants."); *See also Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) (dismissing UTPCPL claim that "d[id] not distinguish among [the] defendants in setting forth the alleged violations."); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 515-16 (E.D. Pa. 2009) (find that "the plaintiff must allege with particularity the [UPTCPL] elements necessary to support a violation…as to a particular Defendant.") (internal quotation omitted); *Loften v. Diolosa*, No. 3:05-cv-1193, 2008 WL 2994823, at *8 (M.D. Pa. July 31, 2008) (dismissing UTPCPL claim that incorporated by reference allegations from other sections of the complaint and "failed to articulate the conduct of each Defendant" and did not allege "the ***particular*** provisions of the UTPCPL violated by a ***particular*** Defendant.") (emphasis added). Plaintiffs' UTPCPL claim against McGowan and Ney should be dismissed for this reason alone.

12

**Second**, nowhere in the FAC are McGowan and Ney alleged to have interacted with Plaintiffs or otherwise engaged in conduct prohibited by the relevant provisions of the UTPCPL. This is fatal to Plaintiffs' claim. *See Commonwealth v. Parisi*, 873 A.2d 3, 9 (Pa. Commw. Ct. 2005). In *Parisi*, the Attorney General brought UTPCPL claims against a number of parties, including an individual who was alleged to have played an essential role in executing part of the alleged scheme at issue in the case. However, the complaint did not allege that the individual defendant actually engaged in the illegal conduct that formed the basis for a cause of action under the UTPCPL. The court found that it "cannot ignore the fact that the Commonwealth has not alleged any illegal activity on [defendant's] part" in its UTPCPL claim and "it must be alleged that [defendant] participated" in the alleged actions constituting violations of the UTPCPL. *Id.*; *see also* 73 P.S. § 201-9.2. This is because Section 9.2 of the UTPCPL "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of the defendant's prohibited action*." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (emphasis added). Without such an allegation, a plaintiff lacks standing to pursue a UTPCPL claim. *Id.*

Again, Plaintiffs do not allege any facts that demonstrate McGowan or Ney participated in any illegal activity. They are alleged to be board members of AWL—that's all. FAC ¶ 53. As discussed above, *supra* p. 10-11, Plaintiffs' "participation theory" is not viable here. Count II must be dismissed for failure to state a claim.

### E.    Plaintiffs Have Failed to State a Claim for Violation of the FCEUA.

The FAC next alleges that McGowan and Ney violated the FCEUA, 73 Pa. Cons. Stat. § 2270.1 *et seq*, by collecting or attempting to collect interest, giving false representations about the legality of a loan, and making threats to collect on a debt. FAC ¶ 105. The FCEUA generally prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the **collection of debts.**" 73 Pa. Cons. Stat. § 2270.2 (emphasis added). The FCEUA "sets out

prohibited debt collection practices involving communications by ***the creditor*** to the borrower."
*Garczynski*, 656 F. Supp. 2d at 515. The FAC fails, however, to make any individualized
allegations against McGowan or Ney, how they were involved in the collection of debts, or how
they were involved in any communications to Plaintiffs. Instead, Plaintiffs rely on speculative,
conclusory, group-wide allegations. Plaintiffs' FCEUA is deficient and fails as a matter of law.

District courts readily dismiss FCEUA claims where a complaint fails to allege facts
connecting the actions of specific defendants to conduct proscribed by the FCEUA. In
*Garczynkski*, for example, the court dismissed an FCEUA claim where the complaint "[did] not
identify a single communication" between the creditor and the plaintiffs that constituted a
violation of the statute. *See Garczynski*, 656 F. Supp. 2d at 515-16 ("Without pointing to any
suspect debt collection practice that may be prohibited by the FCEUA, the FAC fails to make out
an FCEUA claim…."). Similarly, in *Hartman v. Deutsche Bank Nat. Trust Co.*, the court
dismissed an FCEUA claim where the complaint failed to "allege[] facts pertaining to [the
defendant] that would even bring [the defendant] within the scope of the FCEUA." No. CIV.A.
07-5407, 2008 WL 2996515, at *4 (E.D. Pa. Aug. 1, 2008) (dismissing the FCEUA claim on a
motion to dismiss where general allegations of "unfair or unconscionable collection methods" as
insufficient to support an FECUA claim).

Here, Plaintiffs make no allegations that McGowan and Ney ever engaged in debt
collection activity prohibited by the FCEUA. Instead, Plaintiffs tried to lump them in with
"Defendants," and as "agents" of American Web Loan and AWL that were authorized to debit
Plaintiffs' accounts. FAC ¶¶ 61, 69, 76. There are no allegations that McGowan or Ney ever
collected anything from either Plaintiff.

Further, even if American Web Loan or AWL (which are not defendants in this case)

14

could fairly be considered a creditor of Plaintiffs, had contacts with Plaintiffs, **and** engaged in violations of the FCEUA, Plaintiffs' attempt to hold McGowan and Ney liable for their alleged actions under the FCEUA as AWL board members is improper. Attempting to FCEUA liability on a corporate officer simply by virtue of their status as an officer is unsupported in the law. *See supra* p. 10-11 (discussing participation theory); *cf. Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (noting that claims under the FDCPA (the statute upon which the FCEUA is based) against "officers or shareholders" of a company, regardless of their degree of control, "who are not otherwise debt collectors are frivolous and might well warrant sanctions."); *see also Aldorasi*, 2018 WL 4613939, at *5. The FCEUA claim against McGowan and Ney is frivolous and should be dismissed.

Plaintiffs' FCEUA claim fails for the additional, separate reason that it is not a standalone cause of action. A violation of the FCEUA is deemed a violation of the UTPCPL; the FCEUA has no independent civil enforcement provisions. 73 P.S. § 2270.5.  A plaintiff that cannot state a claim under the UTPCPL cannot state a claim under the FCEUA.  *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015). As discussed above, Plaintiffs' UTPCPL claim is not viable because they fail to allege any harm "as a result of" any conduct by McGowan and Ney. 73 P.S. § 201-9.2.  Count IV must, therefore, be dismissed for this additional reason.

### F.    Plaintiffs Have Failed to State a Claim for Violation of the PCSA.

In Count IV, Plaintiffs allege that McGowan and Ney violated the PCSA by acting as "loan brokers," and making false representations, omitting material facts in their offer of services, or engaging in fraud in the connection with their offer or sale of services. FAC ¶ 109. They also allege that McGowan and Ney are a "credit services organization." FAC ¶¶ 110-113. The PCSA defines "loan broker" as someone who arranges or attempts to arrange or offer to fund a loan, assists or advises borrowers, solicits loans, or holds themselves out as a loan broker.

73 Pa. Cons. Stat. § 2182 (definition of "loan broker"). The act defines a "credit services organization" as a person who sells or represents that he or she can sell services to improve someone's credit, obtain an extension of credit, or provide assistance to someone with respect to their credit. *Id.* (definition of "credit services organization").

The FAC contains zero factual allegations that McGowan and Ney meet the definition of loan brokers or credit services organizations under the statute. The FAC mere says, in so many words, "they are." This is insufficient under the *Iqbal* and *Twombly* standard. Moreover, lumping McGowan and Ney in with all "Defendants" does not meet Rule 8(a)'s standard.

It also does not matter that McGowan and Ney are alleged board members of AWL. This has been discussed extensively above, and applies with equal force here. *See supra* p. 10-11.

Plaintiffs' PCSA claim fails for the same reason their FCEUA claim fails—the PCSA has no independent civil enforcement provisions and can only be enforced through the UTPCPL. 73 Pa. Cons. Stat. § 2190(a). As discussed above, Plaintiffs' UTPCPL claim is not viable. Count IV must be dismissed for this additional reason.

### G.   Plaintiffs' Claims for Injunctive Relief Under Pennsylvania Law All Fail (Counts I-IV).

Plaintiffs' requests for injunctive relief under Counts I-IV must fail. An injunction under Pennsylvania law is "an extraordinary remedy that should be issued with caution only where the rights and equities of the plaintiff are clear and free from doubt…" *Boring v. Google, Inc.*, 598 F. Supp. 2d 695 (W.D. Pa. 2009), *aff'd in part, rev'd in part on other grounds*, 362 F. App'x 273 (3d Cir. 2010) (internal quotation omitted). "[A] a party seeking injunctive relief must establish that his right to relief is clear, that an injunction is necessary…and that greater injury will result from refusing [the injunction] than granting [it]." *Goleman v. York Intern. Corp.*, No. 11-1328, 2011 WL 3330423, at *10 (E.D. Pa. Aug. 3, 2011) (internal quotation omitted) (applying

Pennsylvania law).

Here, as discussed in detail in Sections C through G, *supra*, **none** of Plaintiffs' state law claims are viable as a matter of law. This alone precludes injunctive relief. But Plaintiffs also have failed to allege why monetary damages are insufficient to compensate them, and how this situation is extraordinary and requires an injunction against the Defendants. This is another, separate reason why Plaintiffs' claims for injunctive relief should be dismissed. *See Goleman*, 2011 WL 3330423, at *10.

### H.     Plaintiffs Have Failed to State a Claim for RICO.

Finally, Plaintiffs allege that the "Defendants" violated RICO Sections 1962(c) and (d). As pled, Plaintiffs' RICO claims against Ney and McGowan are deficient for many of the same reasons as Plaintiffs' deficient state-law claims. Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation omitted). "The mere assertion of a RICO claim…has an almost inevitable stigmatizing effect…." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). Consequently, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* The dearth of allegations connecting Ney and McGowan to Plaintiffs, or their purported harm, demonstrate the frivolity of the RICO claims. The claims must be dismissed.

As a matter of law, Ney and McGowan are not responsible for the amorphous activities of all "Defendants." Rather, Plaintiffs must demonstrate that Ney and McGowan—as opposed to the alleged enterprise as a whole—engaged in acts or omissions that violate the RICO statute. *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir.2011). And, Ney's and McGowan's participation in the operation or management of the enterprise must have been *through* such prohibited activity. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 372 (3d Cir. 2010). But

the FAC fails to make such allegations—at least as to Ney and McGowan. And Ney and McGowan cannot be liable given their status as board members because, as the Third Circuit noted over twenty-five years ago, "attending board meetings," does not demonstrate control or direction of an enterprise sufficient for liability under RICO. *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993). Given the insufficient and conclusory allegations in the FAC, the Court should be weary of Plaintiffs' civil RICO claims against Ney and McGowan.

### 1. Plaintiffs have failed to demonstrate their injuries have been proximately caused by Ney or McGowan.

Nothing in Plaintiffs' FAC demonstrates that the purported harm to business or property alleged in their complaint was proximately caused by Ney or McGowan. Private plaintiffs have standing to sue under RICO only when "injured in his business or property by reason of a violation of section 1962…." 18 U.S.C. § 1964(c); *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 8-12 (2010). This standing requirement demands that a plaintiff demonstrate that a *defendant's* prohibited racketeering activity or collection of an unlawful debt is both the but-for and proximate cause of a plaintiff's injury. *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992); *see also In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) ("The language of § 1964(c) requires a RICO plaintiff to show that the plaintiff suffered an injury to business or property and that the plaintiff's injury was caused by the defendant's violation of 18 U.S.C. § 1962.").

Under the proximate cause analysis, any injury that is "'necessarily contingent upon the impact of events in the future which have not yet occurred, will not suffice." *Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73, 77 (3d Cir. 2017) (quoting *Maio v Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)). The proximate causation requirement ensures that in order for a plaintiff to

have standing to bring a civil RICO claim a defendant, he or she must be able to demonstrate how a particular defendant's actions directly caused the plaintiff's harm. *Holmes*, 503 U.S. at 268 (noting the RICO proximate cause element is "used to limit a person's responsibility for the consequences of that person's own acts."). A plaintiff cannot simply string together a number of causal events linking a plaintiff to defendant. *Fields v. Twitter, Inc.*, 881 F.3d 7395 (9th Cir. 2018) (recognizing the Supreme Court's decision in *Hemi* "emphasized that a claim would not meet RICO's direct relationship requirement if it required the Court to move beyond the first step in the causal chain."); *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2014) (noting that the relevant proximate cause inquiry focuses "on the directness of the relationship between the [defendant's] conduct and the harm." (alterations in original) (quoting *Hemi*, 559 U.S. at 12)).

Plaintiffs must do more than allege Ney and McGowan's mere association with the purported enterprise—they must demonstrate that Ney and McGowan's actions proximately caused Plaintiffs' harm. But, Plaintiffs can only muster allegations that McGowan and Ney were each an officer and/or a board member of several companies, including AWL. The FAC does nothing to demonstrate how Ney or McGowan's purported service on the board of AWL led to Plaintiffs' injuries, or that such injuries were the direct result of prohibited activity by Ney and McGowan. Nothing in the FAC *proximately* connects Ney or McGowan to Plaintiffs. Rather, the only connection between these board members and Plaintiffs comes through a muddled set of tenuous and speculative chain of events that is not even expressly pled in the FAC. As such, Plaintiffs' lack of individualized allegations concerning Ney's and McGowan's conduct, as well as the lack of any direct connection between those defendants to Plaintiffs' harm, requires a finding that Plaintiffs lack standing to pursue these civil RICO claims.

2.       **Plaintiffs' group pleading is insufficient to allege a RICO cause of action against McGowan or Ney.**

To state a claim under § 1962(c) against a particular defendant, the plaintiff must allege that the defendant, a RICO "person" employed by or associated with an "enterprise": (1) conducted (2) an enterprise (3) through (4) a pattern of racketeering activity or the collection of an unlawful debt. *Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp. 3d 665, 682 (E.D. Pa. 2018).

The FAC alleges facts demonstrating none of required elements as to Ney and McGowan. Rather the FAC attempts to ascribe allegations targeted at all Defendants to each individual defendant. This is improper. Without any individualized allegations of wrongdoing against McGowan or Ney, the Court cannot reasonably infer that McGowan or Ney are responsible for the misconduct alleged. No less than any other claim, civil RICO requires Plaintiffs to plead, with "some specificity," facts sufficient to plausibly give rise to entitlement of relief. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 369-70 (3d Cir. 2010). "[T]he concern expressed in *Twombly* is just as applicable to a RICO case," and requires a court to assess the liability of each defendant based upon clear, non-conclusory allegations of fact as to each defendant. *See Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 488 (E.D. Pa. 2014) (internal quotation omitted). Courts in many other districts agree and have dismissed similar attempts at alleging a RICO claim through group pleading. *See, e.g., Lima LS PLC v. PHL Variable Ins. Co.*, No. 3:12-CV-1122-WWE, 2013 WL 3327038, at *11 (D. Conn. July 1, 2013) (granting motion to dismiss RICO claim where "the complaint lack[ed] specific allegations as to actual acts specific to each" defendant); *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-01860-ODW, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) (dismissing substantive RICO count because plaintiff indiscriminately lumped together several defendants and thus failed "to delineate how

any of these individual defendants independently participated in the operation or management of the enterprise, much less how they did so through the alleged pattern or patterns of racketeering activity.").

As discussed *ad nauseam* above, the FAC contains only the most barebones of allegations against McGowan and Ney. Rather, the FAC only alleges facts demonstrating Ney and McGowan's association with companies that engage in online lending, including AWL. That allegation, however, does not state a RICO claim. *See In re Ins. Brokerage*, 618 F.3d at 370 ("Mere association with an enterprise does not violate § 1962(c) . Plaintiffs' generic group pleading is therefore insufficient as a matter of law.

### 3. Plaintiffs do not allege that McGowan or Ney participated in an enterprise or did so *through* the collection of an unlawful debt.

Plaintiffs' federal RICO claim against McGowan and Ney should also be dismissed because Plaintiffs failed to plead the existence of or participation by McGowan and Ney in an "enterprise." Liability under Section 1962(c) requires a "showing that the defendants conducted or participated in the conduct of [an] '*enterprise's* affairs,' not just their own affairs." *Reves v. Ernst & Young*, 113 S. Ct. 1163, 1173 (1993) (emphasis in original) (discussing 18 U.S.C. § 1962(c)); *see also In re Ins. Brokerage*, 618 F.3d at 371 ("[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise…."). Section 1962(c) also requires a plaintiff to identify how a defendant operated or managed an enterprise *through* a pattern of racketeering or the collection of an unlawful debt. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371 ("The plain language of the statute requires that the 'pattern of racketeering activity' be a means by which the defendant 'participates, directly or indirectly, in the conduct of the enterprise's affairs."). This is because, "RICO does not criminalize engaging in a pattern of racketeering or collecting unlawful debt, but rather criminalizes participation in

the affairs of an enterprise through those means." *United States v. Pepe*, 747 F.2d 632, 661 n.48 (11th Cir. 1984).

Using these principles, courts have held that a proper claim under Section 1962(c) must include an allegation that each defendant committed at least one act of racketeering activity or collection of an unlawful debt. *See, e.g., Heinemeyer v. Twp. of Scotch Plains,* 198 F. App'x 254, 256 (3d Cir. 2006) (affirming summary judgment granted in favor of defendant where there was no evidence that the defendant engaged in racketeering activity).[1]   And, as the Third Circuit has correctly recognized, there is no liability for aiding and abetting a RICO claim. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 656-657 (3d Cir.1998) (rejecting the holding of *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258 (3d Cir. 1995), and holding there is no general civil aiding and abetting liability under RICO); *Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000) (discussing both *Jaguar Cars* and *Rolo* and concluding there is no general civil aiding and abetting liability under RICO given the Supreme

---

[1] This requirement has been adopted by Circuits across the country. *See, e.g., DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant."); *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) ("[t]o prove a violation of § 1962(c), [plaintiff] must show that each RICO defendant conducted an enterprise through a pattern of racketeering activity…."); *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (Regardless of subsection, RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"); *United States v. Marshall*, 75 F.3d 1097, 1110 (7th Cir. 1996) ("a RICO violation requires proof that an individual engaged in the affairs of an enterprise, through the commission of two or more predicate criminal acts."); *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017) (noting that an essential element of a RICO claim is proof "that the defendant participated in the enterprise through a pattern of racketeering activity by committing at least two racketeering (predicate) acts."); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) ("a plaintiff asserting a § 1964(c) claim for a violation of § 1962(c) must plausibly allege that the defendants each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir.), *cert. denied*, 138 S. Ct. 322 (2017) ("To state a civil claim under the federal Racketeering Act, 18 U.S.C. § 1964(c), a complaint must allege 'that the defendant committed a pattern of ... predicate acts…'").

Court's holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)); *Macauley*, 7 F. Supp. 3d at 486 ("The Third Circuit has clearly and unequivocally rejected a civil RICO aiding and abetting claim.").

Plaintiffs allege that AWL and American Web Loan, Inc. were an "association-in-fact," but their allegations are conclusory and, in any event, do not involve McGowan and Ney. Instead of pleading a plausible factual theory, Plaintiffs generally allege that American Web Loan and AWL were "an enterprise of individual persons" and "consisting of each named Defendant". FAC ¶¶ 115, 119. Again—as is characteristic of most everything in the complaint—the complaint does not explain how McGowan and Ney participated in this alleged "enterprise." Excluding citizenship allegations, McGowan and Ney are mentioned in only *six Paragraphs* of the FAC. FAC ¶ 23, 31, 35, 37, 53, 54. McGowan and Ney are only alleged to have any connection to AWL *one* time (FAC ¶ 53) and to American Web Loan, Inc. *zero* times. *See generally* FAC. There simply are no facts alleged showing an "enterprise" involving McGowan or Ney. Plaintiffs may argue that the FAC names McGowan and Ney as AWL board members, and this should be enough of a hook for RICO. But it is not; as the Third Circuit noted over twenty-five years ago, "attending board meetings," does not demonstrate control or direction of an enterprise sufficient for liability under RICO. *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993).

### 4.  Plaintiffs' RICO conspiracy claim fails.

Much like their claims under substantive RICO, Plaintiffs' claims against McGowan and Ney under RICO's conspiracy provision must fail. To establish a claim under Section 1962(d), a party must plead and prove: (1) an agreement to commit the predicate acts of fraud; and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a),  (b), or (c). 18 U.S.C. § 1962(d); *see also In re Jamuna Real Estate, LLC,*

416 B.R. 412, 428 (Bankr. E.D. Pa. 2009) (citing *Rose v. Bartle*, 871 F.2d 331, 336 (3d Cir. 1989)). But where, as here, a plaintiff has failed to state a claim under Section 1962(c), "Plaintiffs' RICO conspiracy claim fails as well." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir.1993) (same). Given the numerous deficiencies identified in Plaintiffs' RICO claims, the conspiracy claims should be similarly dismissed. And, if that were not enough, Plaintiffs do nothing to demonstrate how Ney and McGowan's alleged role as board members of AWL demonstrates their participation in *the enterprise*, or their agreement to further the criminal endeavor of *the enterprise*. These are not technicalities, they are deficiencies requiring dismissal.

### 5.    Plaintiffs' "Alter-Ego" claim fails.

Under Count V, Plaintiffs start out by alleging that American Web Loan and AWL are the "alter-egos" of Defendants, and thus Defendants may be held liable for their actions. Plaintiffs do not separate this claim into a separate count. However, because Plaintiffs style their RICO claim as an alternative to their "alter-ego" allegations, McGowan and Ney briefly address the "alter-ego" claim here. Under Pennsylvania law, there is a "strong presumption … against piercing the corporate veil," and plaintiffs attempting to do so must allege facts demonstrating factors such as "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). The FAC offers no facts as to these factors—at least as to Ney and McGowan—and nothing more than their *ipse dixit*, generally. The failure to plead facts relevant to the factors the court must consider is grounds for dismissal. *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) (holding that sharing of addresses and individuals wearing many hats was not enough to avoid dismissal of veil piercing theories on motion to dismiss).

24

I.    **McGowan and Ney are entitled to immunity.**

In the interest of preserving judicial economy, and as expressly permitted by Fed. R. Civ.

P. 10(c), McGowan and Ney adopt and incorporate by reference as if set forth in full herein,

Defendant Mark Curry's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint

for Lack of Subject Matter Jurisdiction, ECF No. 86.   As alleged in the FAC, both McGowan

and Ney are current members of AWL's board of directors.  FAC ¶ 53.  For the reasons set forth

in that Memorandum of Law, McGowan and Ney, just like Curry, are entitled to immunity

because the Otoe-Missouria Tribe is the real party in interest, and/or because McGowan and Ney

acted within the scope of their official duties as directors of a governmental body and did not

violate clearly established law.

IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, as well as those set forth in the Motion to

Dismiss filed by Defendant Curry, as incorporated herein, Defendants McGowan and Ney

respectfully request that this Court dismiss the claims against McGowan and Ney, for lack of

jurisdiction and for the failure to state a claim.


Dated: February 11, 2019                  Respectfully Submitted,

                                      By: */s/ Richard L. Scheff*
                                      Richard L. Scheff (PA ID No. 35213)
                                      Jonathan Boughrum (PA ID No. 91019)
                                      David F. Herman (PA ID No. 318518)
                                      ARMSTRONG TEASDALE LLP
                                      1500 Market Street, Suite 1200
                                      Telephone: (215) 246-3478
                                      rlscheff@armstrongteasdale.com
                                      jboughrum@armstrongteasdale.com
                                      Dherman@armstrongteasdale.com

                                      *Attorneys for Defendants Brian McGowan*
                                      *and Vincent Ney*