**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA WILLIAMS, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **No. 18-cv-2747** |
| | : | |
| **RED STONE, INC., ET AL.,** | : | |
| | : | |
| *Defendants.* | : | |

## ORDER

**AND NOW**, this 7th day of May, 2019, upon consideration of the Motions to Compel Arbitration filed by Defendant Red Stone, Inc. (ECF No. 78), Defendant Mark Curry (ECF No. 84), and Defendants Brian McGowan and Vincent Ney (ECF No. 87), and the responses and replies thereto, I find as follows:

A.    **Factual and Procedural Background**

1.  Plaintiffs have brought this lawsuit on behalf of themselves and a Class and Subclass of consumers in Pennsylvania who were allegedly victimized by predatory loans with unlawful interest charges of 400% to 700% APR, which are referred to as "payday loans." (Am. Compl. ¶ 1, ECF No. 4.)  Plaintiffs have sued Defendants Red Stone, Inc., Medley Opportunity Fund II, LLP, Mark Curry, Brian McGowan, and Vincent Ney.  (Id.)

2.  Plaintiffs' Amended Complaint alleges the following five claims: (a) Violation of the Pennsylvania Usury Law; (b) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (c) Violation of the Pennsylvania Fair Credit Extension Uniformity Act; (d) Violation of the Pennsylvania Credit Services Act; and (e) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

3.  The Amended Complaint sets out the formation of the various relevant entities, as follows:

    –  Sometime in 2010, Defendant Curry founded MacFarlane Group, Inc., which is not a party to this lawsuit.  (Id. ¶ 33.)  Defendants Curry and McGowan brokered an agreement between MacFarlane Group, Inc. and the Otoe-Missouria Tribe (the "Tribe"), whereby a new corporation named American Web Loan, Inc. would provide online payday lending to consumers.  (Id. ¶¶ 37–40.)

    –  On February 22, 2011, Defendant Medley Opportunity Fund II, LP ("Medley") and Defendant Curry entered into an agreement, whereby Defendant Medley would provide MacFarland Group, Inc. with financing for the payday loans.  (Id. ¶¶ 7, 42–43.)

    –  On September 21, 2016, the Tribe created another corporation, AWL, Inc., that would provide online payday lending to consumers.  (Id. ¶ 49.)  Defendants Curry, McGowan, and Ney served on AWL, Inc.'s Board of Directors.  (Id. ¶ 53.)

    –  On October 3, 2016, Defendant Red Stone, Inc. ("Red Stone") was created by merging into MacFarlane Group, Inc.  Defendant Red Stone is a corporation formed under the laws of the Tribe.  (Id. ¶¶ 6, 51.)

4.  Plaintiffs' loan agreements that are at issue in this case each contain the following language:

> **PLEASE CAREFULLY READ THIS AGREEMENT TO ARBITRATE.  UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OR ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

(Def.'s Mot, Ex. A at 16, ECF No. 79-1.)

5.  These agreements define "dispute" as follows:

> [A]ny claim or controversy of any kind between you and us or otherwise involving this Agreement or the Loan.  The term Dispute is to be given its

broadest possible meaning and includes, without limitation, all federal, state or Trial Law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.

(Id. at 16–17.)

6.   The agreements specifically provide that the agreement is governed by tribal law:

**APPLICABLE LAW AND JUDICIAL REVIEW OF ARBITRATOR'S AWARD: THIS AGREEMENT SHALL BE GOVERNED BY TRIBAL LAW.** The arbitrator shall apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall make written findings and the arbitrator's award may be filed with a Tribal court. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and Tribal Law, and if it is not, it may be set aside by a Tribal court upon judicial review.

(Id. at 18.)

7.   Additionally, the agreements contain the following language:

**HOW ARBITRATION WORKS:** If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. . . . The party requesting arbitration must choose either of the following arbitration firms for initiating and pursuing arbitration: the American Arbitration Association ("AAA") or JAMS, The Resolution Experts ("JAMS"). . . . The policies and procedures of the selected arbitration firm applicable to consumer transactions will apply provided such policies and procedures do not contradict this Agreement to Arbitrate or Tribal Law. To the extent the arbitration firm's rules or procedures are different than the terms of this Agreement to Arbitrate, the terms of this Agreement to Arbitrate will apply.

(Id. at 19 (emphasis added).)

8. Defendants, Red Stone, Curry, Ney, and McGowan, have filed Motions to Compel Arbitration, claiming that the loan documents contained valid arbitration clauses.  (Defs.' Mot. to Compel, Exs. A–C, ECF No. 78.)

**B.      Legal Standard**

9. When ruling on a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), a court is limited to determining whether the merits of the case should be arbitrated or litigated, and may not consider the merits of the underlying claims.  Great W. Mtg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).   Before compelling arbitration, a court must ensure that: (1) the parties entered into a valid arbitration agreement; and (2) the dispute between the parties falls within the language of the arbitration agreement.  John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1988).

10. The United States Court of Appeals for the Third Circuit has "clarif[ied] the standards to be applied to motions to compel arbitration, identifying the circumstances under which district courts should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and those under which they should apply the summary judgment standard found in Rule 56."   Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 767 (3d Cir. 2013).   It instructed that "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."   Id. at 776 (internal quotations omitted).

4

C.    **Analysis**

11. Defendants argue that the agreements are enforceable because the choice-of-law provision includes the phrase "such federal law as is applicable under the Indian Commerce Clause." Defendants also argue that the agreements are enforceable because they adopt two prominent arbitration organizations as arbitrators (i.e., AAA and JAMS). (Defs.' Mot. 11, ECF No. 79.)

12. Plaintiffs respond that the agreements are unenforceable because (a) they strip the consumer's federal and state statutory rights, and (b) courts have found such arbitration clauses to be a farce designed to avoid state and federal law. (Pls.' Resp. 2, ECF No. 100.)

13. The broad reach of the Federal Arbitration Act cannot be invoked to avoid federal law: "while the [Supreme] Court has affirmed that the FAA gives parties the freedom to structure arbitration in the way they choose, it has repeatedly cautioned that this freedom does not extend to a 'substantive waiver of federally protected civil rights' in an arbitration agreement." Haves v. Delbert Serv. Corp., 811 F.3d 666, 674 (4th Cir. 2016) (quoting 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273 (2009)).

14. The Third Circuit Court of Appeals has held that a "choice of arbitrator" provision permitting the parties to select the AAA or JAMS does not provide an available arbitral forum where it contains a clause stating that the policies and procedures of either organization cannot contradict the agreement or "Tribal law." MacDonald v. CashCall, Inc., 883 F.3d 220, 229–30 (3d Cir. 2018). Where the arbitrator is unable to consider any of the plaintiff's claims because the arbitrator "would be prohibited from applying the relevant [federal and state] law," the arbitration clause is unenforceable. Smith v. W. Sky Fin., LLC, 168 F. Supp. 3d 778, 785 (E.D. Pa. 2016) ("Putting to one side the fact that

substantively, the Agreement is meant to gut the federal laws that would otherwise control, procedurally, just how would JAMS determine whether any hearing it convened complied with the apparently non-existent rules of the tribe? . . . [A] close reading of the arbitration clause compels the conclusion that it is unenforceable.").

15. Here, the arbitration agreements explicitly require any arbitrator to "apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein." (Def.'s Mot, Ex. A at 18, ECF No. 79-1.) As in <u>MacDonald</u>, the agreements impermissibly contain a clause stating that the policies and procedures of AAA or JAMS cannot contradict the agreement or Tribal law. (<u>Id.</u> at 19.)

16. In light of the clear Third Circuit rule, I find that the arbitration agreements are unenforceable.

**WHEREFORE**, it is hereby **ORDERED** that:

‒ The Motions to Compel Arbitration filed by Defendant Red Stone, Inc. (ECF No. 78), Defendant Mark Curry (ECF No. 84), and Defendants Brian McGowan and Vincent Ney (ECF No. 87) are **DENIED**;

‒ Defendant Mark Curry's Motion for Leave to File Reply Brief (ECF No. 101), the Motion for Joinder of Defendant Curry's Motion filed by Defendants McGowan and Ney (ECF No. 102), and Motion for Leave to File Supplemental Authority (ECF No. 103) are **GRANTED**, and have been considered;

‒ Defendant Red Stone, Inc. shall separately refile its Motion to Dismiss for Failure to State a Claim **on or before May 17, 2019**; and

− Plaintiff shall respond to the Motion to Dismiss for Failure to State a Claim filed by Defendants McGowan and Ney (ECF No. 88) and Red Stone, Inc.'s renewed Motion **on or before June 3, 2019**.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*

**MITCHELL S. GOLDBERG, J.**